Stephen M. Fishback (State Bar No. 191646)
sfishback@kfjlegal.com
Daniel L. Keller (State Bar No. 191738)
dkeller@kfjlegal.com
**KELLER, FISHBACK & JACKSON LLP**
28720 Roadside Drive, Suite 201
Agoura Hills, CA 91301
Telephone: 818.879.8033
Facsimile: 818.292.8891
Attorneys for Plaintiffs: Albert Wright, Jr. and
Marva Wright

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT WRIGHT, JR. AND MARVA JOE GREEN WRIGHT<br><br>    Plaintiffs,<br><br>vs.<br><br>A. W. CHESTERTON, COMPANY, et al.,<br><br>    Defendants. | Case No. C-07-5403(EDL)<br><br>**NOTICE OF MOTION AND MOTION TO REMAND CASE TO CALIFORNIA SUPERIOR COURT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: January 8, 2008<br>Time: 9:00 a.m.<br>Judge: Magistrate Judge Elizabeth D. Laporte<br>Courtroom: E |

1

**TABLE OF CONTENTS**

2

3

I.  INTRODUCTION ................................................................................ 3

4

II. STATEMENT OF ISSUES ............................................................... 4

5

III. STATEMENT OF FACTS ...............................................................5

6

IV. LEGAL ANALYSIS ......................................................................... 5

7

8

    A. FW FAILS TO ESTABLISH FEDERAL OFFICER JURISDICTION UNDER 28
    U.S.C. § 1142(a)(1) ...................................................................... 6

9

        1.        FW CAN NOT ESTABLISH THAT IT ACTED UNDER THE
                  DIRECTION OF A FEDERAL OFFICER ..................................... 7

10

11

        2.        THE PRODUCTS AT ISSUE WERE NOT SPECIFICALLY DESIGNED
                  FOR THE NAVY ...............................................................10

12

13

        3.        FW HAS NOT RAISED A COLORABLE FEDERAL DEFENSE ...,....11

14

15

        4.        FW CAN NOT ESTABLISH A CAUSAL NEXUS BETWEEN ITS
                  ALLEGED ACTIONS UNDER THE CONTROL OF A FEDERAL
                  OFFICER AND THE PLAINTIFFS' CLAIMS
                  ...............................14

16

                  a.        PLAINTIFFS PROPERLY PLEADED CLAIMS BASED ON FW'S
                            FAILURE TO WARN ..................................................... 15

17

18

19

                  b.        THERE IS NO JURISDICTION UNDER §1442 IN FAILURE TO
                            WARN CASES ..........................................................  17

20

21

                  c.        CALIFORNIA STATE LAW DOES NOT CONFLICT WITH ANY
                            OF FW'S FEDERAL CONTRACTS ..............................…. 20

22

23

        5.        FW'S EVIDENCE IS INADMISSIBLE AND CANNOT SUPPORT
                  REMOVAL ..................................................................... 21

24

V.        CONCLUSION ..................................................................... 22

25

26

27

28

i

**CASES**

Accord Dorse v. Eagle-Picher Indus., Inc.,
    898 F.2d 1487, 1489 (11th Cir. 1990). ................................................................ 13, 20

Anderson v. Owens-Corning Fiberglass Corp.,
    53 Cal.3d 987, 1002,
    281 Cal.Rptr. 528, 536–538,
    810 P.2d 549, 557–559 (1991) ........................................................................... 20

Arness v. Boeing North America, Inc.,
    997 F.Supp.1268, 1273, 1275 (C.D. Ca. 1998) ................................................ 8, 13

Arnold v. Blue Cross & Blue Shield,
    973 F.Supp.726, 739-40 (S.D. Texas 1997) ...................................................... 3, 7

Boyle v. United Technologies Corp.,
    487 U.S. 500, 507, 509, 512,
    108 S.Ct. 2510, 2517,
    101 L.Ed.2d 442 (1988) .......................................................... 4, 11, 12, 20

California ex rel. Lockyer v. Dynegy, Inc.,
    375 F3d 831, 838 (9th Cir. 2004) ...................................................................... 5

Faulk v. Owens-Corning Fiberglass, Corp.,
    48 F.Supp.2d 643,653, 663-66 (E.D.Tex. 1999) ......................... 11, 12, 13, 15, 17, 19

Freiberg v. Swinerton & Walberg Property Services, Inc.,
    245 F.Supp.2d 1144, 1152 n.6 (D.Colo.2002) .................................................... 7

Gaus v. Miles, Inc.,
    980 F.2d 564, 566 (9th Cir. 1992). .................................................................... 6

Good v. Armstrong World Industries, Inc.,
    914 F. Supp. 1125, 1128, 1129, 1131 (E.D. Pa. 1996) ................................ 7, 8, 9, 13

Hansen v. Johns-Manville Products Corp.,
    734 F.2d 1036, 1044-45 (5th Cir. (Tex.) 1984) ................................................. 13

Hofler v. Aetna US Healthcare,
    296 F.3d 764, 767 (9th Cir. 2002) .................................................................... 6

In re Hawaii Federal Asbestos Cases,
    960 F.2d 806, 812-14 (9th Cir. 1992) ............................................ 11, 12, 13, 19, 20

In re Joint Eastern & Southern District Asbestos Litigation,
    715 F.Supp. 1167, 1169 (E.D.N.Y. 1988) ......................................................... 13

In re Joint E. & S. Dist. N.Y. Asbestos Litig.,
   897 F.2d 626, 629-31 (2nd Cir. (N.Y.) 1990) ....................................................... 13, 20

In re New York City Asbestos Litigation,
   542 N.Y.S.2d 118, 120-21 (1989) ............................................................................ 13

Jackson v. Metropolitan Edison Co.,
   419 U.S. 345, 350-51,
   95 S.Ct. 449, 454,
   42 L.Ed.2d 477 (1974) ................................................................................................ 8

Lamb v. Martin Marietta Energy Systems, Inc.,
   835 F.Supp. 959, 962-63, 966-67 (W.D. Ky. 1993) ................................................. 12

Matheson v. Progressive Specialty Insurance Company,
   319 F.3d 1089, 1090 (9th Cir. 2003). ......................................................................... 6

