1    Stephen M. Fishback (State Bar No. 191646)
     sfishback@kfjlegal.com
2    Daniel L. Keller (State Bar No. 191738)
     dkeller@kfjlegal.com
3    **KELLER, FISHBACK & JACKSON LLP**
     28720 Roadside Drive, Suite 201
4    Agoura Hills, CA  91301
     Telephone:  818.879.8033
5    Facsimile:   818.292.8891
6    Attorneys for Plaintiffs: Albert Wright, Jr. and
     Marva Wright
7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11   ALBERT WRIGHT, JR. AND MARVA JOE
12   GREEN WRIGHT                              Case No.  C-07-5403(EDL)

13        Plaintiffs,                          **DECLARATION OF DANIEL KELLER IN**
                                               **SUPPORT OF MOTION TO REMAND**
14   vs.                                       **CASE TO CALIFORNIA SUPERIOR**
                                               **COURT**
15   A. W. CHESTERTON, COMPANY, et al.,
16        Defendants.                          Date:  January 8, 2008
17                                             Time: 9:00 a.m.
                                               Judge: Magistrate Judge Elizabeth D. Laporte
18                                             Courtroom: E

19

20

21

22

23

24

25

26

27

28

1

I, Daniel Keller, declare:

2

      1.     I am an attorney duly admitted to practice before all the courts in the state of

3

California and am a partner of KELLER, FISHBACK & JACKSON LLP.  The information stated

4

in this declaration is based on my personal knowledge.  If called upon as a witness to testify, I

5

could and would testify to the following facts.

6

      2.     Attached hereto as Exhibit A is a true and correct copy of the complaint filed in the

7

subject state court action.

8

      3.     Attached hereto as Exhibit B is a true and correct copy of the opinion issued in

9

*Overly v. Raybestos- Manhattan*, 1996 U.S. Dist. LEXIS 13535 (N.D. Cal. 1996).

10

      4.     Attached hereto as Exhibit C is a true and correct copy of the opinion issued in

11

*Viala v. Owens-Corning Fiberglas*, 1994 U.S. Dist. LEXIS 4824 (N.D. Cal. 1994).

12

      5.     Attached hereto as Exhibit D is a true and correct copy of the opinion issued in

13

*Nguyen v. Allied Signal, Inc.*, 1998 U.S. Dist. LEXIS 15517 (N.D. Cal. 1998).

14

      I declare under the penalty of perjury under the laws of the state of California that the

15

above is true and correct.  Executed on November 19, 2007 in San Francisco, California.

16

17

                              _____/s/_____

                                      Daniel Keller

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Stephen M. Fishback (SBN 191646)<br>J. Bruce Jackson (SBN173215)<br>KELLER, FISHBACK & JACKSON, LLP<br>28720 Roadside Drive, Suite 201, Agoura Hills CA 91301<br>TELEPHONE NO.: (818)879 8033   FAX NO.:<br>ATTORNEY FOR *(Name):* Plaintiffs Albert Wright, Jr. and Marva Joe Green Wright | **FOR COURT USE ONLY**<br><br>**ENDORSED**<br>**FILED**<br>San Francisco County Superior Court<br><br>SEP 1 3 2007<br><br>GORDON PARK-LI, Clerk<br>BY: DEBORAH STEPPE<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco CA 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
ALBERT WRIGHT, JR., et.al. v. A.W. CHESTERTON , et.al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited ☐ Limited<br>(Amount (Amount<br>demanded demanded is<br>exceeds $25,000) $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **CGC-07-274382**<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☑ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve           in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.☑ monetary   b.☐ nonmonetary; declaratory or injunctive relief   c.☑ punitive
4. Number of causes of action *(specify):* six
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 13, 2007
J. Bruce Jackson
_____
(TYPE OR PRINT NAME)                    ► _____
                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
A.W. CHESTERTON COMPANY, INC.;
AMERICAN STANDARD, INC.;
ASBESTOS CORPORATION LTD.; see attachment

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ALBERT WRIGHT JR and MARVA JOE GREEN WRIGHT

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* San Francisco Superior Court 400 McAllister St. San Francisco, CA | **CASE NUMBER:** *(Número del Caso):* **07 - 274382** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Stephen Fishback, Keller, Fishback & Jackson LLP, 28720 Roadside Drive, Ste 201, Agoura Hills, CA 91301
818-879-8033

| DATE: **SEP 1 3 2007** *(Fecha)* | **Gordon Park-Li** Clerk, by ~~Deborah Steppe~~ , Deputy *(Secretario)* *(Adjunto)* |
|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

[SEAL]

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 American LegalNet, Inc. www.USCourtForms.com |

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Wright v AW CHESTERTON CO, et al | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

BUFFALO PUMPS, INC.; CBS CORPORATION, a DELAWARE CORPORATION, individually,
    successor-in-interest to and formerly known as VIACOM, INC. and WESTINGHOUSE
    ELECTRIC CORPORATION; CRANE CO.;
CROWN CORK & SEAL COMPANY, INC.,  individually and as successor-in-interest to
    MUNDET CORK COMPANY;
DOMCO, INC. FLOOR PRODUCTS (TEXAS), individually and successor-in-
    interest to AZROCK INDUSTRIES, INC.;
DOUGLASS INSULATION COMPANY,  INC.; FAIRBANKS MORSE COMPANY;
FLOWSERVE CORPORATION, individually and as successor-in- interest to
    WORTHINGTON PUMPS; FMC CORPORATION; FOSTER WHEELER LLC;
FRASER'S BOILER SERVICE, INC.; GARLOCK SEALING TECHNOLOGIES, LLC, individually and
    successor-in-interest  to GARLOCK, INC.; GENERAL ELECTRIC COMPANY; GEORGIA-PACIFIC
    CORPORATION; GOULDS PUMPS, INC.;GRINNELL CORPORATION: HILL BROTHERS
    CHEMICAL COMPANY; HONEYWELL INTERNATIONAL, INC. individually and formerly known
    as ALLIED SIGNAL, INC., as successor-in-interest to  the BENDIX CORPORATION;
IMO INDUSTRIES, INC. individually and as successor-in-interest to DELALVAL
    PUMPS and WARREN PUMPS;INGERSOLL-RAND COMPANY;
ITT INDUSTRIES, INC. individually and as successor-in-interest to BELL & GOSSETT;
J.T. THORPE & SON, INC.; KAISER GYPSUM COMPANY, INC.;KENTILE FLOORS, INC.;
LESLIE CONTROLS, INC.; METALCLAD INSULATION  ORPORATION, individually and as
    successor-in-interest to NOR-CAL INSULATION; MINNESOTA MINING CORPORATION aka
    3M COMPANY; NIBCO, INC. dba CALNIBCO; OWENS-ILLINOIS, INC.;
PLANT INSULATION COMPANY; POWER ENGINEERING AND EQUIPMENT
    COMPANY, INC.; QUINTEC INDUSTRIES, INC.;RAPID AMERICAN CORP., individually and
    as successor-in-interest to PHILIP CAREY CORPORATION;SEPCO CORPORATION:
SIEMENS CORPORATION, aka, dba, and/or individually and successor-in-interest to
    SIEMENS ENERGY AND AUTOMATION, INC., SIEMENS POWER GENERATION;
SOCO-WEST, INC.; STERLING FLUID SYSTEMS (USA) LLC,  dba and individually and
    successor-in-interest to PEERLESS PUMP COMPANY, INDIAN HEAD, INC.;
THORPE INSULATION CORPORATION; WARREN PUMPS, LLC; DOES 1-500

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

electronic form
WWW.LawCA.com
Law Publishers

**ENDORSED**
**F I L E D**
San Francisco County Superior Court

SEP 1 3 2007

GORDON PARK-LI, Clerk
BY: DEBORAH STEPPE
Deputy Clerk

**SUMMONS ISSUED**

Stephen M. Fishback, Esq. (State Bar No. 191646)
J. Bruce Jackson, Esq. (State Bar No. 173215)
**KELLER, FISHBACK & JACKSON LLP**
28720 Roadside Drive, Suite 201
Agoura Hills, CA 91301
Telephone: 818.879.8033   **CASE MANAGEMENT CONFERENCE SET**
Facsimile:  818.292.8891

Attorneys for Plaintiffs    **AUG 2 0 2008   -1:30PM**

**DEPARTMENT 206**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**CITY AND COUNTY OF SAN FRANCICO**
**(UNLIMITED JURISDICTION)**

ALBERT WRIGHT JR and MARVA JOE
GREEN WRIGHT,

        Plaintiffs,

    vs.

A.W. CHESTERTON COMPANY, INC.;
AMERICAN STANDARD, INC.;
ASBESTOS CORPORATION LTD.;
BUFFALO PUMPS, INC.;
CBS CORPORATION, a DELAWARE
   CORPORATION, individually, successor-
   in-interest to and formerly known as
   VIACOM, INC. and WESTINGHOUSE
   ELECTRIC CORPORATION;
CRANE CO.;
CROWN CORK & SEAL COMPANY, INC.,
   individually and as successor-in-interest to
   MUNDET CORK COMPANY;
DOMCO, INC. FLOOR PRODUCTS
   (TEXAS), individually and successor-in-
   interest to AZROCK INDUSTRIES, INC.;
DOUGLASS INSULATION COMPANY,
   INC.;
FAIRBANKS MORSE COMPANY;
FLOWSERVE CORPORATION, individually
   and as successor-in- interest to
   WORTHINGTON PUMPS;
FMC CORPORATION;
FOSTER WHEELER LLC;

Case No. **CGC-07-274382**

**COMPLAINT FOR PERSONAL INJURY -
ASBESTOS**

**(ACTION IS SUBJECT TO GENERAL
ORDERS IN FILE NO. 828684)**

Negligence
Strict Liability
False Representation
Intentional Tort
Premises Owner/Contractor Liability
Loss of Consortium

1   FRASER'S BOILER SERVICE, INC.;
    GARLOCK SEALING TECHNOLOGIES,
2       LLC, individually and successor-in-interest
        to GARLOCK, INC.;
3   GENERAL ELECTRIC COMPANY;
    GEORGIA-PACIFIC CORPORATION;
4   GOULDS PUMPS, INC.;
    GRINNELL CORPORATION:
5   HILL BROTHERS CHEMICAL COMPANY;
6   HONEYWELL INTERNATIONAL, INC.
        individually and formerly known as ALLIED
7       SIGNAL, INC., as successor-in-interest to
        the BENDIX CORPORATION;
8   IMO INDUSTRIES, INC. individually and as
        successor-in-interest to DELALVAL
9       PUMPS and WARREN PUMPS;
10  INGERSOLL-RAND COMPANY;
    ITT INDUSTRIES, INC. individually and as
11      successor-in-interest to BELL & GOSSETT;
    J.T. THORPE & SON, INC.;
12  KAISER GYPSUM COMPANY, INC.;
13  KENTILE FLOORS, INC.;
    LESLIE CONTROLS, INC.;
14  METALCLAD INSULATION
        CORPORATION, individually and as
15      successor-in-interest to NOR-CAL
        INSULATION;
16  MINNESOTA MINING CORPORATION aka
17      3M COMPANY;
    NIBCO, INC. dba CALNIBCO;
18  OWENS-ILLINOIS, INC.;
    PLANT INSULATION COMPANY;
19  POWER ENGINEERING AND EQUIPMENT
        COMPANY, INC.;
20  QUINTEC INDUSTRIES, INC.;
21  RAPID AMERICAN CORP., individually and
        as successor-in-interest to PHILIP CAREY
22      CORPORATION;
    SEPCO CORPORATION:
23  SIEMENS CORPORATION, aka, dba, and/or
24      individually and successor-in-interest to
        SIEMENS ENERGY AND
25      AUTOMATION, INC., SIEMENS POWER
        GENERATION;
26  SOCO-WEST, INC.;
    STERLING FLUID SYSTEMS (USA) LLC,
27      dba and individually and successor-in-interest
28      to PEERLESS PUMP COMPANY, INDIAN

HEAD, INC.;
THORPE INSULATION CORPORATION;
WARREN PUMPS, LLC;
DOES 1-500

Defendants

---

PLAINTIFFS, ALBERT WRIGHT JR and MARVA JOE GREEN WRIGHT, (hereinafter

Plaintiff(s)), COMPLAIN AND ALLEGES AS FOLLOWS as against the above-named

defendants:

      1.    The true names and capacities, whether individual, corporate, associate, governmental

or otherwise, of defendants DOES 1 through 500, are unknown to plaintiff at this time, who

therefore sues said defendants by such fictitious names.  When the true names and capacities of

said defendants have been ascertained, plaintiff will amend this complaint accordingly.  Plaintiff is

informed and believes, and thereon alleges, that each defendant designated herein as a DOE is

responsible, negligently or in some other actionable manner, for the events and happenings

hereinafter referred to, and caused injuries and damages thereby to the plaintiff, as hereinafter

alleged.

      2.    At all times herein mentioned, each of the defendants was the agent, servant,

employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each

defendant was acting in the full course and scope of said agency, service, employment and/or joint

venture.