Miller v. Diamond Shamrock Co.,
   275 F3d 414, 417 (5th Cir. 2001) ................................................................................ 5

Nguyen v. Allied Signal, Inc.,
   1998 U.S. Dist. LEXIS 15517 (N.D. Cal. 1998) .................................................. 17, 18

Nobriga v. Raybestos-Manhattan, Inc.,
   683 P.2d 389, 392 (Hawaii 1984) .............................................................................. 13

Overly v. Raybestos- Manhattan,
   1996 U.S. Dist. LEXIS 13535 (N.D. Cal. 1996) ............................................. 13, 14, 17

Pack v. ACandS, Inc.,
   838 F.Supp. 1099, 1103 (D.Md. 1993) ........................................................................ 7

Rendell-Baker v Kohn,
   457 U.S. 830, 841,
   102 S.Ct. 2764, 2771,
   73 L.Ed.2d 418 (1942) ................................................................................................ 8

Ryan v. Dow Chemical Co.,
   781 F.Supp. 934, 939, 943, 947 (E.D.N.Y. 1992) ............................................... 6, 7, 8

Screws v. United States,
   325 U.S. 91, 111-112,
   89 L.Ed. 1495,
   65 S.Ct. 1031, 1040 (1945) .......................................................................................... 7

Viala v. Owens-Corning Fiberglas,
   1994 U.S. Dist. LEXIS 4824 (N.D. Cal. 1994) .......................................................... 17

iii

**STATUTES**

28 U.S.C. §1442(a)(1) ................................................................................................. 2, 6, 7, 17, 21

**RULES**

Fed. R. Evid. 1002, 1003. ......................................................................................................... 22

iv

**TO ALL DEFENDANTS IN THIS ACTION AND THEIR ATTORNEYS OF RECORD**:

Notice is hereby given that at 9:00 a.m. on January 8, 2008, or as soon thereafter as this matter may be heard, in Courtroom E, 15th Floor, of the above-entitled Court, located at 450 Golden Gate Ave., San Francisco, California 94102, plaintiffs will move the Court for an order remanding this case to the Superior Court of California in and for the City and County of San Francisco. The motion is based on this notice, the memorandum of points and authorities, the declaration of Daniel Keller, the allegations in plaintiffs' complaint, defendant Foster Wheeler LLC's (FW) notice of removal and attachments, all papers and records on file in the state and federal court files pertaining to this case, and such argument as may be made at the hearing.

By this motion, plaintiffs seek the immediate remand of this action to Superior Court of California, County of San Francisco on the grounds that this case cannot be removed to this Court under federal officer jurisdiction. 28 U.S.C. § 1442(a)(1).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

FW's notice of removal fails to allege facts, and there is no admissible evidence in the state court action or before this Court, which supports removal. FW bases its removal on federal officer jurisdiction. In particular, it alleges that its boilers, present in naval vessels and installations, were allegedly designed and manufactured to include asbestos at the direction of a federal officer. Aside from the glaring lack of any admissible evidence to support its allegations, even if it could prove these facts, they do not support removal under federal officer jurisdiction.

To support removal, FW must establish through admissible evidence that: (1) it acted under the direction of a federal officer; (2) it has a colorable federal defense; *and* (3) a causal nexus exists between plaintiffs' claims and its acts undertaken at the direction of a federal office. *Arnold v. Blue Cross & Blue Shield*, 973 F.Supp. 726, 739 (S.D. Texas 1997) (*citing Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35, 109 S.Ct. 959, 962-63, 964-66, 967-68, 103 L.Ed. 2d 99 (1989)). Plaintiffs' allegations against FW are based on its failure to warn Mr. Wright of the dangers of asbestos in its boilers. Neither FW's allegations in its carefully crafted notice of removal and accompanying defective declarations nor any evidence in the state court or before this Court establishes that FW incorporated asbestos into its boilers, and failed to warn about the same at the direction of a federal officer.

There exists a litany of cases throughout the United States, and particularly in this district, holding that removal based on federal officer jurisdiction is unavailable in failure to warn cases such as the instant case. They so hold because there is no evidence that the government directed the defendants in those case <u>not</u> to warn about the dangers of asbestos in the products purchased by the government. And the claims in those cases, as in this case, are limited by way of disclaimer in the complaint to state law failure to warn claims.

FW's removal is similarly flawed. FW, not the government, designed its boilers at issue in this case. That design incorporated asbestos and asbestos-containing parts. That design also omitted warnings about the dangers of exposure to asbestos to those who worked with and around FW's boilers, like Mr. Wright. FW does not allege and cannot prove that it incorporated asbestos

and asbestos-containing parts into its design of boilers and failed to warn about the dangers of asbestos at the direction of a specific federal officer.  Such evidence is required to support the government contractor defense upon which FW relies to establish a colorable federal defense.  *See Boyle v. United Tech. Corp*, 487 U.S. 500, 509, 108 S.Ct. 2510, 2517, 101 L.Ed.2d 442 (1988) Furthermore, without such evidence, FW cannot prove a causal nexus between plaintiffs' failure to warn claims and its acts allegedly undertaken at the direction of a federal officer.  In short, FW has not and can not establish removal is warranted under federal officer jurisdiction.

Based on FW's flawed basis for removal, plaintiffs respectfully request that this Court remand this case to the Superior Court of the State of California, County of San Francisco.

## II.    STATEMENT OF ISSUES

1.    Whether FW's removal is improper because it failed to allege and there is no evidence in the state court action or before this Court to support removal under federal officer jurisdiction.

    i.    Whether FW failed to prove that it acted under the direct control of a specific federal officer when (1) it incorporated asbestos into its boilers; and (2) it failed to warn about the hazards of asbestos in its boilers manufactured for the Navy and installed in the Navy vessels and installations listed in the complaint.

    ii.    Whether FW failed to establish that its government contractor defense is a colorable federal defense in light of its failure to prove, among other things, that it never warned the government or anyone else about the dangers of asbestos in its boilers manufactured for the Navy and installed in the Navy vessels and installations listed in the complaint.

    iii.    Whether FW failed to prove a causal nexus between the acts that it alleges were performed under the direction of a federal officer, namely the sale of boilers to the Navy, and its incorporation of asbestos into and failure to warn of the hazards of asbestos in its boilers sold to the Navy and installed in the Navy vessels and installations listed in the complaint.