      3.    Plaintiffs are informed and believes, and thereon alleges that at all times herein

mentioned, defendants on Exhibits "B" and DOES 1 through 300, inclusive, were and are

corporations, partnerships, unincorporated associations, sole proprietorships and/or other business

entities organized and existing under and by virtue of the laws of the State of California, or the

laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were

1    and are authorized to do and are doing business in the State of California, and that said defendants,

2    or some of them, have regularly conducted business in the County of San Francisco, State of

3    California.

4                          **FIRST CAUSE OF ACTION**
                              (Negligence)

5

6    **PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "B," AND DOES 1-**
   **300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE**

7    **OF ACTION FOR NEGLIGENCE ALLEGES AS FOLLOWS:**

8

9         4.         At all times herein mentioned, each of the named defendants and DOES 1

10    through 300 was the successor, successor in business, successor in product line or a portion

11    thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion

12    thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or

13    member in an entity researching, studying, manufacturing, fabricating, designing, modifying,

14    labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting,

15    servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding,

16    manufacturing for others, packaging and advertising a certain product, namely asbestos, and other

17    products containing asbestos. Said entities shall hereinafter collectively be called "alternate

18    entities." Each of the herein named defendants is liable for the tortious conduct of each successor,

19    successor in business, successor in product line or a portion thereof, assign, predecessor in product

20    line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned

21    entity, or entity that it was a member of, or funded, that researched, studied, manufactured,

22    fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale,

23    supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed,

24    warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos,

25    and other products containing asbestos. The following defendants, and each of them, are liable for

26    the acts of each and every "alternate entity," and each of them, in that there has been a virtual

27    destruction of plaintiff's remedy against each such "alternate entity"; defendants, and each of

28    them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity";

such "alternate entity"; defendants, and each of them, caused the destruction of plaintiff's remedy against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity."

5.     At all times herein mentioned, defendants, their "alternate entities," and each of them, were and/or are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos and other products containing asbestos. Said asbestos and other products containing asbestos (hereinafter "asbestos and other products containing asbestos" and/or "asbestos-containing products") specifically include, but are not limited to: adhesives/tape/mastic; thermal insulation/insulating materials; insulating cement; pipecovering/block insulation; caulking/putties; cement pipe; boilers; heaters; ductwork; cloth; flooring materials; blankets; cloth; gaskets; packing; pumps; compressors; pipes; valves; engines; turbines; motors; generators; gloves/aprons; thermal paper; asbestos fiber; refractory materials; panels; boards; tubes.

6.     At all times herein mentioned, defendants, their "alternate entities" and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products unsafe and dangerous for use by "exposed persons".

1        7.      Defendants, their "alternate entities," and each of them, had a duty to exercise

2    due care in the pursuance of the activities mentioned above and defendants, and each of them,

3    breached said duty of due care.

4        8.      Defendants, their "alternate entities" and each of them, knew, or should have

5    known, and intended that the aforementioned asbestos and products containing asbestos would be

6    transported by truck, rail, ship and other common carriers, that in the shipping process the products

7    would break, crumble or be otherwise damaged; and/or that such products would be used for

8    insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other

9    applications, including, but not limited to sawing, chipping, hammering, scraping, sanding,

10   breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos

11   fibers, and that through such foreseeable use and/or handling "exposed persons," including

12   plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

13       9.      Plaintiff has used, handled or been otherwise exposed to asbestos and asbestos-

14   containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's

15   exposure to asbestos and asbestos-containing products occurred at various locations as set forth in

16   Exhibit "A," attached to plaintiff's complaint and incorporated by reference herein.

17       9a.     Defendants, their "alternate entities," and each of them breached their duties by:

18           (a) failing to warn plaintiff of the dangers, characteristics, and potentialities of their

19   asbestos-containing products when they knew or should have known that exposure to their

20   asbestos-containing products would cause disease and injury;

21           (b) failing to warn plaintiff of the dangers to which he was exposed when they knew or

22   should have known of the dangers;

23           (c) failing to exercise reasonable care to warn plaintiff of what would be safe, sufficient,

24   and proper protective clothing, equipment, and appliances when working with or near or being

25   exposed to their asbestos and asbestos-containing products;

26           (d) failing to provide safe, sufficient and proper protective clothing, equipment and

27   appliances with their asbestos and asbestos-containing products;

28           (e) failing to test its asbestos and asbestos-containing products in order to ascertain the

1    extent of danger involved upon exposure thereto;

2    (f) failing to conduct such research as should have been conducted in the exercise of

3    reasonable care, in order to ascertain the dangers involved upon exposure to their asbestos and

4    asbestos-containing products;

5    (g) failing to remove the product or products from the market when the defendant

6    corporations knew or should have known of the hazards of exposure to their asbestos and asbestos-

7    containing products;

8    (h) failing upon discovery of the dangers, hazards, and potentialities of exposure to

9    asbestos to adequately warn and apprise plaintiff of said dangers, hazards, and potentialities

10    discovered;

11    (i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos

12    to package said asbestos and asbestos-containing products so as to eliminate said dangers, hazards,

13    and potentialities;

14    (j) failing to advise plaintiff and others that the risks inherent in their asbestos-containing

15    product greatly outweighed the benefits, if any, afforded by such products; and

16    (k) generally using unreasonable, careless, and negligent conduct in the manufacture,

17    fabrication, supply, distribution, sale, installation, and/or use of their asbestos and asbestos-

18    containing products, among other actions/inactions.

19    Plaintiffs disclaim any cause of action or recovery for any injuries and damages resulting

20    from exposure to asbestos caused by the acts or omissions of defendants committed at the specific

21    and proven direction of an officer of the United States Government acting within in his official

22    capacity. To the extent that any of the plaintiff's asbestos exposure occurred on board vessels or

23    aircraft owned and/or operated exclusively by the United States military or the construction and/or

24    repair of such vessels or aircraft occurred on proven federal enclaves, plaintiff's negligence and

25    strict liability claims against manufacturers, sellers and suppliers of specialized machinery pumps,

26    valves, boilers, turbines, separators, steam traps, engines and other mechanical equipment installed

27    in such vessels and aircraft are not based on the theory of defective design, but rather on the theory

28    of failure to warn of the health risks and hazards associated with working with and/or around

1  asbestos and asbestos-containing products only and renders such defendants liable in both

2  negligence and in strict products liability for such marketing defect.

3      10.    As a direct and proximate result of the conduct of the defendants, their "alternate

4  entities," and each of them, as aforesaid, plaintiff's exposure to asbestos and asbestos-containing

5  products caused severe and permanent injury to the plaintiff, the nature of which, along with the

6  date of plaintiff's diagnosis, are set forth in Exhibit "A," attached to plaintiff's complaint and

7  incorporated by reference herein.

8      11.    Plaintiff is informed and believes, and thereon alleges, that progressive lung

9  disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without

10  perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing

11  products over a period of time.

12      12.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

13  containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-

14  containing products presented any risk of injury and/or disease.

15      13.    As a direct and proximate result of the aforesaid conduct of defendants, their

16  "alternate entities," and each of them, plaintiff has suffered, and continues to suffer, permanent

17  injuries and/or future increased risk of injuries to his person, body and health, including, but not

18  limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress

19  attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in the

20  sum in excess of the jurisdictional limits of a limited civil case in the Superior Court.

21      14.    As a direct and proximate result of the aforesaid conduct of the defendants, their

22  "alternate entities," and each of them, plaintiff has incurred, is presently incurring, and will incur

23  in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays

24  and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this

25  time, and plaintiff prays leave to amend this complaint accordingly when the true and exact cost

26  thereof is ascertained.

27      15.    As a further direct and proximate result of the said conduct of the defendants,

28  their "alternate entities," and each of them, plaintiff has incurred, and will incur, loss of income,

1   wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses,

2   the full nature and extent of which are not yet known to plaintiff; and leave is requested to amend

3   this complaint to conform to proof at the time of trial.

4        16.    Defendants, their "alternate entities," and each of them, and their officers,

5   directors and managing agents participated in, authorized, expressly and impliedly ratified, and

6   had full knowledge of, or should have known of, each of the acts set forth herein.

7        17.    Defendants, their "alternate entities," and each of them, are liable for the

8   fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each

9   defendant's officers, directors and managing agents participated in, authorized, expressly and

10  impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their

11  "alternate entities" as set forth herein.

12       18.    The herein-described conduct of said defendants, their "alternate entities," and

13  each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and

14  indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example and

15  by way of punishing said defendants, seeks punitive damages according to proof.

16       WHEREFORE, plaintiff prays judgment against defendants, their "alternate

17  entities," and each of them, as hereinafter set forth.

### SECOND CAUSE OF ACTION
#### (Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

     19.    Plaintiff incorporates herein by reference, as though fully set forth herein, the

allegations contained in Paragraphs 4-5 and 8-18 of the First Cause of Action herein.

     20.    Defendants, their "alternate entities," and each of them, knew and intended that

the above-referenced asbestos and asbestos-containing products would be used by the purchaser or

1   user without inspection for defects therein or in any of their component parts and without

2   knowledge of the hazards involved in such use.

3       21.    Said asbestos and asbestos-containing products were defective and unsafe for

4   their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death.

5   The defect existed in the said products at the time they left the possession of defendants, their

6   "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including

7   asbestosis, other lung damage, and cancer to "exposed persons," including plaintiff herein, while

8   being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and

9   dangerous for use.

10      22.    "Exposed persons" did not know of the substantial danger of using said products.

11  Said dangers were not readily recognizable by "exposed persons". Said defendants, their "alternate

12  entities," and each of them, further failed to adequately warn of the risks to which plaintiff and

13  others similarly situated were exposed.

14      23.    In researching, manufacturing, fabricating, designing, modifying, testing or

15  failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying,

16  offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation,

17  repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising

18  asbestos and asbestos-containing products, defendants, their "alternate entities," and each of them,

19  did so with conscious disregard for the safety of "exposed persons" who came in contact with said

20  asbestos and asbestos-containing products, in that said defendants, their "alternate entities," and

21  each of them, had prior knowledge that there was a substantial risk of injury or death resulting

22  from exposure to asbestos or asbestos-containing products, including, but not limited to,

23  mesothelioma, lung cancer, and asbestosis.  Said knowledge was obtained, in part, from scientific

24  studies, government data, and medical data to which defendants had access, as well as scientific

25  studies performed by, at the request of, or with the assistance of, said defendants, their "alternate

26  entities," and each of them, and which knowledge was obtained by said defendants, their "alternate

27  entities," and each of them on or before 1930, and thereafter.

28

1    24.    On or before 1930, and thereafter, said defendants, their "alternate entities" and

2    each of them, were aware that members of the general public and other "exposed persons," who

3    would come in contact with their asbestos and asbestos-containing products, had no knowledge or

4    information indicating that asbestos or asbestos-containing products could cause injury, and said

5    defendants, their "alternate entities," and each of them, knew that members of the general public

6    and other "exposed persons," who came in contact with asbestos and asbestos-containing products,

7    would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products

8    was safe, when in fact said exposure was extremely hazardous to health and human life.

9    25.    With said knowledge, said defendants, their "alternate entities," and each of

10    them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease,

11    buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market,

12    warrant, re-brand, manufacture for others, package and advertise said asbestos and asbestos-

13    containing products without attempting to protect "exposed persons" from or warn "exposed

14    persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-

15    containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed

16    persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-

17    containing products, defendants, their "alternate entities," and each of them, intentionally failed to

18    reveal their knowledge of said risk, and consciously and actively concealed and suppressed said

19    knowledge from "exposed persons" and members of the general public, thus impliedly

20    representing to "exposed persons" and members of the general public that asbestos and asbestos-

21    containing products were safe for all reasonably foreseeable uses. Defendants, their "alternate

22    entities," and each of them, engaged in this conduct and made these implied representations with

23    the knowledge of the falsity of said implied representations.

24    26.    The above-referenced conduct of said defendants, their "alternate entities," and

25    each of them, was motivated by the financial interest of said defendants, their "alternate entities,"

26    and each of them, in the continuing, uninterrupted research, design, modification, manufacture,

27    fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection,

28    installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing

for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their "alternate entities," and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including plaintiff.

27.     Plaintiff alleges that the aforementioned defendants, their "alternate entities," and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for their intended use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

28.     Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by the aforementioned defendants, their "alternate entities," and each of them and that plaintiff cannot identify precisely which asbestos or asbestos-containing products caused the injuries complained of herein.

29.     Plaintiff relied upon defendants', their "alternate entities'," and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products. As a direct, foreseeable and proximate result thereof, plaintiff has been injured permanently as alleged herein.

30.     As the above referenced conduct of said defendants was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons", including plaintiff who has suffered the injuries and damages previously alleged, plaintiffs, for the sake of example, and by way of punishing said defendants, seek damages according to proof.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

1

## THIRD CAUSE OF ACTION
**(False Representation Under Restatement of Torts Section 402-B)**

2

3    **AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF
ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS
SECTION 402-B, PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "B," DOES
1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS
FOLLOWS:**

4

5

6         31.    Plaintiffs hereby incorporate by reference, as though fully set forth herein, each

7    and every allegation contained in the First and Second Causes of Action.

8         32.    At all times herein mentioned, each of the named defendants and DOES 1

9    through 300 was the successor, successor in business, successor in product line or a portion

10   thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion

11   thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or

12   member in an entity researching, studying, manufacturing, fabricating, designing, modifying,

13   labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting,

14   servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding,

15   manufacturing for others, packaging and advertising a certain product, namely asbestos, and other

16   products containing asbestos. Said entities shall hereinafter collectively be called "alternate

17   entities." Each of the herein named defendants is liable for the tortious conduct of each successor,

18   successor in business, successor in product line or a portion thereof, assign, predecessor in product

19   line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned

20   entity, or entity that it was a member of, or funded, that researched, studied, manufactured,

21   fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale,

22   supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed,

23   warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos,

24   and other products containing asbestos. The following defendants, and each of them, are liable for

25   the acts of each and every "alternate entity," and each of them, in that there has been a virtual

26   destruction of plaintiff's remedy against each such "alternate entity"; defendants, and each of

27   them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity";

28

1   such "alternate entity"; defendants, and each of them, caused the destruction of plaintiff's remedy

2   against each such "alternate entity"; each such defendant has the ability to assume the risk-

3   spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill

4   originally attached to each such "alternate entity."