2.     Whether FW failed to timely and properly serve its notice of removal given its service thereof via "LexisNexis File and Serve," an electronic service available for state court asbestos cases only.

## III.   **STATEMENT OF FACTS**

This is a personal injury action arising out of injuries sustained by Albert Wright, Jr. due to exposure to defendants' asbestos and asbestos-containing products.  (Complaint, ¶¶ 10-12, Keller Dec., Ex. A.)  On September 13, 2007, Mr. Wright and his wife Marva Wright instituted the underlying action in California state court alleging that Mr. Wright contracted lung cancer as a result of his exposure to asbestos and asbestos-containing products during his employment as a machinist and flange turner, among other places, for the Navy.  (Complaint, pp 36-37, Keller Dec., Ex. A.)  While working for the Navy, Mr. Wright served on various Navy vessels and at various bases including, but not limited to the: USS  MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA;  USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD;  USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California, among others.  (*Id.*)

Plaintiffs served FW a summons and complaint in this action on September 20, 2007.  FW filed its notice of removal in this Court on October 23, 2007.

## IV.   **LEGAL ANALYSIS**

The defendant seeking removal of an action to federal court has the burden of showing that it has (1) complied with the procedural requirements for removal and (2) established grounds for federal jurisdiction in the case. *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004); *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001).  FW fails to meet its burden both procedurally and substantively.

Because removal of an action to federal court implicates federalism concerns and deprives

the plaintiff of his chosen forum, the removal statutes must be strictly construed against jurisdiction, *Hofler v. Aetna US Healthcare*, 296 F.3d 764, 767 (9th Cir. 2002), and if there is any doubt about the propriety of removal, the case should be remanded to state court. *Matheson v. Progressive Specialty Insurance Company*, 319 F.3d 1089, 1090 (9th Cir. 2003). There is a "strong presumption against removal jurisdiction" and the removing defendant bears the burden of proving that removal was proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

## A. FW FAILS TO ESTABLISH FEDERAL OFFICER JURISDICTION UNDER 28 U.S.C. § 1142(a)(1)

FW bases its removal on federal officer jurisdiction under 28 U.S.C. §1442(a)(1), which it has the burden of establishing through admissible evidence. What Defendant must do, yet what it has patently failed to accomplish, is to unequivocally demonstrate that it has a complete defense to plaintiffs' claims due to its work for a federal officer. FW is required to meet a litany of criteria set forth by statute and common law to maintain its defense and to justify federal court jurisdiction. However, FW has produced no evidence whatsoever in the state court action and submitted no admissible evidence in support of its notice of removal. Notwithstanding the absence of any evidence, even the bald allegations in FW's notice of removal and inadmissible declarations, which were executed *before* plaintiffs even filed this action, do not meet the requirements for federal officer jurisdiction. In no way can or does FW satisfy the lofty requirements to merit the removal of this action from state court to federal court.

In the specific context of removals under the federal officer removal statute, federal courts are to avoid a "narrow, grudging interpretation" of their jurisdiction, *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 943 (E.D.N.Y. 1992)(quoting *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S.Ct. 1813, 1816. 23 L.Ed. 2d 396 (1969)), but this rule only applies when actual federal officers are defendants, not when private corporate defendants, such as FW herein, attempt to exploit the statute:

> Given the purpose of § 1442 and its basis in a mistrust of states and state courts to protect federal interest, I agree it should be read expansively only when the immunity of individual federal officials, and not government contactors, is at issue.

*Freiberg v. Swinerton & Walberg Property Services, Inc.*, 245 F.Supp.2d 1144, 1152 n. 6 (D. Colo. 2002). Not to be taken lightly, removal under §1442 is "an exceptional procedure which wrests from state courts the power to try [cases under] their own laws.  Thus the requirements of the showing necessary for removal are strict."  *Screws v. United States*, 325 U.S. 91, 111-112, 89 L.Ed. 1495, 65 S.Ct. 1031, 1040 (1945).

A defendant that seeks to remove a case under Section 1442(a)(1) has the burden of proving four jurisdictional elements: (1) that it is a "person" within the meaning of the statute;  (2) that it acted under the direction of a federal officer;  (3) that it has a colorable federal defense to the plaintiffs' claims; and (4) that there is a causal nexus between the plaintiffs' claims and the acts the defendant performed under color of federal office.  *Arnold v. Blue Cross & Blue Shield*, 973 F.Supp. 726, 739 (S.D. Texas 1997) (*citing Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35, 109 S.Ct. 959, 962-63, 964-66, 967-68, 103 L.Ed. 2d 99 (1989)).  Plaintiffs particularly address herein FW's failure to meet the second, third and fourth prongs of the *Mesa* test.

### 1.    FW CAN NOT ESTABLISH THAT IT ACTED UNDER THE DIRECTION OF A FEDERAL OFFICER

Under the second prong of the *Mesa* test, FW must demonstrate that it was acting at the direction of a *specific federal officer* when designing the boilers in the naval vessels and installations where Mr. Wright served and that exposed him to asbestos.  The locations where Mr. Wright was exposed to asbestos from FW's boilers are listed in the complaint.  (Complaint, pp 36-37 Keller Dec., Ex. A.)  There is no admissible evidence whatsoever in the state court record or submitted to this Court establishing that FW designed the boilers present at these locations at the direction of a specific federal officer.

FW must prove that it worked under the "direct and detailed control" of a federal officer.  *Arnold,* 973 F.Supp. at 740. That control must have been exercised by a specific, individual federal official, not an entire agency. *Good v. Armstrong World Industries, Inc.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996); *Pack v. ACandS, Inc*., 838 F.Supp. 1099, 1103 (D.Md. 1993); *Ryan v. Dow Chem. Co.*, 781 F.Supp. 934, 939 (E.D.N.Y. 1992).  Establishing this element requires more than merely alleging that the acts in question were ***generally*** carried-out under federal auspices.

*See Ryan*, 781 F.Supp. at 947; *see also Good*, 914 F.Supp. at 1129; *Arness v. Boeing North America, Inc.,* 997 F.Supp. 1268, 1273 (C.D. Ca. 1998).  "[R]emoval must be predicated upon a showing that the acts that form the basis for the state civil suit . . . were performed pursuant to [a federal] officer's direct orders or to comprehensive and detailed regulations." *Ryan*, 781 F.Supp. at 947; *see also Good*, 914 F.Supp. at 1129.