5         33.     At all times herein mentioned, defendants, their "alternate entities," and each of

6   them, were and/or are engaged in the business of researching, manufacturing, fabricating,

7   designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

8   supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

9   marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain

10  product, namely asbestos and other products containing asbestos.  Said asbestos and other products

11  containing asbestos (hereinafter "asbestos and other products containing asbestos" and/or

12  "asbestos-containing products") specifically include, but are not limited to: adhesives/tape/mastic;

13  thermal insulation/insulating materials; insulating cement; pipecovering/block insulation;

14  caulking/putties; cement pipe; boilers; heaters; ductwork; cloth; flooring materials; blankets; cloth;

15  gaskets; packing; pumps; compressors; pipes; valves; engines; turbines; motors; generators;

16  gloves/aprons; thermal paper; asbestos fiber; refractory materials; panels; boards; tubes.

17        34.     At all times herein mentioned, defendants, their "alternate entities" and each of

18  them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated,

19  designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of

20  the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,

21  inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-

22  branded, manufactured for others, packaged and advertised, a certain product, namely asbestos,

23  and other products containing asbestos, in that said products caused personal injuries to users,

24  consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively

25  called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby

26  rendering said products unsafe and dangerous for use by "exposed persons".

27

28

1      35.      Defendants, their "alternate entities," and each of them, had a duty to exercise

2  due care in the pursuance of the activities mentioned above and defendants, and each of them,

3  breached said duty of due care.

4      36.      Defendants, their "alternate entities" and each of them, knew, or should have

5  known, and intended that the aforementioned asbestos and products containing asbestos would be

6  transported by truck, rail, ship and other common carriers, that in the shipping process the products

7  would break, crumble or be otherwise damaged; and/or that such products would be used for

8  insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other

9  applications, including, but not limited to sawing, chipping, hammering, scraping, sanding,

10  breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos

11  fibers, and that through such foreseeable use and/or handling "exposed persons," including

12  plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

13      37.      Plaintiff has used, handled or been otherwise exposed to asbestos and asbestos-

14  containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's

15  exposure to asbestos and asbestos-containing products occurred at various locations as set forth in

16  Exhibit "A," attached to plaintiff's complaint and incorporated by reference herein.

17      38.      As a direct and proximate result of the conduct of the defendants, their "alternate

18  entities," and each of them, as aforesaid, plaintiff's exposure to asbestos and asbestos-containing

19  products caused severe and permanent injury to the plaintiff, the nature of which, along with the

20  date of plaintiff's diagnosis, are set forth in Exhibit "A," attached to plaintiff's complaint and

21  incorporated by reference herein.

22      39.      Plaintiff is informed and believes, and thereon alleges, that progressive lung

23  disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without

24  perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing

25  products over a period of time.

26      40.      Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

27  containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-

28  containing products presented any risk of injury and/or disease.

41.     As a direct and proximate result of the aforesaid conduct of defendants, their "alternate entities," and each of them, plaintiff has suffered, and continues to suffer, permanent injuries and/or future increased risk of injuries to his person, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in the sum in excess of the jurisdictional limits of a limited civil case in the Superior Court.

42.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this time, and plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

43.     As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

44.     Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have knowledge of each of the acts set forth herein. The specific names, job titles, positions, or other identifying offices of said individuals are necessarily in possession of defendants and full information concerning the facts relevant to this controversy and defendants, and each of them, have more knowledge or the identities of said persons than plaintiffs, herein.

45.     At the aforementioned time when defendants, their "alternate entities," and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed,

1    warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and

2    asbestos-containing products, as herein above set forth, the defendants, their "alternate entities,"

3    and each of them, expressly and impliedly represented to members of the general public, including

4    the purchasers and users of said product, and other "exposed persons," including the plaintiff

5    herein and potentially some or all of his employers, that asbestos and asbestos-containing products,

6    were of merchantable quality, free of defects, and safe for the use for which they were intended.

7    Said misrepresentations of such material facts impacting the safety, reliability, and quality of

8    defendants' asbestos-containing products specifically included the failure to disclose known or

9    suspected hazards of working with and around said asbestos-containing products to the plaintiff

10    and others. Defendants' misrepresentations went far beyond the bounds of mere promises because

11    defendants affirmatively stated through those means more fully described herein that defendants'

12    asbestos and/or asbestos-containing products were safe and safe to use for their intended uses, but

13    they were not safe.  Defendants knew or should have known at the time of their misrepresentations

14    that such representations were false; defendants knew or should have known at the time of their

15    misrepresentations that their asbestos and/or asbestos-containing products were not safe or safe for

16    their intended uses.  Despite knowing of the dangers to plaintiff of working with and around

17    defendants' asbestos and/or asbestos-containing, defendants failed to disclose such dangers and in

18    fact concealed the same from plaintiff.  Defendants' misrepresentations and concealment of the

19    dangers attendant to working with and around defendants' asbestos and/or asbestos-containing

20    products occurred during such periods as defendants researched, manufactured, fabricated,

21    designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of

22    the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,

23    inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-

24    branded, manufactured for others, packaged and advertised asbestos and other products containing

25    asbestos, and more specifically as it relates to plaintiff, during those periods of employment when

26    plaintiff worked with defendants' asbestos and/or asbestos-containing products as detailed in

27    Exhibit A. The facts misrepresented regarding the safety, reliability, and quality of defendants'

28    asbestos-containing products are necessarily in possession of defendants who have full information

1   concerning the facts relevant to this controversy and defendants, and each of them, have more

2   knowledge or the facts of said misrepresentations than plaintiffs, herein.

3       46.     The purchasers and users of said asbestos and asbestos-containing products, and

4   other "exposed persons," including the plaintiff and potentially some or all of his employers, relied

5   upon said representations of defendants, their "alternate entities," and each of them, *as defendants,*

6   *their "alternate entities," and each of them so intended,* in the selection, purchase and use of

7   asbestos and asbestos-containing products.

8       47.     Said representations by defendants, their "alternate entities," and each of them,

9   were false and untrue, and defendants knew or should have known at the time they were untrue, in

10  that the asbestos and asbestos-containing products  were not safe for their intended use, nor were

11  they of merchantable quality as represented by defendants, their "alternate entities," and each of

12  them, in that asbestos and asbestos-containing products have very dangerous properties and defects

13  whereby said products cause asbestosis, other lung damages and cancer, and have other defects

14  that cause injury and damage to the users of said products and other "exposed persons," thereby

15  threatening the health and life of said persons including plaintiff herein.

16      48.   Defendants, their "alternate entities," and each of them, based on the state of

17  scientific and medical literature, as well as their own studies and research conducted regarding the

18  health hazards associated with working with and/or around asbestos-containing product had no

19  reasonable basis for believing the untrue representations made to plaintiff, plaintiff's employers,

20

21  and other groups and organizations with which plaintiff was affiliated, such as unions, through

22  which plaintiff would reasonably be expected to learn of such misrepresentations.

23      49.   Plaintiff and others, lacking the sophistication and knowledgeable regarding the

24  health hazards of working with and around defendants', their alternate entities, and each of them,

25  asbestos-containing products and relied upon the said misrepresentations and were, in fact,

26

27  deceived into believing that said asbestos-containing products were safe and free of defects and

28  would not cause severe risk of injury and death.  Had plaintiff known that defendants' asbestos

1   and/or asbestos-containing products were unsafe for their intended uses, plaintiff would not have

2   used and/or worked around the same or taken other steps to properly safeguard his health or the

3   health of others when working with or around defendants' and others' asbestos-containing

4   products.

5       50.    The facts intentionally omitted or misstated regarding the safety, reliability, and

6   quality of defendants' asbestos and/or asbestos-containing products were/are necessarily in

7   possession of defendants who had/have full information concerning the facts relevant to this

8   controversy and defendants, and each of them, had/have more knowledge of the facts of said

9   concealments and nondisclosures than plaintiff, herein.

10

11      51.    As a direct and proximate result of said false representations by defendants, their

12  "alternate entities," and each of them, the plaintiff sustained the injuries and damages herein above

13  set forth.

14      WHEREFORE, plaintiff prays judgment against defendants, their "alternate

15  entities," and each of them, as hereinafter set forth.

16

17                              **FOURTH CAUSE OF ACTION**
                                      **(Intentional Tort)**
18
        **AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF**
19  **ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708**
    **THROUGH 1710, PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "B,"**
20  **DOES 1-300, THEIR "ALTERNATE ENTITIES," AND ALLEGES AS FOLLOWS:**

21      52.    Plaintiff, by this reference, hereby incorporates by reference, as though fully set

22  forth herein, each and every allegation contained in the Third Causes of Action herein, excepting

23  therefrom allegations pertaining to negligence.

24

25      53.    At all times pertinent hereto, the defendants, their "alternate entities," and each

26  of them, owed plaintiff a duty, as provided for in Section 1708, 1709 and 1710 of the Civil Code

27  of the State of California, to abstain from injuring the person, property or rights of the plaintiff.

28  When a duty to act was imposed, as set forth herein, the defendants, their "alternate entities," and

1   each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the

2   plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within

3   Section 1709 (Deceit) and Section 1710 (Fraud) and, more specifically, included suggestions of

4   fact which were not true and which defendants, their "alternate entities," and each of them, did not

5   believe to be true; assertions of fact which were not true and which defendants, their "alternate

6   entities," and each of them, had no reasonable ground for believing to be true, and the suppression

7   of fact when a duty existed to disclose it, all as are more fully set forth herein; the violation of any

8   one such duty gave rise to a cause of action for violation of the rights of the plaintiff as provided

9

10   for in the aforementioned Civil Code sections.

11        54.     Since on or before 1930, the defendants, their "alternate entities," and each of

12   them, have known and have possessed the true facts of medical and scientific data and other

13   knowledge which clearly indicated that the asbestos and asbestos-containing products referred to

14   in plaintiff's First Cause of Action were and are hazardous to the health and safety of plaintiff, and

15   others in plaintiff's position working in close proximity with such materials. The defendants, their

16   "alternate entities," and each of them, have known of the dangerous propensities of other of the

17

18   aforementioned materials and products since before that time. Defendants' misrepresentations

19   went far beyond the bounds of mere promises because defendants affirmatively stated through

20   those means more fully described herein that defendants' asbestos and/or asbestos-containing

21   products were safe and safe to use for their intended uses, but they were not safe.  Defendants

22   knew at the time of their misrepresentations that such representations were false; defendants knew

23

24   at the time of their misrepresentations that their asbestos and/or asbestos-containing products were

25   not safe or safe for their intended uses.  Despite knowing of the dangers to plaintiff of working

26   with and around defendants' asbestos and/or asbestos-containing, defendants failed to disclose

27   such dangers and in fact concealed the same from plaintiff.  Defendants' misrepresentations and

28

---

concealment of the dangers attendant to working with and around defendants' asbestos and/or

asbestos-containing products occurred during such periods as defendants researched,

manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate,

warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought,

offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

marketed, warranted, re-branded, manufactured for others, packaged and advertised asbestos and

other products containing asbestos, and more specifically as it relates to plaintiff, during those

periods of employment when plaintiff worked with defendants' asbestos and/or asbestos-

containing products as detailed in exhibit A. The mere fact that defendant made its asbestos-

containing products available for purchase, use, sale, or otherwise to plaintiff and others was an

intentional and affirmative fraudulent act. With intent to deceive, falsely represent facts regarding

the true hazards of working with and around asbestos-containing products, conceal the health risks

associated with working in an asbestos-contaminated environment, and purposefully failing to

disclosure such material facts to plaintiff, and others in plaintiff's position, and with the intent that

plaintiff and such others should be and remain ignorant of such facts with intent to induce plaintiff

and such others to alter his and their positions to his detriment, injury and/or risk and in order to

gain economic advantages within the market, the following acts occurred:

        a.        Defendants, their "alternate entities," and each of them, did not label any

of the aforementioned asbestos-containing materials and products regarding the hazards of such

materials and products to the health and safety of plaintiffs and others in plaintiffs' position

working in close proximity with such materials until 1964 when certain of such materials were

labeled by some, but not all, of defendants, their "alternate entities," and each of them, herein

when the knowledge of such hazards was existing and known to defendants, their "alternate

entities," and each of them, since on or before 1930. By not labeling such materials as to their said

hazards, defendants, their "alternate entities," and each of them, caused to be suggested as a fact to

1  plaintiff that it was safe for plaintiff to work in close proximity to such materials when in fact it

2  was not true and defendants, their "alternate entities," and each of them, did not believe it to be

3  true;

4        b.        Defendants, their "alternate entities," and each of them, suppressed

5  information relating to the danger of use of the aforementioned materials by requesting the

6  suppression of information to the plaintiff and the general public concerning the dangerous nature

7  of the aforementioned materials to workers, by not allowing such information to be disseminated

8  in a manner which would given general notice to the public and knowledge of the hazardous

9  nature thereof when defendant, their "alternate entities," and each of them, were bound to disclose

10  such information;

11        c.        Defendants, their "alternate entities," and each of them, sold the

12  aforementioned products and materials to plaintiff's employers and others without advising