A civilian person or company acts under color of federal law only when its action "may be fairly treated as that of the [government] itself."  *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350-51, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974).  The fact that a corporation is performing under government contracts whose specifications it must meet does not automatically transform that corporation's conduct into government action.  "Many private corporations whose business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government.  Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v Kohn*, 457 U.S. 830, 841, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (1942).

The holding in *Good v. Armstrong World Industries* 914 F.Supp. at 1129 is instructive. The removing defendant in that case, Westinghouse, was named in the case because it manufactured turbine generators, which plaintiff worked on as a Navy seaman, and which allegedly contained and emitted asbestos dust.  Westinghouse offered proof that it manufactured the turbines under government contracts and was bound to meet the general performance specifications set by the Navy.  Its witness testified that the production of the turbines was pursuant to Navy design and construction drawings and written specifications, and that Navy officers and civilian employees worked at the Westinghouse plant and supervised production of the turbines. *Id.* at 1128. Nevertheless, the court determined that neither Westinghouse's notice of removal nor its affidavit established that any specific Navy official had the necessary control to establish the "acting under" element:

> [Evidence that a] conglomerate of people employed by the United States Navy who had oversight authority does not support the blanket assertion by Westinghouse that the Secretary of the Navy provided direct and detailed control over Westinghouse. . . . Although it is true that the United States Navy and many individuals employed by the Navy worked with Westinghouse, Westinghouse

does not show that the Secretary of the Navy or any other federal officer directly controlled and supervised the work of Westinghouse. *Cf. Noble v. Employers Ins.*, 555 F.2d 1257 (5th Cir. 1977) (finding the 'acting under' requirement satisfied where the defendant-surgeon had acted under the immediate supervision of the Administrator of Veteran Affairs who evaluated the defendant-surgeon's performance and determined his hours and working conditions.).

*Id*. at 1129.

Nowhere in its carefully tailored notice of removal or supporting declarations does FW identify a specific federal officer who designed and manufactured or even directed the design and manufacture of the boilers present in the Navy vessels and installations identified in plaintiffs' complaint. And nowhere in its notice of removal or supporting declarations does FW identify a specific federal officer who directed it to warn or not to warn about the dangerous asbestos in the boilers present in the Navy vessels and installations identified in plaintiffs' complaint. Such identification in FW's boilerplate supporting declarations of Lehman and Schroppe would, of course, be physically impossible since their declarations are dated prior to the complaint being filed in this case. Instead, FW's evidence, in the form of the Lehman and Schroppe declarations, makes the bald and unsupported blanket allegation that its own designs for all military boilers were somehow controlled by the Navy generally—not a specific federal officer. (Notice of Removal, ¶¶16-17.) It argues that given this control, it acted at the direction of a federal officer when incorporating asbestos into its designs for boilers and when it failed to warn of the dangers of asbestos in the same. Allegations that the Navy generally controlled the design and manufacture of its boilers are, however, insufficient to prove that it acted at the direction of a specific federal officer. *See Good*, 914 F.Supp. at 1129 ("[defendant] must set forth evidence showing that it did, in fact, act under a federal officer, a burden that [defendant] has not satisfied").

An internal inconsistency in FW's Schroppe declaration highlights that FW, not the Navy or some federal officer, was responsible for the lack of warnings about the hazards of asbestos in its boilers. Mr. Schroppe, a career engineer at FW, first states that FW's Navy contract obligated FW to write technical manuals, which were provided along with each of its boilers sold to the Navy. (Schroppe Decl. ¶ 21.) Thereafter, Mr. Schroppe states that the technical manual would

include safety data (although he does not describe any of the safety data he relies upon to support his statement). (*Id.*) Mr. Schroppe's statement, even if admissible which plaintiffs dispute, establishes that it was FW's responsibility to include safety instructions for its boilers, including warnings regarding the dangers of asbestos. Even if some unnamed and apparently unknown specific federal officer prohibited FW from warning about asbestos in its boilers, neither Mr. Schroppe nor Mr. Lehman has identified that specific federal officer who would have prevented FW from issuing such warnings. Such a glaring deficiency is fatal to FW's claims.

Simply put, FW designed and manufactured its boilers sold to the Navy. It concedes this point in the stale declaration of Mr. Schroppe. (Schroppe Decl., ¶¶ 9, 16.) It chose to incorporate asbestos into the design. FW was responsible for writing the technical manuals for its boilers, including the safety information for the boilers. (Schroppe Decl., ¶21.) It fails to name any specific federal officer who would have directed it <u>not</u> to warn regarding the dangers of asbestos. (*Id.*) If the answer is that FW did only what the Navy required, i.e., the bare minimum, then FW is without a proper basis for removal in this case. Doing the minimum required means that FW could have done more. FW could have warned Mr. Wright and it did not. These facts do not and can not support that FW was acting at the direction of a federal officer, which is a necessary prerequisite to removal under federal officer jurisdiction.

## 2. THE PRODUCTS AT ISSUE WERE NOT SPECIFICALLY DESIGNED FOR THE NAVY

Even if FW could prove that some federal officer required it to incorporate asbestos-containing components into its boilers, which it has failed to do, there is no evidence before this Court that the asbestos-containing components themselves were nothing more than standard, stock equipment (bricks, insulation, refractory materials). The mere selection of such standard asbestos-containing equipment and components by the government does not provide the supplier or contractor with a basis for removal. *See Boyle v. United Tech. Corp*, 487 U.S. 500, 509, 108 S.Ct. 2510, 2517, 101 L.Ed.2d 442 (1988) (government contractor defense does not apply to injury caused by "stock" item or "standard equipment"); s*ee also In Re: Hawaii Federal Asbestos Cases*, 960 F.2d 806, 812 (9th Cir. 1992) (government contractor defense not applicable when the product

is a stock item that was not ". . . manufactured with the special needs of the military in mind"). There is no evidence before this Court that the subject asbestos-containing products were nothing more than general items that were used on civilian vessels as well as Navy vessels. They were not specially designed or manufactured for a military use or purpose. The mere selection of such stock components by the government does not cloak the supplier or contractor with immunity from suit. As the Court explained in *Boyle*:

> If, for example, the United States contracts for the purchase and installation of an air conditioning-unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary.