13  plaintiff and others of the dangers of use of such materials to persons working in close proximity

14  thereto when defendants, their "alternate entities," and each of them, knew of such dangers, and

15  had a duty to disclose such dangers all as set forth herein. By said conduct, defendants, their

16  "alternate entities," and each of them, caused to be positively asserted to plaintiff that which was

17  not true and that which defendants, their "alternate entities," and each of them, had no reasonable

18  ground for believing to be true, to wit, that it was safe for plaintiff to work in close proximity to

19  such materials;

20        d.        Defendants, their "alternate entities," and each of them, suppressed from

21  plaintiff medical and scientific data and knowledge of the results of studies including, but not

22  limited to, the information and knowledge of the contents of the Lanza report. Although bound to

23  disclose it, defendants, their "alternate entities," and each of them influenced A. J. Lanza to change

24  his report, the altered version of which was published in Public Health Reports, Volume 50 at page

25  1 in 1935, thereby causing plaintiff and others to be and remain ignorant thereof. Defendants, their

26  "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated trade

27  journal, to omit mention of danger, thereby lessening the probability of notice of danger to the

28  users thereof;

1    e.    Defendants, their "alternate entities," and each of them, belonged to,

2    participated in, and financially supported the Asbestos Textile Institute and other industry

3    organizations which, for and on behalf of defendants, their "alternate entities," and each of them,

4    actively promoted the suppression of information of danger to users of the aforementioned

5    products and materials, thereby misleading plaintiff by the suggestions and deceptions set forth

6    above in this cause of action. The Dust Control Committee, which changed its name to the Air

7    Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject

8    of dust control. Discussions in this committee were held many times regarding the dangers

9    inherent in asbestos and the dangers which arise from the lack of control of dust, and such

10   information was suppressed from public dissemination from 1946 to a date unknown to plaintiff at

11   this time;

12   f.    Commencing in 1930 with the study of mine and mill workers at

13   Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-

14   Manhattan plants in Manheim and Charleston, South Carolina, defendants, their "alternate

15   entities," and each of them, knew and possessed medical and scientific information of the

16   connection between inhalation of asbestos fibers and asbestosis, which information was

17   disseminated through the Asbestos Textile Institute and other industry organizations to all other

18   defendants, their "alternate entities," and each of them, herein. Between 1942 and 1950, the

19   defendants, their "alternate entities," and each of them, acquired medical and scientific information

20   of the connection between inhalation of asbestos fibers and cancer, which information was

21   disseminated through the Asbestos Textile Institute and other industry organizations to defendant

22   herein. Thereby, defendants, their "alternate entities," and each of them, suggested to the public as

23   a fact that which is not true and disseminated other facts likely to mislead plaintiff. Such facts did

24   mislead plaintiff and others by withholding the afore-described medical and scientific data and

25   other knowledge and by not giving plaintiff the true facts concerning such knowledge of danger,

26   which defendants, their "alternate entities," and each of them, were bound to disclose;

27   g.    Defendants, their "alternate entities," and each of them, failed to warn

28   plaintiff and others of the nature of said materials which were dangerous when breathed and which

1    could cause pathological effects without noticeable trauma, despite the fact that defendants, their

2    "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that

3    said materials were dangerous and a threat to the health of persons coming into contact therewith;

4              h.        Defendants, their "alternate entities," and each of them, failed to provide

5    plaintiff with information concerning adequate protective masks and other equipment devised to

6    be used when applying and installing the products of the defendants, and each of them, despite

7    knowing that such protective measures were necessary, and that they were under a duty to disclose

8    that such materials were dangerous and would result in injury to the plaintiff and others applying

9    and installing such material;

10             i.        Defendants, their "alternate entities," and each of them, when under a

11   duty to so disclose, concealed from plaintiff the true nature of the industrial exposure of plaintiff

12   and knew that plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time,

13   develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants, their

14   "alternate entities," and each of them, also concealed from plaintiff and others that harmful

15   materials to which they were exposed would cause pathological effects without noticeable trauma;

16             j.        Defendants, their "alternate entities," and each of them, failed to provide

17   information of the true nature of the hazards of asbestos materials and that exposure to these

18   materials would cause pathological effects without noticeable trauma to the public, including

19   buyers, users, and physicians employed by plaintiff and potentially plaintiff's employers so that

20   said physicians could examine, diagnose and treat plaintiff and others who were exposed to

21   asbestos, despite the fact that defendants, their "alternate entities," and each of them, were under a

22   duty to so inform and said failure was misleading; and

23             k.        Defendants, their "alternate entities," and each of them, failed to provide

24   adequate information to physicians and surgeons retained by plaintiff's employers and their

25   predecessor companies, for purposes of making physical examinations of plaintiff and other

26   employees as to the true nature of the risk of such materials and exposure thereto when they in fact

27   possessed such information and had a duty to disclose it.

28             55.       Defendants, their "alternate entities," and each of them, based on the state of

scientific and medical literature, as well as their own studies and research conducted regarding the

health hazards associated with working with and/or around asbestos-containing product, knew

that the representations made to plaintiff, plaintiff's employers, and other groups and organizations

with which plaintiff was affiliated, such as unions, through which plaintiff would reasonably be

expected to learn of such representations were false.

56.    Defendants, their "alternate entities," and each of them, willfully failed and

omitted to complete and file First Report of Occupational Injury of Illness regarding plaintiff's

injuries, as required by law, and did willfully fail and omit to file report of injury and occupational

disease with the State of California. Defendants similarly intentionally failed to state and disclose

on their asbestos-containing products and/or packaging the asbestos-related health risk, including

risk of asbestosis and cancer, which resulted from plaintiff and others working with and around

defendants' asbestos-containing products.

57.    Plaintiff was in the class of persons with respect to whom a duty was owed to file

such reports and who would have been protected thereby if the fact of danger from products

complained of had become known and plaintiffs was in the class of persons to whom a duty was

owed as a consumer and user of defendants' asbestos-containing products to be informed truthfully

about the risks of using such asbestos-containing products. Plaintiff and others, not sophisticated

nor knowledgeable regarding asbestos health hazards and the intentions to deceive by defendants,

justifiably relied on defendants' claims and representations regarding their asbestos-containing

products. Had plaintiff known that defendants' asbestos and/or asbestos-containing products were

unsafe for their intended uses, plaintiff would not have used and/or worked around the same.

58.    Defendants, their "alternate entities," and each of them, having such

aforementioned knowledge, and the duty to inform plaintiff about the true facts, and knowing the

plaintiff did not possess such knowledge and would work with and around and ultimately breathe

1  such material innocently, acted falsely and fraudulently and with full intent to cause plaintiff to

2  remain unaware of the true facts and to induce plaintiff to work in a dangerous environment by

3  failing to disclose known information regarding asbestos health hazards, all in violation of

4  Sections 1708, 1709, 1710, and 1711 of the Civil Code of the State of California in an expectation

5  of further sales and proceeds from the supply of defendants' asbestos-containing products.

## FIFTH CAUSE OF ACTION
### (Premises Owner/Contractor Liability)

**AS AND FOR A FURTHER AND FIFTH SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C," DOES 301-450, THEIR "ALTERNATE ENTITIES," (HEREINAFTER "PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS"), AND EACH OF THEM, AND ALLEGES AS FOLLOWS:**

59.    Plaintiffs, by this reference, incorporate the allegations contained in paragraphs 9-16 of the First Cause of Action.

60.    At all times herein mentioned, each of the Premises Owner/Contractor Liability Defendants listed on Exhibit "C" was a successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on the respective premises owned, leased, maintained, managed and/or controlled by them. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein-named defendants is liable for the tortious conduct of each successor, successor-in-business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, that caused the presence as aforesaid of said asbestos-containing insulation and other toxic substances. The defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiffs remedy against each such alternate entity; defendants, and each of them, have acquired the assets, or a portion thereof, of each such alternate entity; defendants, and each of them, have caused the destruction of plaintiffs remedy against each such alternate entity; each such defendant has the ability to assume the risk-spreading role of each such alternate entity, and that each such defendant enjoys the goodwill originally attached to each such alternate entity.

1    61.    At all times mentioned herein, the above-listed Premises Owner/Contractor

2    Liability Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or

3    controlled the premises listed on Exhibit "A" and others where plaintiffs were present. The

4    information provided on Exhibit "A" is preliminary, based on recall over events covering many

5    years and further investigation and discovery may produce more reliable information.

6    Additionally, plaintiffs might have been present at those or other Premises Owner/Contractor

7    Liability Defendants' premises at other locations and on other occasions.

     62.    Prior to and at said times and places, said Premises Owner/Contractor Liability

8    Defendants, and each of them, respectively, caused certain asbestos-containing materials, other

9    building materials, products and toxic substances to be constructed, installed, disturbed,

10   maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective

11   premises, by their own workers and/or by various contractors and/or subcontractors, and caused

12   the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the

13   ambient air and thereby created a hazardous and unsafe condition to plaintiffs and other persons

14   exposed to said asbestos fibers and toxic substances while present at said premises.

     63.    At all times mentioned herein, said Premises Owner/Contractor Liability

15   Defendants, and each of them, knew or in the exercise of ordinary and reasonable care should have

16   known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe

17   condition and unreasonable risk of harm and personal injury to plaintiffs and other workers or

18   persons so exposed present on each of the aforesaid respective premises.

19   64.    At all times relevant herein, plaintiffs entered said premises and used or occupied

20   each of said respective premises as intended and for each of the respective Premises

21   Owner/Contractor Liability Defendants' benefit and advantage and at each of the respective

22   Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, plaintiffs

23   were exposed to dangerous quantities of asbestos fibers and other toxic substances released into

24   the ambient air by the aforesaid hazardous conditions and activities managed, maintained,

25   initiated, and/or otherwise created, controlled, or caused by said Premises Owner/Contractor

26   Liability Defendants, and each of them.

27

28

65.     Plaintiffs at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

66.     The hazardous condition or risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises was not a known condition that plaintiffs employer was hired to correct or repair.

67.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, remained in control of the premises where plaintiffs were performing his work.

68.     At all times mentioned herein, the Premises Owner/Contractor Liability Defendants owed to plaintiffs and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as plaintiff to an unreasonable risk of harm and to avoid causing injury to said person.

69.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions and that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

70.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn plaintiffs of, the existence of the aforesaid dangerous conditions and hazards on said premises.

71.     At all times herein mentioned, said Premises Owner/Contractor Liability Defendants, and each of them, negligently provided unsafe equipment, for the performance of the work that caused or contributed to plaintiffs injuries.

72.     Prior to and at the times and places aforesaid, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials, other building materials, products and toxic substances to be constructed, installed, maintained,

used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured plaintiff.

73.    At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm plaintiff and others unless special precautions were taken. The said Premises Owner/Contractor Liability Defendants, and each of them, knew or should have known that the work required special procedures and instruction so as to be accomplished in a safe manner and avoid injury to plaintiffs and others. The Premises Owner/Contractor Liability Defendants were aware or should have been aware that such special procedures and instructions were not taken nor provided.

74.    In part, plaintiffs was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such premises owners and/or contractors' failure to take the necessary precautions.

75.    The work, actions and/or inactions of contractors on premises controlled by the Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

76.    The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct includes but is not limited to:

        a.    Failure to advise and warn of asbestos and other toxic dusts;

        b.    Failure to suppress the asbestos-containing or toxic dusts;

1          c.          Failure to remove the asbestos-containing and toxic dusts through use of

2    ventilation or other approved appropriate means;

3          d.          Failure to provide adequate breathing protection, i.e., approved

4    respirators or masks;

5          e.          Failure to inspect and/or test the air;

6          f.          Failure to provide proper medical monitoring, medical check-ups, and

7    reviews, and provide reports and findings on any such check-ups or monitoring that did occur.

8          77.          The Premises Owner/Contractor Defendants' duty to maintain and provide safe

9    premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties

10   arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health and Safety

11   Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Premises

12   Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves

     or others.

13         78.          Prior to and at said times and places, said Premises Owner/Contractor Liability

14   Defendants were subject to certain ordinances, statutes, and other government regulations

15   promulgated by the United States Government, the State of California, local and regional

16   governments and agencies, and others, including but not limited to the General Industry Safety

17   Orders promulgated pursuant to California Labor Code §6400 and the California Administrative

18   Code under the Division of Industrial Safety, Department of Industrial Relations, including but not

19   limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4150, 4106, 4107,

20   and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances

21   under Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code

22   §40200, et seq., which empowers the Bay Area Air Quality Management District and South Coast

23   Air Quality Management District to promulgate regulations including but not limited to

24   BAAQMD,  Regulation 11, Rules 2 and 14, Title 40 Code of Federal Regulations, Chapter 1, Part

25   61, et seq., and related SCAQMD regulations, The National Emission Standards for Hazardous Air

26   Pollutants, which required said Premises Owner/Contractor Liability Defendants to provide

27   specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other

     toxic fumes or substances; and said Premises Owner/Contractor Liability Defendants failed to

28

1  provide the required safeguards and precautions, or contractors employed by the Premises

2  Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions.