487 U.S. at 509.

There is no evidence before this Court by way of specification or otherwise that the asbestos materials that caused Mr. Wright's injury were anything more than the same standard asbestos products available in the commercial market. They were made of the same materials from which boilers used in the commercial sector were made. There was nothing special or unique about them. By designing and manufacturing boilers for use in military vessels and installations that contained the same asbestos-containing components as were being used in the commercial sector, FW was not acting at the direction of a federal officer.

### 3.    FW HAS NOT RAISED A COLORABLE FEDERAL DEFENSE

To satisfy the third prong of the *Mesa* test, FW must raise a colorable federal defense, which it fails to do. In order to assert a colorable federal defense, FW "must do more than simply plead a federal defense. Rather, [it] must plead a *colorable* federal defense." *Faulk v. Owens-Corning Fiberglass, Corp.*, 48 F.Supp.2d 643, 664 (emphasis original). The defense amounts to a claim that "the government made me do it." *In Re: Hawaii Federal Asbestos Cases*, 960 F.2d 806, 813 (9th cir. 1991) (*citing In Re: Joint E. S. Dist. N. Y. Asbestos Litig.*, 897 F.2d 626, 632 (2d Cir. 1990)). And it is not enough for the defendant to allege that it has a colorable defense because it simply supplied products to the military or supplied products to the military in compliance with government specifications. If this were the case then every lawsuit involving asbestos exposure

from military ships or aircraft would be in federal court.  Federal contractors do not enjoy any type of automatic immunity. *See Lamb v. Martin Marietta Energy Systems, Inc.*, 835 F.Supp. 959, 962-63 (W.D. Ky. 1993) (*citing United States v. Boyd*, 378 U.S. 39, 44, 84 S.Ct. 1518, 1522; 12 L.Ed.2d 713 (1964)). Rather, this defense applies only to specific situations, which the defendant must establish through admissible evidence. *See Lamb*, 835 F.Supp. at 959.

It is true, of course, that a defendant need not prove its federal defense in order to satisfy this prong of the *Mesa* test, but it still must offer enough evidence to show that the defense is colorable. This requires, at a minimum, pleading each necessary element and offering some supporting evidence. *See Lamb*, 835 F.Supp. at 966-67.

There is an important distinction between a federal defense and a proper legal basis for removal of a state court matter to federal court.  A federal defense does not necessarily rise to the level where it confers federal subject matter jurisdiction—often it is simply a defense used to counter a plaintiff's claims brought in state court.  The "government contractor defense" is one such federal defense that is often alleged in state court asbestos actions.

FW attempts to rely on the government contractor defense to support this element of *Mesa*.  The government contractor defense shields government contractors from liability only when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Technologies Corp.* 487 U.S. 500, 512 (1988).  The third element of the government contractor defense requires the defendant to prove either that it warned the government as to the risks involved, or that the government already knew. *Faulk*, 48 F.Supp. at 666.  It was intended to discourage contractors from withholding their knowledge of latent risks.  *Boyle*, 487 U.S. at 512.  The government contractor defense applies in very narrow circumstances:

> <u>Boyle</u> displaces state law only when the government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion.

*In Re: Hawaii Federal Asbestos Cases*, 960 F.2d at 813 (internal quotations omitted). *Accord Dorse v. Eagle-Picher Indus., Inc.*, 898 F.2d 1487, 1489 (11th Cir. 1990).

Several Courts have rejected the government contractor defense in asbestos cases or found that the defense does not apply. *See In re Joint Eastern and Southern District Asbestos Litigation (1)*, 715 F.Supp. 1167, 1169 (E.D.N.Y. 1988) (Court rejected military contractor defense holding that federal specifications were silent on the matter of warnings and defendant could have provided adequate warnings to plaintiffs and complied with the federal specifications); *Hansen v. Johns-Manville Products Corp.*, 734 F.2d 1036, 1044-45 (5th Cir. (Tex.) 1984), *reh'g denied* 744 F.2d 94, *cert. denied* 470 U.S. 1051, 105 S.Ct. 1750, 84 L.Ed.2d 814; *Nobriga v. Raybestos-Manhattan, Inc.*, 683 P.2d 389, 392 (Hawaii 1984); *In re New York City Asbestos Litigation*, 542 N.Y.S.2d 118, 120-21 (1989); *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 629-30, (2nd Cir. (N.Y.) 1990); *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 715 F.Supp. 1167 (E.D.N.Y. 1988); *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F.Supp.2d 653, 663-64 (E.D.Tex. 1999) (applying federal law); *Good v. Armstrong World Indus.*, 914 F.Supp. 1125, 1131 (E.D.Pa. 1996).

In *Overly v. Raybestos- Manhattan*, 1996 U.S. Dist. LEXIS 13535 (N.D. Cal. 1996) (Keller Dec., Ex. B.), defendant Avondale Industries removed an asbestos case to federal court based on federal officer jurisdiction. *See also Arness*, 997 F. Supp. at 1275. The *Overly* court explained that "plaintiffs have proceeded against Avondale on the 'failure to warn theory' of product liability." *Overly* at p. 1. The *Overly* court wrote:

> [I]n order to meet the *Boyle* test in a failure to warn case, the defendant must show that the government affirmatively instructed it regarding the provision of warnings. Defendant's only showing on this motion relates to the government's manufacturing and engineering specifications. Defendant has not demonstrated that the government provided "reasonably precise specifications" affecting Avondale's provision of warnings. [citation omitted] Absent a showing by defendant that the federal government gave **specific instructions to Avondale not to warn employees** of the existence of asbestos, Avondale is offered no protection by government contractor immunity. [citation omitted] Therefore defendant fails to meet the second prong of the *Mesa* standard because Avondale has no colorable federal defense to the charges in this case.

1   *Overly* at pp. 3-4 (emphasis added).

2           To support a colorable defense, FW must prove through admissible evidence that a specific

3   federal officer instructed FW ***not*** to warn about the dangers of asbestos in the boilers in the vessels

4   and installations where Mr. Wright was exposed.  FW fails to do so.  FW simply argues that the

5   Navy, generally, controlled the warnings on its products.  FW submits no admissible evidence

6   whatsoever concerning the absence of warnings on the boilers present at the locations where Mr.