3  Defendants' violations of said codes include but are not limited to:

4        a.      Failing to comply with statutes and allowing ambient levels of airborne

5  asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned

6  statutes;

7        b.      Failing to segregate work involving the release of asbestos or other toxic

8  dusts;

9        c.      Failing to suppress dust using prescribed ventilation techniques;

10        d.      Failing to suppress dust using prescribed "wet down" techniques;

      e.      Failing to warn or educate plaintiff or others regarding asbestos or other

11  toxic substances on the premises;

12        f.      Failing to provide approved respiratory protection devices;

13        g.      Failing to ensure "approved" respiratory protection devices were used

14  properly;

15        h.      Failing to provide for an on-going health screening program for those

16  exposed to asbestos on the premises which included disclosure and/or discussion of ongoing health

17  consequences of asbestos exposure with plaintiff;

18        i.      Failing to provide adequate housekeeping and clean-up of the work

19  place;

20        j.      Failing to properly warn of the hazards associated with asbestos as

21  required by these statutes;

22        k.      Failing to properly report renovation and disturbance of asbestos-

23  containing materials, including but not limited to B.A.A.Q.M.D. Regulation 11-2-401 and

24  S.C.A.Q.M.D regulations;

25        l.      Failing to have an asbestos removal supervisor as required by

26  regulation;

27        m.      Failing to get approval for renovation as required by statutes;

28        n.      Failing to maintain records as required by statute; and

o.    Failing to provide plaintiffs with alternative, safe, asbestos-free work areas and/or failure to remove plaintiffs from an asbestos-laden environment where ongoing exposures to asbestos increased the risk of plaintiffs contracting an asbestos-related disease.

p.    Failing to apprise plaintiffs of the results of any such medical monitoring of physical check-ups that occurred and the risks of contracting asbestos-related diseases.

79.    Plaintiffs at all times were unaware of the hazardous condition or the risk of personal injury created by defendants' violation of said regulations, ordinances or statutes.

80.    At all times mentioned herein, plaintiffs were a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

81.    In such circumstances where plaintiffs were the employee or "statutory employee" of said Premises Owner/Contractor Liability Defendants as defined by the California Labor Code and related California case law interpretations, such Premises Owner/Contractor Liability Defendants owed a duty of care to prevent injury, harm, damage, or loss to plaintiff. Instead, well outside the normal risk of plaintiffs employment, said Premises Owner/Contractor Liability Defendants caused plaintiff to be exposed to asbestos-containing products and other airborne toxic asbestos, fraudulently concealed and failed to disclose the unsafe premises and conditions due to asbestos and toxic products contamination, as well as the known and recognized injurious health consequences of repeated and reoccurring exposures by plaintiff to asbestos-containing products, materials, and other toxic asbestos substances, and plaintiffs exposure to asbestos-containing products and the concurrent injury to his person was aggravated by the employer's fraudulent concealment of the existence of hazardous asbestos-containing products exposure and concurrent injury and its connection with plaintiffs employment and job duties. Moreover, plaintiffs said Premises Owner/Contractor Liability Defendants employers illegally failed to obtain and maintain proper and sufficient workers' compensation insurance or failed to obtain workers' compensation insurance which covered plaintiffs injuries, damages, losses, or harms, such that the California Labor Code sections 3600, 3700, *et seq.*, permit recovery in Superior Court.

1    82.    At all times mentioned herein, said Premises Owner/Contractor Liability

2  Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should

3  have known, that the premises that were in their control would be used without knowledge of, or

4  inspection for, defects or dangerous conditions, that the persons present and using said premises

5  would not be aware of the aforesaid hazardous conditions to which they were exposed on the

6  premises, and that such persons were unaware of the aforesaid violations of codes, regulations and

7  statutes.

8    83.    Said Premises Owner/Contractor Liability Defendants knew of the harmful

9  exposures to asbestos sustained by Plaintiffs at, by and/or through the actions and/or inactions of

their own employees or others under the direct and immediate instruction, control and/or

10  supervision of said Premises Owner/Contractor Liability and said Premises Owner/Contractor

11  Liability Defendants concealed and/or failed to disclose to plaintiffs the harmful effects and bodily

12  injuries suffered by plaintiffs as a result of such exposures to asbestos.

13    84.    As a legal consequence of the foregoing, plaintiffs developed an asbestos-related

14  illness, which has caused great injury and disability as previously set forth, and plaintiff has

15  suffered damages as herein alleged.

16    WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

17  each of them, as hereinafter set forth.

18
                            **SIXTH CAUSE OF ACTION**
19                             **(Loss of Consortium)**

20    **AS AND FOR A FURTHER, EIGHTTH, SEPARATE, FURTHER AND DISTINCT**
    **CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF'S SPOUSE**
21    **COMPLAINS OF DEFENDANTS, THEIR "ALTERNATE ENTITIES," AND EACH OF**
    **THEM, AND ALLEGES AS FOLLOWS:**
22
23    85.    Plaintiff, and, ALBERT WRIGHT JR's, spouse, MARVA JOE GREEN WRIGHT,

24  incorporates by reference each and every paragraph of the First through Fifth Causes of Action

25  herein.

26    86.    Plaintiffs were legally married at all times relevant to this action were, and are now,

27  husband and wife.

28

87.    Prior to plaintiff's injuries as alleged, plaintiff was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, plaintiff has been unable to perform the necessary duties as a spouse, including physical and emotional companionship, and the work and service usually performed in the care, maintenance and management of the family home, and plaintiff will be unable to perform such work, service and duties in the future. As a proximate result thereof, plaintiff's spouse has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown to plaintiffs but which will be proved at the time of trial.

88.    Discovery of the cause of plaintiff's spouse's loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

89.    As a direct and proximate result of the acts of defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to plaintiff as set forth in this complaint, plaintiff's spouse has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

WHEREFORE, plaintiff prays judgment against defendant, and each of them, as is hereinafter set forth.

## DAMAGES

Plaintiffs pray judgment against defendants and each of them as follows:

For special damages according to proof;

For general damages according to proof;

For medical expenses according to proof;

For loss of income according to proof;

1    For punitive damages according to proof;

2    For plaintiffs' costs of suit herein; and,

3    For such other further relief as this Court and the law deems just and proper.

4

5    Dated:  September 12, 2007                         **KELLER, FISHBACK & JACKSON LLP**

6                                                        By:

7                                                        J. Bruce Jackson
                                                         Attorneys for Plaintiff
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## EXHIBIT "A"

2    Plaintiff, ALBERT WRIGHT, JR. suffers from asbestos-caused diseases, including but not limited to, lung cancer and asbestosis.

3

4    Plaintiff, ALBERT WRIGHT, JR. was exposed to asbestos of varied types and sources during his employment, which may have included, but is not limited to: asbestos-containing

5    insulating and insulation materials; asbestos-containing insulation, pumps, gaskets, valves, packing; asbestos-containing boilers, refractory materials, compressors; engines, turbines, motors and related

6    equipment; asbestos-containing friction products; asbestos-containing flooring/decking materials; asbestos-containing joint/taping/topping/patching compounds; and other asbestos-containing

7    products. Plaintiffs allege and believe that ALBERT WRIGHT JR's exposure to asbestos may have occurred at job sites including, but not limited to, the following:

8

9    EMPLOYER:    United Floor
      DATE:        1960-1963

10   DURATION:    Approximately 3 years
      SITE:        Various residential and commercial sites in and around San Francisco,

11                  CA and Oakland, CA  and surrounding metropolitan area.
      JOB TITLE:   Laborer/floor installer

12

13   EMPLOYER:    U.S. Army
      DATE:        1963-1965

14   DURATION:    Approximately 2 years
      SITE:        Fort Ord, Monterrey, CA; Fort Seal, OK ; Hannow, Germany;

15                  USS JERMEMIAH OBRIEN.
      JOB TITLE:   Supply clerk

16

17   EMPLOYER:    U.S. Navy/Civil Service
      DATE:        1965-1966

18   DURATION:    Approximately 1 year
      SITE:        U.S. Naval Weapons Station , Port Chicago, CA

19   JOB TITLE:   Crane operator

20

21   EMPLOYER:    U.S. Navy/Civil Service
      DATE:        1966-1973

22   DURATION:    Approximately 7 years
      SITE:        Hunter's Point Naval Shipyard San Francisco, CA

23   JOB TITLE:   Machinist/flange turner

24   EMPLOYER:    Mare Island Naval Shipyard
      DATE:        1973-1995

25   DURATION:    Approximately 22 years
      SITE:        Vallejo, CA

26   JOB TITLE:   Machinist/flange Turner

27

28   EMPLOYER:    Vernon B. Morris Realty
      DATE:        1995-Present

---

1
2

DURATION:      Approximately 12 years
SITE:          Berkeley, CA
JOB TITLE:     Real estate salesman

3

4

5

6

7

Plaintiff worked aboard various ships and vessels while working as a machinist/flange turner including, but not limited to: USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA; USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD; USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; USS WAHOO

8

Plaintiffs' investigation and discovery are continuing.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "B"**

1

2    A.W. CHESTERTON COMPANY, INC.;

3    AMERICAN STANDARD, INC.;

4    ASBESTOS CORPORATION LTD.;

5    BUFFALO PUMPS, INC.;

6
     CBS CORPORATION, a DELAWARE CORPORATION, individually, successor-
7        in-interest to and formerly known as VIACOM, INC. and WESTINGHOUSE
         ELECTRIC CORPORATION;
8
9    CRANE CO.;

10   CROWN CORK & SEAL COMPANY, INC., individually and as successor-in-interest to
         MUNDET CORK COMPANY;
11
12   DOMCO, INC. FLOOR PRODUCTS (TEXAS), individually and successor-in-
         interest to AZROCK INDUSTRIES, INC.;
13
14   DOUGASS INSULATION COMPANY, INC.;

15   FAIRBANKS MORSE COMPANY;

16   FLOWSERVE CORPORATION, individually  and as successor-in- interest to
         WORTHINGTON PUMPS;
17
18   FMC CORPORATION;

19   FOSTER WHEELER LLC;

20   FRASER'S BOILER SERVICE, INC.;

21   GARLOCK SEALING TECHNOLOGIES,  LLC, individually and successor-in-interest  to
         GARLOCK, INC.;
22
23   GENERAL ELECTRIC COMPANY;

24   GEORGIA-PACIFIC CORPORATION;

25   GOULDS PUMPS, INC.;

26   GRINNELL CORPORATION:

27   HILL BROTHERS CHEMICAL COMPANY;

28

1    HONEYWELL INTERNATIONAL, INC. individually and formerly known as ALLIED
        SIGNAL, INC., as successor-in-interest to the BENDIX CORPORATION;

2
     IMO INDUSTRIES, INC. individually and as  successor-in-interest to DELALVAL
3        PUMPS and WARREN PUMPS;

4    INGERSOLL-RAND CO.;

5    ITT INDUSTRIES, INC. individually and as successor-in-interest to BELL & GOSSETT;

6
     J.T. THORPE & SON, INC.;
7
     KAISER GYPSUM COMPANY, INC.;
8
9    KENTILE FLOORS, INC.;

10   LESLIE CONTROLS, INC.;

11   METALCLAD INSULATION CORPORATION, individually and as successor-in-interest to
        NOR-CAL INSULATION;
12
13   MINNESOTA MINING CORPORATION aka 3M COMPANY;

14   NIBCO, INC. dba CALNIBCO

15   OWENS-ILLINOIS, INC.;

16   PLANT INSULATION COMPANY; QUINTEC INDUSTRIES, INC.;

17   POWER ENGINEERING AND EQUIPMENT COMPANY, INC.;

18
     RAPID AMERICAN CORP., individually and as successor-in-interest to PHILIP CAREY
19      CORPORATION;

20   SEPCO CORPORATION:

21   SIEMENS CORPORATION, aka, dba, and/or individually and successor-in-interest to
22      SIEMENS ENERGY AND AUTOMATION, INC., SIEMENS POWER GENERATION;
     SOCO-WEST, INC.;
23
24   STERLING FLUID SYSTEMS (USA) LLC,  dba and individually and successor-in-interest
        to PEERLESS PUMP COMPANY, INDIAN HEAD, INC.;
25
26   THORPE INSULATION CORPORATION;

27   WARREN PUMPS, LLC;  DOES 1-300;

28

**EXHIBIT "C"**

CBS CORPORATION, a DELAWARE CORPORATION, individually, successor-
in-interest to and formerly known as VIACOM, INC. and WESTINGHOUSE
ELECTRIC CORPORATION;

DOUGLASS INSULATION COMPANY, INC.;

FOSTER WHEELER LLC;

GENERAL ELECTRIC COMPANY:

J.T. THORPE & SON, INC.;

METALCLAD INSULATION CORPORATION, individually and as successor-in-interest to
NOR-CAL INSULATION;

PLANT INSULATION COMPANY;

POWER ENGINEERING AND EQUIPMENT COMPANY, INC.;

SIEMENS CORPORATION, aka, dba, and/or individually and successor-in-interest to
SIEMENS ENERGY AND AUTOMATION, INC., SIEMENS POWER GENERATION

THORPE INSULATION CORPORATION;

DOES 301-450;



Stephen M. Fishback, Esq.  (State Bar No. 191646)
Daniel L. Keller, Esq. (State Bar No. 191738)
J. Bruce Jackson, Esq. (State Bar No. 173215)
**KELLER, FISHBACK & JACKSON LLP**
28720 Roadside Dr, Suite 201
Agoura Hills, CA 91301
Telephone      (818) 879.8033
Facsimile      (818) 292.8891

Attorneys for Plaintiffs

ENDORSED
F I L E D
San Francisco County Superior Court

SEP 1 3 2007

GORDON PARK-LI, Clerk
BY: DEBORAH STEPPE
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN FRANCISCO
UNLIMITED JURISDICTION

ALBERT WRIGHT, JR. AND MARVA JOE
GREEN WRIGHT

        Plaintiffs,

vs.