7   Wright was exposed, which are specifically listed in the complaint.  FW never identifies a specific

8   federal officer who prohibited it from warning about the dangers of asbestos in its boilers.  FW

9   does not allege that it attempted to warn workers, like Mr. Wright, about the dangers of asbestos in

10  its boilers, but was told not to warn them by a federal officer.  FW does not allege that it warned

11  the government that the asbestos in its boilers was hazardous, or that the government officers with

12  whom it allegedly dealt were already aware of those hazards. Thus, even if FW were able to prove

13  that it was acting pursuant to precise specifications regarding the use of asbestos (which it cannot),

14  its failure to warn would still preclude it from establishing a colorable government contractor

15  defense.  Since FW has not established that it has a colorable federal defense, this prong of the

16  *Mesa* test has not been met, and federal officer jurisdiction is lacking.

17          **4.    FW CAN NOT ESTABLISH A CAUSAL NEXUS BETWEEN ITS ALLEGED**

18          **ACTIONS UNDER THE CONTROL OF A FEDERAL OFFICER AND THE**

19          **PLAINTIFFS' CLAIMS**

20          The fourth prong of the *Mesa* test requires a "causal nexus" between plaintiffs' claims and

21  defendant's acts allegedly taken under federal direction.  As explained below, plaintiffs' claims

22  against FW are based on its failure to warn about the dangers of asbestos that FW incorporated

23  into the design and manufacture of its boilers.  In order for FW to show that there was a causal

24  nexus between its actions under the control of a federal officer and plaintiffs' claims, it must show

25  that a federal officer specifically dictated that FW: (1) must use asbestos in its boilers, and (2)

26  must ***not*** warn about the dangers of that asbestos.  *See Faulk,* 48 F.Supp.2d at 663 ("the federal

27  government did not dictate any specifications regarding the warning about asbestos-containing

28  products").  There is no proof anywhere in the record that FW was directed by a specific federal

1  officer to include asbestos in the design of any of its boilers at the sites identified in the complaint.

2  And even if FW could marshal such evidence, which it can not do, such evidence would not

3  prove that a specific federal officer directed FW about warnings, including the failure to place

4  appropriate warnings *on or with* its asbestos-containing boilers and failure to warn persons who

5  *used* FW's asbestos-containing boilers.

6              a.       **PLAINTIFFS PROPERLY PLEADED CLAIMS BASED ON FW'S**

7                      **FAILURE TO WARN**

8          Plaintiffs' state law claims against FW are based upon two main premises: (1) that Mr.

9  Wright was exposed to asbestos from FW's asbestos-containing boilers, and (2) that FW failed to

10  warn about the health hazards associated with asbestos exposure from these products.  Plaintiffs'

11  claims against FW are based on Mr. Wright's exposure to asbestos from work on FW's boilers in

12  the vessels and installations identified in the complaint.  Sounding in negligent failure to warn,

13  strict failure to warn, and intentional torts, plaintiffs' complaint alleges causes of action against

14  FW based on its failure to warn Mr. Wright of the risks attendant to the asbestos in its defective

15  boilers.

16          Out of an abundance of caution, plaintiffs **_expressly_** limit their causes of action in the

17  complaint to failure to warn claims.  The complaint provides:

18          ***Plaintiffs disclaim any cause of action or recovery for any injuries and damages***

19  ***resulting from exposure to asbestos caused by the acts or omissions of defendants***
    ***committed at the specific and proven direction of an officer of the United States***

20  ***Government acting within in his official capacity.*** To the extent that any of the plaintiff's
    asbestos exposure occurred on board vessels or aircraft owned and/or operated exclusively

21  by the United States military or the construction and/or repair of such vessels or aircraft
    occurred on proven federal enclaves,  plaintiff's negligence and strict liability claims

22  against manufacturers, sellers and suppliers of  specialized machinery pumps, valves,
    boilers, turbines, separators, steam traps, engines and other mechanical equipment installed

23  in such vessels and aircraft are not based on the theory of defective design, but rather on
    the theory of failure to warn of the health risks and hazards associated with working with

24  and/or around asbestos and asbestos-containing products only and renders such defendants

25  liable in both negligence and in strict products liability for such marketing defect.

26  (Complaint, ¶9a, Keller Dec., Ex. A (emphasis added).)

27          Furthermore, Plaintiffs' negligence cause of action reads in part:

28

Defendants, their "alternate entities," and each of them breached their duties by:

(a) *failing to warn plaintiff* of the dangers, characteristics, and potentialities of their asbestos-containing products when they knew or should have known that exposure to their asbestos-containing products would cause disease and injury;

(b) *failing to warn plaintiff* of the dangers to which he was exposed when they knew or should have known of the dangers;

(c) *failing to exercise reasonable care to warn plaintiff* of what would be safe, sufficient, and proper protective clothing, equipment, and appliances when working with or near or being exposed to their asbestos and asbestos-containing products;

(Complaint, ¶9a, Keller Dec., Ex. A (emphasis added).)  Plaintiffs' strict liability cause of action reads in part:

"Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons". Said defendants, their "alternate entities," and each of them, further *failed to adequately warn of the risks* to which plaintiff and others similarly situated were exposed.

 (Complaint, ¶22, Keller Dec., Ex. A(emphasis added).)  Plaintiffs' false representation cause of action reads in part:

At all times herein mentioned, defendants, their "alternate entities" and each of them, singularly and jointly, negligently and carelessly . . . *failed to warn of the health hazards* . . . a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products unsafe and dangerous for use by "exposed persons".