A. W. CHESTERTON, CO., et al.,

        Defendants.

Case No. CGC-07-274382

**PRELIMINARY FACT SHEET/NEW FILING/ASBESTOS LITIGATION**

(See General Order No. 129, In Re: Complex Asbestos Litigation)

**NOTICE**

**TO NEW DEFENDANTS SERVED IN COMPLEX ASBESTOS LITIGATION IN THE SUPERIOR COURT IN AND FOR THE STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO**

You have been served with process in an action, which has been designated by the Court as complex litigation pursuant to Standard 19 of the Standards of Judicial Administration.  The litigation bears the caption "In Re: Complex Asbestos Litigation", [San Francisco Superior Court No. 828684].

This litigation is governed by various general orders, some of which affect the judicial management and/or discovery obligations, including the responsibility to answer interrogatories

PRELIMINARY FACT SHEET/NEW FILING/ASBESTOS LITIGATION

Page 1

deemed propounded in the case. You may contact the Court of Designated Defense Counsel, Berry & Berry, P.O. Box 16070 (2930 Lakeshore Avenue), Oakland, CA 94610; Telephone: (510) 250-0200; FAX: (510) 835-9859, for further information and/or copies of these orders, at your expense.

1.      State the complete name and address of each person whose claimed exposure to asbestos is the basis of this lawsuit ("exposed person"):

        Albert Wright Jr.

2.      Does plaintiff anticipate filing a motion for a preferential trial date within the next four months?        ____Yes                          XX    No

[If yes, the action will be governed by General Order No. 140; if no, the action will be governed by General Order No. 129.]

3.      Date of birth of each exposed person in item one and, if applicable, date of death:

        **DOB:  September 24, 1939**

        Social Security Number of each exposed person:

        **SS #:  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**

4.      Specify the nature or type of asbestos-related disease alleged by each exposed person.

        __XX_Asbestosis                          _____Mesothelioma

        __XX_Pleural Thickening/Plaques          _____Other Cancer: Specify:

        __XX_Lung Cancer Other Than Mesothelioma  _____Other: Specify:

5.      For purposes of identifying the nature of exposure allegations involved in this action, please check one or more:

        __XX_Shipyard          __XX_Construction          ___Friction-Automotive

        _XX__Premises          _____Aerospace            _XX__Military

        _____Other: Specify all that apply:

If applicable, indicate which exposure allegation apply to which exposed person.

6.    Identify each location alleged to be a source of an asbestos exposure, and to the extent known, provide the beginning and ending year(s) of each such exposure. Also specify each exposed person's employer and job title or job description during each period of exposure. (For example: "San Francisco Naval Shipyard - Pipefitter - 1939-1948"). Examples of locations of exposure might be a specific shipyard, a specific railroad maintenance yard, or perhaps more generalized descriptions such as "merchant marine" or "construction". If an exposed person claims exposure during only a portion of a year, the answer should indicate that year as the beginning and ending year (e.g., 1947-1947).

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

7.    For each exposed person who:

a.    worked in the United States or for a U.S. agency outside the territorial United States, attached to the copy of this fact sheet provided to Designated Defense Counsel a fully executed Social Security Earnings authorization (Exhibit N-4 to General Order No. 129);

b.    may have had a Social Security disability award or is no longer employed and whose last employment was not with a United States government agency, attach to the copy of the fact sheet provided to Designated Defense Counsel a fully executed Social Security Disability authorization (Exhibit N-5 to General Order No. 129);

c.    served at any time in the United States military, attach to the copy of this fact sheet provided to Designated Defense Counsel two fully executed originals of the stipulation (Exhibit N-3 to General Order No. 129);

d.    was employed by the United States government in a civilian capacity, attach to the copy of this fact sheet provided to Designated Defense Counsel two fully executed originals of the stipulation (Exhibit N-3 to General Order No. 129).

8.    If there is a wrongful death claim, attach to the copy of this fact sheet provided to Designated Defense Counsel a copy of the death certificate, if available. If an autopsy report

1  was done, also attach a copy of it to the copy of this fact sheet provided to Designated Defense

2  Counsel.

3  9.      State the date of the filing of the initial complaint in this matter: _____

4

5  Dated: September 13, 2007                    **KELLER, FISHBACK & JACKSON LLP**

6

7                                    By: _____
                                        L. Bruce Jackson

8                                        Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page 4

**PRELIMINARY FACT SHEET/NEW FILING/ASBESTOS LITIGATION**

CASE NUMBER: CGC-07-274382  ALBERT WRIGHT JR` et al VS. A.W. CHERSTON COMPAN

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

  **DATE:**    **AUG-20-2008**

  **TIME:**    **1:30PM**

  **PLACE:**    **Department 206**
          **400 McAllister Street**
          **San Francisco, CA  94102-3680**

**All parties must appear and comply with Local Rule 3.3 and 3.4.**

**CRC 212 (g)(1) requires the filing and service of a case management statement
form CM-110 no later than 15 days before the case management conference.**

Plaintiff must serve a copy of this notice upon each party to this action with the
summons and complaint.  Proof of service subsequently filed with this court shall
so state.

**[DEFENDANTS: Attending the Case Management Conference does not take the
place of filing a written response to the complaint. You must file a written
response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

**EXHIBIT B**

Westlaw.

Not Reported in F.Supp.                                                                Page 1
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)
(Cite as: 1996 WL 532150 (N.D.Cal.))

▷

Only the Westlaw citation is currently available.

United States District Court, N.D. California.
Robert S. **OVERLY** and Louise S. **Overly** Plaintiffs,
v.
RAYBESTOS-MANHATTAN, et al. Defendants.
**No. C-96-2853 SI.**

Sept. 9, 1996.

ORDER REMANDING CASE TO SUPERIOR
COURT
ILLSTON, District Judge.

**\*1** On September 6, 1996, the Court heard argument
on plaintiffs' motion to remand. Having considered
the arguments of counsel and the papers submitted,
the Court hereby GRANTS plaintiffs' motion to re-
mand this case to San Francisco County Superior
Court. The Court also GRANTS plaintiffs' motion
for attorney fees and costs under 28 U.S.C. § 1447(c).

BACKGROUND
On April 30, 1996, plaintiffs filed the complaint in
this action in San Francisco County Superior Court.
The Superior Court granted trial preference to the
case pursuant to California Code of Civil Procedure §
36(d), because Mr. Overly is dying and is expected to
survive only a few months; trial was set for October
7, 1996.

On August 9, 1996, after the trial date had been set,
defendant Avondale Industries, Inc. removed the case
to federal court pursuant to 28 U.S.C §§ 1441, 1442,
and 1446. On August 20, 1996, plaintiffs filed a mo-
tion to remand and requested that it be heard on an
expedited basis.

According to the allegations of the complaint,
plaintiff Robert Overly was exposed to asbestos
while working in a shipyard in the 1960's. Defend-
ant Avondale controlled part of the premises of Mr.
Overly's employment during this period of time.
Plaintiffs' complaint alleges that Avondale knew or
should have known that the premises it controlled
contained hazardous conditions, namely products

containing asbestos. Plaintiffs further allege that de-
fendant hired contractors and subcontractors who
used products containing asbestos, but failed to warn
individuals in the surrounding area of the existence of
asbestos or to take precautions against human expos-
ure to the chemical.

Plaintiffs allege that, as a result of exposure to asbes-
tos while working in the shipyard, Mr. Overly ac-
quired mesothelioma, a cancer usually resulting from
asbestos exposure. In May of this year, Mr. Overly
was diagnosed with six months remaining to live.
Plaintiffs have proceeded against Avondale on the
"failure to warn theory" of products liability.

Avondale does not contest Mr. Overly's assertion that
he was exposed to asbestos during his work on the
Avondale shipyard. Instead, it claims that the work
done by Mr. Overly consisted primarily of work on
naval ships, and that Avondale is therefore protected
by government contractor immunity. Avondale as-
serts that it was under rigid guidelines by the federal
government concerning the design of naval ships.
Thus, Avondale asserts that it is entitled to the pro-
tection of the Federal Officer Removal Statute,
thereby providing grounds for federal jurisdiction.

LEGAL STANDARD
A suit filed in state court may be removed to federal
court if the federal court would have had original
subject matter jurisdiction over that suit. 28 U.S.C. §
1441(a); Snow v. Ford Motor Co., 561 F.2d 787, 789
(9th Cir.1977). Three potential bases for federal
subject-matter jurisdiction are relevant to this
suit: (1) federal question jurisdiction under 28 U.S.C.
§ 1331, [FN1] (2) admiralty jurisdiction under 28
U.S.C. § 1333, [FN2] and (3) supplemental jurisdic-
tion under 28 U.S.C. § 1367. [FN3]

> FN1. 28 U.S.C. § 1331 states that "[t]he dis-
> trict courts shall have original jurisdiction of
> all civil actions arising under the Constitu-
> tion, laws, or treaties of the United States."

> FN2. Under 28 U.S.C. § 1333, "[t]he district
> courts shall have original jurisdiction, ex-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05403-MJJ     Document 8     Filed 11/20/2007     Page 55 of 66

Not Reported in F.Supp.                                                                                      Page 2
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)
(Cite as: 1996 WL 532150 (N.D.Cal.))

clusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

FN3. Supplemental or pendent party jurisdiction exists where claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

The Court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. § 1367(c).

*2 A motion to remand is the proper procedure for challenging removal. Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. See 28 U.S.C. § 1447(c). The court may remand sua sponte or on motion of a party, and the parties who invoked the federal court's removal jurisdiction have the burden of establishing federal jurisdiction. See Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir.1988) (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)).

The removal statute is strictly construed against removal jurisdiction and doubt is resolved in favor of remand. Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir.1979).

The existence of federal jurisdiction on removal must normally be determined on the face of the plaintiff's complaint. See Louisville & Nashville R.R. v. Mottley, 211 U.S. 149 (1908). A "cause of action arises under federal law only when the plaintiff's well pleaded complaint raises issues of federal law." Metropolitan Life Ins. Co v. Taylor, 481 U.S. 58, 63 (1987).

However, the Court may examine the entire record to determine if the real nature of the claim is federal, notwithstanding plaintiff's characterization to the contrary, when the plaintiff has, by "artful pleading," attempted to defeat defendant's right to a federal forum. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n. 2 (1981); Salveson, 525 F.Supp. at 572. A complainant cannot "avoid federal jurisdiction simply by omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law." Harper v. San Diego Transit Corp., 764 F.2d 663, 666 (9th Cir.1985).

The Federal Employee Removal Statute was enacted as a means for federal employees to bypass the well-pleaded complaint rule and raise immunity-related defenses as a basis for removal.

## DISCUSSION

I. *Jurisdiction Under the Federal Officer Removal Statute*

The Federal Officer Removal Statute provides that an action may be removed by "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office." Title 28 U.S.C. § 1442(a)(1). In *Mesa v. California*, 489 U.S. 121 (1989), the Supreme Court held that § 1442(a)(1) requires the moving party to: (1) demonstrate that it acted under the direction of a federal officer; (2) raise a colorable federal defense to plaintiff's claims; and (3) demonstrate a causal nexus between plaintiff's claims and the acts defendants performed under color of federal office. *Id.* at 124-25, 134-35. Before applying the test outlined in *Mesa,* however, a defendant must qualify as a "person" for the purposes of 28 U.S.C. § 1441(a)(1). As a corporation, defendant Avondale meets this preliminary requirement. *Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D.Cal.1992).

A. Acts Under the Direction of A Federal Officer

*3 Under the first prong of the *Mesa* test, defendant must show that it was acting under the direction of a federal officer. It is not enough to prove only that "the relevant acts occurred under the general auspices

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05403-MJJ    Document 8    Filed 11/20/2007    Page 56 of 66

Not Reported in F.Supp.                                                         Page 3
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)
(Cite as: 1996 WL 532150 (N.D.Cal.))

of" a federal officer, _Ryan v. Dow Chemical Co., 781 F.Supp. 934, 946 (E.D.N.Y.1992)_, or that the defendant was a member of a regulated industry. _Id.; Bakalis v. Crossland Sav. Bank, 781 F.Supp. 140, 144-45 (E.D.N.Y.1991)_. In the area of product liability, government contract immunity has been limited to cases where defendant companies can show "strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction.' " _Fung v. Abex Corp., 816 F.Supp. at 573_ (quoting _Gulati v. Zuckerman, 723 F.Supp. 353 (E.D.Pa.1989)_).

In this case, the liability asserted by the plaintiffs is limited to the failure to warn theory of products liability. Plaintiffs allege that because Avondale failed to warn Mr. Overly of the existence of asbestos in his work environment, Avondale should be held liable for his resulting illness. Plaintiffs are not pursuing a design defect claim of products liability and have offered in writing to waive all potential claims related to design defects.

Although Avondale has established that it was under substantial control by the government regarding the installation of certain products containing asbestos, it has not done so with regard to the warning of individuals of the presence of asbestos on the job site.

B. Colorable Federal Defense

The second prong of the _Mesa_ test is that defendant must possess a colorable federal defense. Defendant Avondale presents two potential federal defenses.

1. Longshore and Harbor Workers Compensation Act
One defense asserted by Avondale is that plaintiffs' recovery is limited to relief under the Longshore and Harbor Workers Compensation Act (LHWCA) § 1 et seq., 33 U.S.C.A. § 901 et seq. The LHWCA provides a basis for compensation from employers to certain employees injured in the course of employment while working upon navigable waters or the harbors and shipyards adjoining such waters. 33 U.S.C.A. § 903.