(Complaint, ¶34, Keller Dec., Ex. A (emphasis added).)  Plaintiffs' intentional tort cause of action reads in part:

Defendants, their "alternate entities," and each of them, *failed to warn plaintiff and others of the nature of said materials* which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that defendants, their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

* * *

Defendants, their "alternate entities," and each of them, *failed to provide plaintiff with information concerning adequate protective masks and other equipment* devised to be

used when applying and installing the products of the defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the plaintiff and others applying and installing such material;

* * *

Defendants, their "alternate entities," and each of them, ***failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects*** without noticeable trauma to the public, including buyers, users, and physicians employed by plaintiff and potentially plaintiff's employers so that said physicians could examine, diagnose and treat plaintiff and others who were exposed to asbestos, despite the fact that defendants, their "alternate entities," and each of them, were under a duty to so inform and said failure was misleading; and

* * *

Defendants, their "alternate entities," and each of them, ***failed to provide adequate information*** to physicians and surgeons retained by plaintiff's employers and their predecessor companies, for purposes of making physical examinations of plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

(Complaint, ¶54, Keller Dec., Ex. A (emphasis added).)  Plaintiffs' premises owner/contractor liability cause of action reads in part:

[S]aid Premises Owner/Contractor Liability Defendants, and each of them, negligently ***failed to . . . warn*** plaintiffs of, the existence of the aforesaid dangerous conditions and hazards on said premises.

(Complaint, ¶70, Keller Dec., Ex. A (emphasis added).)

Accordingly, plaintiffs' claims against FW are related to FW's failure to warn about the risks of working with and around the asbestos in its products.  As explained in more detail below, there is no federal subject matter jurisdiction over failure to warn claims in an asbestos case.

### b.  THERE IS NO JURISDICTION UNDER §1442 IN FAILURE TO WARN CASES

FW relies on the *Boyle* government contractor defense to support federal officer removal jurisdiction.  (Notice of Removal, ¶ 8.)  However, federal courts throughout the country, and particularly in this district, have struck the *Boyle* government contractor defense as a matter of law in failure to warn cases.  Presumably due to the large number of asbestos cases in California, Hawaii and Texas, the Ninth and Fifth Circuits have dealt with a large number of attempted removals under §1442(a)(1).  The courts in those Circuits have consistently held that §1442

1   removal is not available in failure to warn cases.  *See Viala v. Owens-Corning Fiberglas*, 1994

2   U.S. Dist. LEXIS 4824 (N.D. Cal. 1994) (Keller Dec., Ex. C.) ("Thus, there is no evidence that the

3   specifications provided by the government in any way conflicted with defendants' state law duty to

4   design and manufacture safe products that did not cause asbestos related illnesses. In the absence

5   of such a conflict, the government contractor defense is not colorable."); *Nguyen v. Allied Signal,*

6   *Inc.*, 1998 U.S. Dist. LEXIS 15517 (N.D. Cal. 1998) (Keller Dec., Ex. D.) ("Although defendants

7   present evidence showing federal direction of defendants regarding the installation of insulation

8   materials, they do not show federal direction of their activities with regard to warnings attached to

9   asbestos products.  Therefore, defendants failed to meet their first prong of the *Mesa* test.");

10  *Overly v. Raybestos- Manhattan*, 1996 U.S. Dist. LEXIS 13535 (N.D. Cal. 1996) (Keller Dec., Ex.

11  B.) (Discussed above); *Faulk*, 48 F.Supp.2d at 665 ("Nor is there any evidence that the Federal

12  government prohibited defendants from warning about the dangers of asbestos.") & at 666 ("There

13  is no causal nexus between defendants' action under this [federal] control and the plaintiffs' claims

14  . . . thus defendants' fail to satisfy…Mesa.").

15          The *Nguyen* case is instructive.  In that case the court wrote:

16
17              Here, defendants have produced no evidence that their contracts with the United
                States government contained contractual obligations specifically prohibiting them
17              from placing warnings on their products.  Instead, ***they produce evidence***
                ***regarding government control of the specification for manufacturing the***
18              ***aircraft, not specifications regarding warnings***.  They also rely upon the
19              affidavit of Alvin F. Meyer, which indicates only that the government approved
                all warnings placed in technical manuals for United States Air Force aircraft.
20              They offer no evidence that they attempted to include such warnings, or that the
                government specifications and contractual provisions explicitly directed them not
21              to place warnings on their products.  Therefore, the Ninth Circuit's holding in
22              Hawaii Federal controls and the government contract defense cannot be the basis
                for federal jurisdiction in a failure to warn case here [emphasis added].
23

24  *Nguyen,* at 2-3. *Nguyen* was dispositive that there was no causal nexus.  As the court held:

25
26              The third prong of the Mesa test requires a causal nexus between the rules
                imposed by the United States on the federal contractor and the liability asserted
26              by the plaintiff. [citations omitted]  Although defendants include evidence
27              regarding the control of the federal government over the manufacture of its
                products, again, this evidence does not demonstrate that the federal government
28              directed defendants not to place warnings on their products.  Therefore, there was

no causal connection between the control exercised by the United States over defendants and plaintiffs' legal theory of failure to warn consumers of the hazards of asbestos. The court therefore concludes that there is no federal jurisdiction over this action. Consequently, plaintiffs' motion to remand must be granted.

*Nguyen*, at 4.

In *In Re Hawaii Federal Asbestos Cases*, relied upon by the *Nguyen* court, the Ninth Circuit held that defendant breached its state law duty to warn by failing to warn of the dangers of asbestos in its equipment. The court wrote:

> The appellants' failure to alert those individuals who work most closely with their insulation products . . . to the dangers of asbestos exposure was patently clear from the evidence. That the inadequacy of the defendants' warnings was a legal cause of the plaintiff's injuries cannot be denied. The plaintiffs could have taken precautionary measures or left their jobs had they been warned of the dangers. A reasonable jury, in reaching its first liability, necessarily would have found from the evidence that the defendants breached their state law duty to warn both before and after the introduction of warning labels in 1966. Thus, even were the asbestos insulation "military equipment", we would affirm the district court's decision to preclude the military contractor defense.

*In Re Hawaii Federal Asbestos Cases*, 960 F.2d at 814.

In *Faulk*, the United States District Court for the Eastern District of Texas addressed this exact issue. 48 F.Supp.2d 653. In *Faulk*, the Court found that "the federal government had provided no direction or control on warnings when using asbestos; moreover, the federal government did not prevent Defendants from taking their own safety precautions heeding state law standards above the **minimum standards** incorporated in their federal contracts (emphasis added)." *Id*. at 663. The *Faulk* Court held that while there was evidence of detailed government specifications relating to the production of certain products, there was nothing about warnings regarding the hazards of asbestos. *Id*. at 664. The Court went on to state that since "[t]he federal officer remained completely silent as to whether to *warn* about the use of asbestos; this silence is fatal to the 'causal nexus'" requirement. *Id*. The Court in *Faulk* remanded the case.