As an initial matter, defendant is barred from asserting a defense on this basis because the LHWCA was not mentioned in defendant's petition for removal as

required under 28 U.S.C. § 1446(a).

Furthermore, even if applied to this case, the LWHCA does not constitute a colorable federal defense for Avondale. Mr. Overly was not an employee of Avondale, he was an employee of Westinghouse. The "borrowed employee" concept asserted by defendant has not been adopted by the Ninth Circuit. Furthermore, even under the Third Circuit guidelines cited by the defendant, Mr. Overly would not qualify as a "borrowed employee" for the purposes of the LWHCA because there has been absolutely no showing that he explicitly agreed to work under conditions controlled solely by Avondale. _Peter v. Hess Oil Virgin Islands Corp., 903 F.2d 935, 942 (1990)_. Thus, the LWHCA does not constitute a colorable defense to plaintiffs' common law causes of action.

2. Government Contractor Immunity
*4 The second ground on which defendant asserts it possesses a colorable federal defense is the government contractor defense. Under this theory, contractors who supply military equipment to the government are immunized from liability under state tort law providing that they can meet the test outlined in _Boyle v. United Technologies Corp., 487 U.S. 500 (1988)_. In _Boyle_, the Court set the standard for finding state law liability for design defects in military equipment. _Id._ at 511. Military contractor immunity for design defects applies when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." _Id._ at 512.

The Ninth Circuit has ruled that in failure to warn product liability cases involving asbestos allegedly used in the construction of naval ships, a defendant must specifically show that "in making [its] decisions regarding warnings [it was] acting in compliance with 'reasonably precise specifications' imposed on [it] by the United States." _In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 813 (9th Cir.1992)_. Thus, in order to meet the _Boyle_ test in a failure to warn case, the defendant must show that the govern-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 4
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)
**(Cite as: 1996 WL 532150 (N.D.Cal.))**

ment affirmatively instructed it regarding the provision of warnings.

Defendant's only showing on this motion relates to the government's manufacturing and engineering specifications. Defendant has not demonstrated that the government provided "reasonably precise specifications" affecting Avondale's provision of warnings. *Boyle,* 487 U.S. at 512. Absent a showing by defendant that the federal government gave specific instructions to Avondale not to warn employees of the existence of asbestos, Avondale is offered no protection by government contractor immunity. *See In re Hawaii Federal Asbestos Cases,* 960 F.2d at 813. Therefore, defendant fails to meet the second prong of the *Mesa* standard because Avondale has no colorable federal defense to the charges in this case.

C. Causal Nexus

The final requirement under the *Mesa* test is that there be a causal nexus between the rules imposed by the United States on the defendant contractor by the federal government and the liability asserted by plaintiff. "[T]here must be a causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the [state] prosecution has arisen out of the acts done by the officer under color of federal authority and in enforcement of federal law." *Maryland v. Soper,* 270 U.S. 9, 22 (1926).

Defendant has produced abundant evidence attesting to the regulations imposed by the federal government on the manufacture and design of ships built by Avondale for the U.S. Navy. However, *none* of these guidelines addresses Avondale's responsibility to warn its employees of their exposure to products containing asbestos. The government in no way restricted Avondale's ability to notify individuals of the presence of asbestos in the work environment. Thus, there is no causal connection between the control exercised by the United States over Avondale and the legal theory under which plaintiffs seek to hold Avondale liable. Consequently, Avondale has no basis on which to assert application of the Federal Officer Removal Statute, and the case must be re-

manded to state court.

II. *Attorney Fees & Costs*

*5 Title 28 U.S.C. § 1447(c) provides that when granting a motion for remand on the basis of a lack of federal subject matter jurisdiction, a court may order the defendant to pay plaintiff "its just costs and any actual expenses, including attorney fees, incurred as a result of the removal." An award under § 1447(c) is entirely within the Court's discretion.

Under its discretion, the Court finds that the case was removed "improvidently and without jurisdiction." *Id.* The Court hereby awards plaintiffs their reasonable costs and attorney fees associated with removal, as requested, in the amount of $2,000, to be paid by defendant Avondale within ten days of the date of this order.

CONCLUSION

For the foregoing reasons and for good cause shown, plaintiffs' motion to remand is GRANTED. Plaintiffs' motion for reasonable costs and attorney fees incurred as a direct consequence of removal is GRANTED in the amount of $2,000.

IT IS SO ORDERED.

Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit C**

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 139287 (N.D.Cal.)
(Cite as: 1994 WL 139287 (N.D.Cal.))

Page 1

C

Only the Westlaw citation is currently available.

United States District Court, N.D. California.
Bonifacio T. VIALA, Plaintiff,
v.
OWENS-CORNING FIBERGLAS CORP., et al.,
Defendants.
No. C 94-0399 EFL.

April 13, 1994.

*ORDER REMANDING CASE TO STATE COURT*
LYNCH, District Judge.

**\*1** Plaintiff Viala filed this suit in San Francisco Superior Court claiming injuries arising out of exposure to asbestos while working at the Subic Bay military base in the Philippines. Several but not all defendants have timely joined in the removal of this case to this Court. Viala has brought a motion to remand the case to state court.

Defendants have the burden of establishing that removal was proper. *Gaus v. Miles, Inc., 980 F.2d 564, 566-67 (9th Cir.1992)*. The removal statute is strictly construed against removal jurisdiction. *Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir.1988)*.

Defendants base removal on two independent grounds: (1) that a federal question is present under 28 U.S.C. § 1331 and Article 1, section 8, clause 17 of the U.S. Constitution and that removal is therefore proper under 28 U.S.C. § 1441 because this Court would have had original (either concurrent or exclusive) jurisdiction over the case under the doctrine of federal enclave jurisdiction, [FN1] and (2) that removal is proper under 28 U.S.C. § 1442 because some defendants are being sued in state court for injuries arising out of conduct they were directed to undertake by a federal officer.

In addition, defendants argue that this Court should defer from ruling on this jurisdictional question and allow Judge Weiner in Pennsylvania to address this issue pursuant to the Panel on Multi-District Litiga-

tion's (MDL) consolidation of asbestos cases before him for purposes of pre-trial motions.

Viala argues that this Court should rule on this motion, since these types of jurisdictional issues are better determined by a "transferor" court such as this than by the "transferee" MDL court. Addressing the merits, Viala argues that "federal enclave jurisdiction" is no longer a valid concept nor is it applicable here, that in any event not all defendants have consented to removal on federal question grounds, and that removal under § 1442 is not justified because defendants have not established that they were "acting under" a federal officer or that they have a colorable government contractor defense.

For the reasons set forth below, the Court concludes that it is appropriate for this Court to rule on this motion and that, addressing the merits, removal of this case to federal court is not justified and remand to state court is proper. [FN2]

The Court agrees with the parties that it is allowed to defer on this remand issue to Judge Weiner. The Court also agrees with the parties that the conditional transfer order issued in this case (and objected to by Viala) in no way deprives this Court of jurisdiction to hear and decide this motion on its own.

The Court disagrees with defendants that deferring on this motion and allowing Judge Weiner to rule on it would promote the interests of efficiency and uniformity. Indeed, defendants' extolling the virtues of uniformity is somewhat disingenuous where, as here, the first wave of Subic Bay cases was remanded to state court but defendants have continued to attempt the removal of subsequent waves to the federal courts. Given that the *first* 29 cases are in state court, uniformity would clearly have been served if defendants had left subsequent cases in the state court in which they were filed, so that they could be decided uniformly with the first 29 Subic Bay cases.

**\*2** The purpose of the MDL panel's referring of asbestos cases to Judge Weiner was not to make one judge rule on the various difficult issues that might

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 139287 (N.D.Cal.)
(Cite as: 1994 WL 139287 (N.D.Cal.))

Page 2

come up in different factual contexts. Rather, cases are supposed to be referred to Judge Weiner for determination of issues *common* to asbestos litigation. To force difficult and fact-sensitive jurisdictional issues from all types of cases onto one court would impossibly overburden that court and not serve the goal of efficiency that underlies the MDL program.

Thus, this Court refuses to defer on this motion to remand and elects to address the merits.

### REMOVAL UNDER SECTION 1441

The parties argue at great length over the continuing vitality of federal enclave jurisdiction and whether it is implicated in this case. For purposes of defendants' § 1441 removal, this issue is irrelevant, since the defendants have not unanimously consented to removal of this case from state court to federal court. Such unanimous consent is required under 28 U.S.C. § 1446. [FN3] *See Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1193 N. 1 (9th Cir.1988) (discussing unanimity requirement in the context of a § 1441(a) removal); *Hewitt v. City of Stanton,* 798 F.2d 1230, 1232-33 (9th Cir.1986) (noting unanimity requirement for removal under § 1441(b)); *see also Acierto v. Owens-Corning Fiberglas Corp.,* No. C-93-2136 JPV (N.D.Cal., Order of August 13, 1993). Thus, since defendants' defect in removing under section 1441 is of a procedural nature under section 1446, plaintiff's timely remand motion under section 1447(c) is granted.

### REMOVAL UNDER SECTION 1442

For removal under § 1442, [FN4] defendants must (1) raise a colorable federal defense, (2) establish that they were acting under a federal officer, and (3) establish a causal connection between the conduct undertaken at the direction of the federal officer and the basis for defendants' state law liability. *Mesa v. California,* 489 U.S. 121 (1989), *Fung v. Abex Co.,* 816 F.Supp. 569 (N.D.Cal.1992), *Ryan v. Dow Chemical,* 781 F.Supp. 934 (E.D.N.Y.1992).

For their "colorable federal defense," defendants [FN5] argue that they will be entitled to raise a "government contractor" defense. In order to establish such a defense, defendants must establish that they presented specially-designed products to the govern-

ment under federal orders or specifications that directly conflicted with the state law duty upon which the defendants are now being sued, and that: (1) the specifications were reasonably precise, (2) the equipment produced conformed to those specifications, and (3) the defendants warned the government about dangers of the products known to the defendants but not to the government. *Boyle v. United Technologies, Inc.,* 487 U.S. 500 (1988), *In Re Hawaii Federal Asbestos Cases,* 960 F.2d 806 (9th Cir.1992).

Defendants fail to state a colorable federal defense because they have produced no evidence to support the prerequisites to the government contractor defense that the products were designed at the direction of federal specifications or that these specifications conflicted with the state law duties sued upon. To assert the government contractor defense, the product purchased by the government cannot be a product that a supplier sells on the open market anyway. *In Re Hawaii Federal Asbestos Cases,* 960 F.2d at 811-12. Defendants have produced no evidence that the asbestos-containing material (apparently insulation) here sold to the government was anything but the asbestos-containing insulation being sold at the time to commercial and industrial concerns. Additionally, though defendants have produced evidence of government specifications controlling the procurement of insulation, all of the government specifications produced by defendants refer only to the *performance* of the insulation and not to the design or the manufacturing process. These "specifications" only established the performance criteria to be considered by government purchasers in deciding whether to purchase a particular (independently existing) product. Thus, there is no evidence that the specifications provided by the government in any way conflicted with defendants' state law duty to design and manufacture safe products that did not cause asbestos-related illnesses. In the absence of such a conflict, the government contractor defense is not colorable. Thus, § 1442 removal is inappropriate.

*3 For the same reasons, defendants have failed to satisfy the requirement under § 1442 that there be a nexus between the directions of the federal officer and the conduct for which defendants are in trouble under state law. Additionally, defendants have failed

Case 3:07-cv-05403-MJJ    Document 8    Filed 11/20/2007    Page 61 of 66

Not Reported in F.Supp.                                                    Page 3
Not Reported in F.Supp., 1994 WL 139287 (N.D.Cal.)
(Cite as: 1994 WL 139287 (N.D.Cal.))

to establish that they were acting under the direction or control of any federal officer when they designed or manufactured their asbestos-containing products. For each of these reasons, § 1442 removal is also defeated.

Though this Court grants remand on the basis that defendants [FN6] have not produced sufficient evidence to justify removal under § 1442, this is not the result--as it apparently was in *Acierto*--of defendants' having produced no evidence at all. Rather, defendants have submitted to this Court numerous declarations and documents, as well as excerpts from depositions taken in asbestos litigation from all across the country. The Court has reviewed all of this evidence. Defendants fail to justify removal under § 1442 because this evidence does not support the essential elements necessary to establish a colorable government contractor defense nor does it support the governmental direction and causal nexus requirements that are further necessary for § 1442 removal. Thus, defendants have failed to carry their burden of establishing that section 1442 removal was proper.

Accordingly, Viala's motion is granted and this case is REMANDED to state court.

IT IS SO ORDERED.

> FN1. Article I, section 8, clause 17 of the United States Constitution reads: "Congress shall have Power ... to exercise exclusive legislation in all Cases whatsoever ... over all Places purchased by the consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-yards, and other needful Buildings."

> FN2. This Court notes that this resolution on the merits is consistent with that reached in the only other case from this district to reach the merits of such removal. *See Acierto v. Owens-Corning Fiberglas Corp., et al.* No. C 93-2136 JPV (N.D.Cal., Order dated August 13, 1993).
> The parties speak of the cases filed arising out of Subic Bay exposures as having been

brought by plaintiff's counsel (and removed here by defendants) in "waves." The first wave consisted of cases related by Judge Vukasin and then remanded to state court in the above referenced order. The second wave consisted of cases related by Judge Walker, who subsequently deferred to Judge Weiner on this remand motion (which is still under submission before Judge Weiner). The third wave was also related by Judge Walker and the remand motion was again deferred to Judge Weiner. This fourth wave, consisting of 42 cases now before 10 judges of this district, has not been related. According to representations of counsel at oral argument, the four judges of this district who have ruled on these fourth wave cases have each deferred the remand motion to Judge Weiner. Thus, this case represents only the second instance in which the merits of defendants' removal have been addressed.