In order for FW to show that there was a causal nexus between plaintiffs' state law failure to warn claims and its actions under the control of a federal officer, FW must show that a federal officer specifically dictated that FW must ***not*** warn about the dangers of its asbestos-containing

boilers.  *See Faulk,* 48 F.Supp.2d at 653 ("the federal government did not dictate any specifications regarding the warning about asbestos-containing products").  FW fails to allege and submits no admissible evidence whatsoever to prove that a specific federal officer prohibited FW from warning workers like Mr. Wright about the presence of asbestos that it incorporated into its boilers or the hazards associated with working with and around such asbestos.  FW fails to even allege that it attempted to warn about the hazards of asbestos in its boilers and a federal officer stopped them from so warning.  Accordingly, there is no causal nexus between plaintiffs' state law failure to warn claims and the acts FW alleges it performed at the direction of a federal officer.

### c.   CALIFORNIA STATE LAW DOES NOT CONFLICT WITH ANY OF FW'S FEDERAL CONTRACTS

According to *Boyle*, displacement of state law is appropriate only where "a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law.'"  *Boyle*, 487 U.S. at 507.  In this case, an identifiable federal interest does not exist, and there is no significant conflict between a federal interest and the operation of state law on which plaintiffs' failure to warn claims against FW are based.

In order for FW to establish that *Boyle* displaces any state law duty to warn, it must show that the applicable federal contract includes warning requirements that significantly conflict with those that might be imposed by state law. *In Re: Hawaii Federal Asbestos Cases*, 960 F.2d at 812-13 (internal quotations omitted). *Accord Dorse v. Eagle-Picher Indus., Inc.*, 898 F.2d 1487, 1489 (11th Cir. 1990).  No significant conflict exists where a defendant can comply with both the federal specifications and the standards of conduct imposed by the state.  *See id.* (The Court said that the military contractor defense would fail because there ". . . existed no conflict between their state law duty to provide adequate warnings to the users of their [product] and the conditions imposed on them pursuant to the agreements they had entered into with the Government"). In addition, a defendant must establish via admissible evidence that "whatever warnings accompanied a product resulted from a determination of a government official and thus that the government itself 'dictated' the content of the warnings meant to accompany the product." *In re Joint E. and S. Dist. N.Y. Asbestos Litig.*, 897 F.2d at 630.  Where no conflict exists between

requirements imposed under a federal contract and a state law duty to warn, *Boyle* commands that the court defer to the operation of state law. *Id.* at 631.

Under California law, a manufacturer owes a duty to warn of risks that a reasonably prudent manufacturer would have known and warned about. *Anderson v. Owens-Corning Fiberglass Corp.* (1991) 53 Cal.3d 987, 1002, 281 Cal.Rptr. 528, 536–538, 810 P.2d 549, 557–559. Furthermore, one may be held strictly liable if it failed to adequately warn of a known or knowable risk. *Id.*

Setting aside the fatal flaws in FW's supporting declarations of Lehman and Schroppe, even assuming what is stated therein was admissible, the general statements made by FW's declarants that the Navy controlled the warnings on products manufactured for the Navy do not in any way establish a conflict between a federal interest and state law. In this case, there is no evidence that the contract(s) between FW and the Navy for the design and manufacture of boilers contained any requirements with regard to warnings. More specifically, there is no admissible evidence before this Court about the presence or absence of warnings on the boilers located in the vessels and installations identified in the complaint where Mr. Wright was exposed. Thus, there is no evidence of a conflict between FW's federal contracts and plaintiffs' state law failure to warn claims set forth against FW in the complaint. FW could have complied with its duty under state law to warn Mr. Wright of the dangers of working with its asbestos-containing boilers and complied with its alleged federal directive to design and manufacture boilers for the subject vessels and installations. Accordingly, there is no conflict between state law and a federal policy or interest making jurisdiction under §1442(a)(1) is not appropriate.

### 5. FW'S EVIDENCE IS INADMISSIBLE AND CANNOT SUPPORT REMOVAL

FW submits the Declarations of J. Thomas Schroppe and Ben J. Lehman in support of its argument that it designed boilers pursuant to naval specifications. Mr. Schroppe's and Mr. Lehman's declarations were executed in March and July 2007 before this case was even filed. Neither Mr. Schroppe's nor Mr. Lehman's testimony is admissible because each lacks personal knowledge regarding Mr. Wright's work on the specific ships and at the specific military installations plaintiffs' identified in the complaint. In fact, they never once mention any of the

ships or installations where Mr. Wright worked or Mr. Wright for that matter.  Without any personal knowledge of Mr. Wright's work around FW's boilers—key to whether there were adequate warnings on FW's boilers—Mr. Schroppe and Mr. Lehman can not opine on the issue here: whether a specific federal officer directed FW to incorporate asbestos into its boilers and prohibited FW from placing warnings about asbestos exposure on the boilers that Mr. Wright worked with and around present in the specific vessels and installations identified in the complaint.

Additionally, Mr. Schroppe's and Mr. Lehman's declarations are replete with references to hearsay statements by alleged Naval personnel and Naval contracts and specifications.  In order to be admissible evidence, the actual documents or duplicates thereof must be produced.  *Fed. R. Evid. 1002, 1003.*

Plaintiffs have properly objected to the numerous failures in law and fact related to the FW's purported "evidence," including the declarations of Mr. Schroppe and Mr. Lehman.  As such, Mr. Schroppe's and Mr. Lehman's declarations are inadmissible and cannot support FW's removal of this action.

## V.    <u>CONCLUSION</u>

FW's removal based on federal officer jurisdiction is improper.  No basis for removal exists because FW failed to prove that the Navy directed it to omit warnings about the dangers of asbestos in its boilers.  Accordingly, Plaintiffs respectfully request that this Court remand this action to the Superior Court of California, County of San Francisco.

DATED: November 20, 2007                    **KELLER, FISHBACK & JACKSON LLP**


By:  _____/s/_____
            Daniel Keller
            Attorneys for Plaintiffs