> FN3. Defendant Flintkote seems to argue before this Court that the procedural requirement of unanimity is not needed if the substance of the federal question being removed is one over which a federal court would have exclusive jurisdiction. Flintkote offers absolutely no authority for this proposition, other than that its attorney remembers plaintiff's attorney not contesting this point at some other hearing. Since nothing in the language of sections 1441 or 1446 or in the case law surrounding these sections lends credence to this distinction, the Court rejects it. *See, e.g., Bradwell v. Silk Greenhouse, 828 F.Supp. 940, 943-44 (M.D.Fla.1993)* (remanding for lack of unanimous consent to removal, even though the ERISA claims invoked exclusive federal jurisdiction), *Samuel v. Langham, 780 F.Supp. 424, 427 (N.D.Tex.1992)* (remanding a case to state court even accepting ERISA pre-emption); *see also McCain v. Cahoj, 794 F.Supp. 1061 (D.Kan.1992)* (remanding a case because of a procedural defect in the removal despite protestations of exclusive federal jurisdic-

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 139287 (N.D.Cal.)
(Cite as: 1994 WL 139287 (N.D.Cal.))

Page 4

tion).

Plaintiff filed this case in state court. In order to invoke removal under a federal question theory, it is a procedural requirement that all defendants timely consent to the removal. This has not been done, so the case is not properly removed on federal question grounds. If Flintkote believes that the state court has no jurisdiction over this suit because of federal enclave jurisdiction--a position upon which this Court expresses no opinion--Flintkote is free to bring whatever motions it deems appropriate in the state court proceeding. Defendants simply are procedurally barred from removing this case to federal court on the basis of a federal question.

FN4. There is no unanimity requirement for removal under section 1442. *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co., 644 F.2d 1310 (9th Cir.1981).* Removal under section 1442 confers subject matter jurisdiction over the entire case to the federal district court. *Concerned Tenants Assn. of Father Panik Village v. Pierce, 685 F.Supp. 316 (D.Conn.1988).*

FN5. Only defendants Owens-Illinois and Pittsburgh-Corning argue that the government contractor defense is available to them and produce evidence in support of this section 1442 removal. Since all defendants are equally affected and thus have equal interests in the ability of either of these two defendants to establish a proper 1442 removal, *see* note 4, *supra,* the Court will discuss it as a grounds argued by the defendants as a group (while considering, of course, all of the evidence put forth by each of the two defendants raising this claim).

FN6. This of course means that neither Owens-Illinois nor Pittsburgh-Corning produced sufficient evidence to support the requisite elements to section 1442 removal.

Not Reported in F.Supp., 1994 WL 139287

(N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit D**

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 690854 (N.D.Cal.)
(Cite as: 1998 WL 690854 (N.D.Cal.))

Page 1

**C**
Only the Westlaw citation is currently available.

United States District Court, N.D. California.
Quen Van NGUYEN and Ut Thi Do, Plaintiffs,
v.
**ALLIED SIGNAL, INC., et al., Defendant.**
**No. C 98-03616 SI.**

Sept. 29, 1998.

ORDER REMANDING CASE TO SAN FRAN-
CISCO SUPERIOR COURT FOR LACK OF FED-
ERAL
JURISDICTION

**\*1** Plaintiffs Quyen Van Nguyen and Ut Thi Do filed
this suit in San Francisco Superior Court on August
13, 1998. Plaintiff Quyen Van Nguyen claims injur-
ies arising out of exposure to asbestos while working
at Tan Son Nhut Air Force Base in Vietnam. Plaintiff
Nguyen has contracted mesothelioma, a fatal cancer
caused by exposure to asbestos. Plaintiff Nguyen's
health is failing rapidly and he is not expected to live
more than six months.

Defendant Pneumo Abex Corporation received a
copy of the summons and complaint, through an
agent for service of process, on August 18, 1998.
This same defendant removed the action to this Court
on September 18, 1998. Several--but not all-
-defendants thereafter joined in the removal.
Plaintiffs filed an expedited motion to remand the
case to state court, to which defendants have filed vo-
luminous papers in opposition. The Court finds this
motion to be suitable for submission without oral argu-
ment, pursuant to Civil Local Rule 7-1(b).

Defendants have the burden of establishing that re-
moval was proper. *Gaus v. Miles, Inc.*, 980 F.2d 564,
566-67 (9th Cir.1992). The removal statute is strictly
construed against removal jurisdiction. *Id.* at 566.
Based upon the pleadings and materials filed by the
parties, the Court finds that removal was defective as
a technical matter, and further finds, more funda-
mentally, that there is no federal jurisdiction over this
matter. Consequently, the action is remanded to San

Francisco Superior Court.

DISCUSSION

*1. Defects in Removal*

A. Removal is Untimely

Defendant Pneumo Abex Corporation (Abex) re-
ceived a copy of the complaint, through an agent for
service of process (Prentice Hall) on August 18,
1998. Abex disputes whether service on it was effect-
ive, but does not dispute receipt of the summons and
complaint on that date. Abex did not remove until
September 18, 1998--thirty-one days later. As such,
defendants' removal is untimely, having been filed
more than thirty days after receipt of the complaint.
28 U.S.C. § 1446(b). Therefore, remand is proper.

However, as is discussed below, even if defendants'
removal had been timely, there is no basis for federal
jurisdiction here.

B. Removal Based on Alleged Federal Enclave Juris-
diction Is Improper

Defendants base their claim to federal jurisdiction on
multiple grounds. First, defendants claim "federal en-
clave jurisdiction" on the basis that plaintiff Nguyen's
exposure to asbestos occurred within a federal en-
clave, namely Tan Son Nhut Air Force Base in Viet-
nam. Courts have found federal enclave jurisdiction
where the United States government has exclusive
sovereignty over land, often a military base. *See
Fung v. Abex Corp.*, 816 F.Supp. 569, 571
(N.D.Cal.1992); *Akin v. Big Three Industries, Inc.*,
851 F.Supp. 819, 822 (E.D.Tex.1994). Cases in
which courts have found federal enclave jurisdiction
for injuries occurring on military bases, however,
have involved land which had been sold to the federal
government, along with the explicit consent of the
state in which the land was located to federal govern-
ment control and authority over the land. *See, e.g.,
Mater v. Holley*, 200 F.2d 123 (5th Cir.1952) (Fort
McPherson, GA); *Willis v. Craig*, 555 F.2d 724 (9th
Cir.1977) (Concord Naval Weapons Station, CA);
*Fung v. Abex Corp.*, 816 F.Supp. 569 (N.D.Cal.1992)
(Fort McPherson, GA; Mare Island, CA). Defendants

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 690854 (N.D.Cal.)
(Cite as: 1998 WL 690854 (N.D.Cal.))

cite no case involving federal enclave jurisdiction where the military base was located overseas, in another sovereign nation, nor have they made a factual showing concerning any of the sovereignty issues normally involved in the federal enclave analysis. Defendants have not met their burden of demonstrating federal enclave jurisdiction.

*2 In addition, federal enclave jurisdiction is concurrent jurisdiction. See _Mater, 200 F.2d at 123_. All defendants must join in the removal if jurisdiction is concurrent. _Hewitt v. City of Stanton, 798 F.2d 1230 (9th Cir.1986)_. It appears that such joinders as have been filed were filed late, and one defendant has not joined in this petition. [FN1] Because not all defendants have joined, removal is improper.

> FN1. Defendant McDonnell Douglas Corporation filed its joinder in removal on September 24, 1998. Defendants Gasket Holdings, Inc. and Maremont Corporation filed theirs on September 25, 1998. Defendant Western MacArthur has not joined in removal. There is a hearsay suggestion that defendant Western MacArthur has agreed with plaintiffs not to join in removal, but the Court does not address this as the joinder of other defendants was late and there are other grounds for remand.

2. _Defendants Have Failed to Demonstrate Federal Officer Jurisdiction_

Defendant Abex also argues that this case may be removed pursuant to federal officer jurisdiction under 28 U.S.C. § 1442. Joinder of all defendants is not required for removal under § 1442. _Ely Valley Mines v. Hartford Acc. & Indem. Co., 644 F.2d 1310, 1315 (9th Cir.1981)_.

Title 28 U.S.C. § 1442(a)(1) states that an action may be removed by "[a]ny officer of the United States or any agency thereof, or person acting under him for any act under color of such office." To show jurisdiction, at least one defendant must (1) demonstrate that it acted under the direction of a federal officer, (2) raise a federal defense to plaintiffs' claims, and (3) demonstrate a causal nexus between plaintiffs' claims

and acts it performed under color of federal office. _Mesa v. California, 489 U.S. 121, 129-34, 109 S.Ct. 959, 965-67, 103 L.Ed.2d 99 (1989)_; _Fung, 816 F.Supp. at 571-72 (N.D.Cal.1992)_.

A. Acts Under the Direction of A Federal Officer.

Under the first prong of _Mesa_, at least one defendant must show it was acting under the direction of a federal officer. In the area of product liability, government contractor immunity requires defendant companies to show "strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction.' " _Fung, 816 F.Supp. at 572_ (quoting _Gulati v. Zuckerman, 723 F.Supp. 353 (E.D.Pa.1989))_.

Here, plaintiffs assert liability on a failure to warn theory of products liability, and are not pursuing a design defect theory of liability. Plaintiffs allege that defendants failed to warn users of their products containing the substance asbestos about the health hazards of asbestos. Although defendants present evidence showing federal direction of defendants regarding the installation of insulating materials, they do not show federal direction of their activities with regard to warnings attached to asbestos products. Therefore, defendants fail to meet the first prong of the _Mesa_ test.

B. Colorable Federal Defense.

Defendants claim they will meet the second prong of the _Mesa_ test by asserting the government contractor immunity defense. See _Boyle v. United Technologies Corp., 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988)_. Plaintiffs object that the government contractor defense does not apply where, as here, the plaintiffs' sole liability theory is the defendants' failure to warn foreseeable users, consumers, workers, bystanders and others of the health hazards of asbestos.

*3 In _In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 812 (9th Cir.1992)_, the Ninth Circuit addressed whether the government contractor defense was available where the plaintiff's theory of liability was failure to warn. There, the court noted that the government contractor defense applies only "when the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 690854 (N.D.Cal.)
(Cite as: 1998 WL 690854 (N.D.Cal.))

Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations," preventing the contractor from accommodating safety concerns in a different fashion. *Id.* at 813. The Ninth Circuit noted that the government had no contractual requirements preventing the placement of warnings on the defendants' products. Therefore, in a failure to warn case, "the military contractor defense would ... be no defense at all." *Id.*

Here, defendants have produced no evidence that their contracts with the United States government contained contractual obligations specifically prohibiting them from placing warnings on their products. Instead, they produce evidence regarding government control of the specification for manufacturing the aircraft, not specifications regarding warnings. They also rely upon the affidavit of Alvin F. Meyer, which indicates only that the government approved all warnings placed in technical manuals for United States Air Force aircraft. Meyer Decl. ¶ 26. They offer no evidence that they attempted to include such warnings, or that the government specifications and contractual provisions explicitly directed them not to place warnings on their products. Therefore, the Ninth Circuit's holding in *Hawaii Federal* controls, and the government contractor defense cannot be the basis for federal jurisdiction in the failure to warn case here.

*Sundstrom v. McDonnell Douglas Corp.*, 816 F.Supp. 587 (N.D.Ca.1993), relied on by defendants, is inapposite. *Sundstrom* was not an asbestos case, but involved a wrongful death claim based on a defective ejection seat on a fighter aircraft. Unlike the case presented here, the plaintiff's theory in *Sundstrom* was defective design, not the manufacturer's failure to warn foreseeable consumers of the dangers of its product.

*Neiman v. McDonnell Douglas Corp.*, 721 F.Supp. 1019, 1021 (S.D.Ill.1989), a district court case from another jurisdiction is also inapposite. There, unlike here, plaintiffs relied on a both a design defect and a failure to warn theory, and raised issues focused on government specification and control over the inclu-

sion of asbestos in the airplane, not control over the product warnings themselves. In addition, the failure to warn arguments discussed in *Neiman* addressed the contractor's obligation to warn the government of dangers in the use of equipment, not the contractor's obligation to place warnings on its products for foreseeable consumers. Also, *Neiman* was decided before the Ninth Circuit decided *Hawaii Federal.*

*4 The Ninth Circuit's decision in *Hawaii Federal* controls here. As defendants have made no showing that their contractual obligations to the government specifically prohibited them from placing warnings on their products, they cannot raise the government contractor defense in this failure to warn case.

C. Causal Nexus.

The third prong of the *Mesa* test requires a causal nexus between the rules imposed by United States on the federal contractor and the liability asserted by the plaintiff. *Mesa*, 489 U.S. at 131-33, 109 S.Ct. at 966. Although defendants include evidence regarding the control of the federal government over the manufacture of its products, again, this evidence does not demonstrate that the federal government directed defendants not to place warnings on their products. Therefore, there is no causal connection between the control exercised by the United States over defendants and plaintiffs' legal theory of failure to warn consumers of the hazards of asbestos.

The Court therefore concludes that there is no federal jurisdiction over this action. Consequently, plaintiffs' motion to remand must be granted.

Not Reported in F.Supp.2d, 1998 WL 690854 (N.D.Cal.)

END OF DOCUMENT