Stephen M. Fishback (State Bar No. 191646)
sfishback@kfjlegal.com
Daniel L. Keller (State Bar No. 191738)
dkeller@kfjlegal.com
**KELLER, FISHBACK & JACKSON LLP**
28720 Roadside Drive, Suite 201
Agoura Hills, CA  91301
Telephone:  818.879.8033
Facsimile:   818.292.8891
Attorneys for Plaintiffs: Albert Wright, Jr. and Marva Wright

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALBERT WRIGHT, JR. AND MARVA JOE GREEN WRIGHT<br><br>    Plaintiffs,<br><br>vs.<br><br>A. W. CHESTERTON, COMPANY, et al.,<br><br>    Defendants. | Case No.  C-07-5403(EDL)<br><br>**PLAINTIFFS' EVIDENTIARY OBJECTIONS TO THE DECLARATION OF BEN J. LEHMAN IN SUPPORT OF DEFENDANT FOSTER WHEELER LLC'S NOTICE OF REMOVAL**<br><br>Date:  January 8, 2008<br>Time: 9:00 a.m.<br>Judge: Magistrate Judge Elizabeth D. Laporte<br>Courtroom: E |

**EVIDENTIARY OBJECTIONS TO DECLARATION OF BEN J. LEHMAN**

| EVIDENCE PROFFERED | OBJECTIONS |
|---|---|
| **Paragraph 1:**<br>I am a Rear Admiral, Retired, of the United States Navy [U.S. Navy]. I received notice of my commission as an Ensign in April, 1942 and commenced active duty in the U.S. Navy on June 1, 1942. Immediately prior to commencing active duty in the U.S. Navy, I attended the College of the City of New York. I had been a "student engineer" at the Mack Manufacturing Co. [Mack Trucks] in Allentown, PA and had been enrolled as a special student at Lehigh University, Bethlehem, PA from June 1941 until January 1942. I returned to the college of the City of New York in order to complete my course work there and then enter military services. I had already completed two years of U.S. Army ROTC. On entering active duty, the U.S. Navy ordered me to study naval architecture and marine Engineering at the Massachusetts Institute of Technology [MIT]. Later, I was ordered to the U.S. Naval Academy Post-Graduate School at Annapolis [now the U.S. Navy Post-Graduate School in Monterey, CA]. I received a Master of Science [SM] from Harvard University in 1949. I studied Design Philosophy and Advanced Stress Analysis at Stanford University in 1957 and 1958. In the U.S. Navy, I served as a Ship Superintendent and Dry Docking Officer at the New York Naval Shipyard [formerly the Brooklyn Naval Yard], between 1942 and 1944, as a ship Superintendent at the San Francisco Naval Shipyard from September 1950 to May 1952, and as a Planning Officer at the Assistant Industrial Manager, San Francisco from 1952 to 1954. In the Navy, I have always been an Engineering Duty Officer. I was promoted to Rear Admiral in 1977 in the Naval Reserve. I was employed as an engineer by the General Electric Co. between 1946 and 1958, and by the Bethlehem Steel Co.'s Shipbuilding Division in 1949 and | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against Foster Wheeler LLC (FW) in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Lehman's statement lacks foundation because he has no personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA; USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD; USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California. In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before FW was served in this case on September 20, 2007.<br>**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Lehman's attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13 | 1950. I held the positions of Director of Engineering at a major shipbuilding company in Seattle, WA from 1969 to 1972 and of Vice President of Engineering in Pascagoula, MS from 1972 to 1975. During all these periods I have maintained close contact with the U.S. Navy. During the times of civilian employment, I have had periods of active duty in the Department of Defense [DOD], the Naval Sea Systems Command [NAVSEA] in Washington, D.C, and shipyards. My experience has caused me to be thoroughly familiar with the U.S. Navy specifications by means of which the U.S. Navy controlled its contracts and inspections procedures, and thereby controlled its suppliers. Since my retirement in 1982 my specific knowledge of new procedures has decreased. I have been an independent consultant since 1975. I have personal knowledge of the facts herein. | duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove their content. |
| 14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | **Paragraph 2:**<br>I submit this Affidavit in support of Foster Wheeler's Notice of Removal to attest to the levels of direction, control, and supervision exercised by the U.S. Navy over the design and manufacture of equipment, including boilers and their auxiliary equipment [collectively referred to as "boilers"] designed and constructed for installation on ships of the U.S. Navy. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against FW in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Lehman's statement lacks foundation because he has no personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA; USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD; USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; |

| | |
|---|---|
| | USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California. In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before FW was served in this case on September 20, 2007.<br>**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Lehman's attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 3:**<br>During my service in the U.S. Navy as a Ship Superintendent, I was personally involved with supervision and oversight of ship's overhauls and alterations. I was fully aware that only boilers especially designed and built for the propulsion of U.S. Navy combat vessels, including Foster Wheeler boilers, could be installed. Theses were designed and manufactured in accordance with detailed specifications written, approved, and issued by the U.S. Navy, specifically NAVSEA or its predecessors, including the Bureau of Engineering. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against FW in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Lehman's statement lacks foundation because he has no personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA; USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD; USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS |

| Plaintiffs' Testimony | Objection |
|---|---|
| | MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California.  In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before FW was served in this case on September 20, 2007.<br>**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception.  Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Lehman's attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 4:**<br>The U.S. Navy chain of command concerning the ship construction comprised several layers. The Secretary of the Navy [subject to the President and Congress] had the ultimate authority related to contractual and technical control. An Under Secretary was directly concerned with the ship acquisitions. The Under Secretary position has now been eliminated, and that authority now rests with the Chief of Naval Operations who provides NAVSEA with the desired ship characteristics, and oversees its performance. In the 1930s, Foster Wheeler, as a boiler and heat exchanger manufacture, was under the cognizance of the Bureau of Engineering. The representative of that Bureau at the plant was an Inspector of Naval Machinery. The Bureau of Engineering and the Bureau of Construction and Repair was combined in 1940 to create the Bureau of Ships: for a time | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against FW in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**:  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter."  Mr. Lehman's statement lacks foundation because he has no personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA;  USS ORISKANY; USS CONSTELLATION; USS |

| | |
|---|---|
| Approvals were required from both the Inspector of Machinery and the Supervisor of Shipbuilding for the lead ships of a class. Later, the Inspectors of Naval Machinery were renamed Inspectors of Naval Material. About 1958, the Bureau of Ordnance was merged with the Bureau of Ships to form NAVSEA. As a reduction in the pace of shipbuilding continued, routine inspection responsibilities were assumed by a new organization: the Defense Contract Administration Services Agency [DCASA]. This organization had many responsibilities, But lesser technical qualifications. Technical questions were referred to the Bureaus [Commands] in Washington. Throughout all of these reorganizations there were no changes in the ultimate authorities or the responsibilities, of those authorities. Suppliers of equipment and the builders of ships have had the U.S. Navy's acceptance of their products determined by representatives of different organizations at different times but NAVSSEA or its predecessors always had the ultimate authority and the professional competence to accept or reject them. | MOUNT HOOD; USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California. In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before FW was served in this case on September 20, 2007.<br>**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Lehman's attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 5:**<br>Under NAVSEA, as under its predecessors, the U.S. Navy's shipbuilding and acquisitions of equipment for the ships comprise several levels of authority. Detailed technical control over ship design, construction, repair, and inspection was in NAVSEA. The Commander of Naval Supply Systems Command [NAVSUP] had contractual control of some procurement. Each of these two organizations had oversight responsibilities regarding, among other things, boilers manufactured for U.S. Navy vessels. Compliance with the specifications and standards was directly monitored by Inspectors of Naval Machinery under both these divisions: those under NAVSUP generally worked on site at the suppliers [in case Foster Wheeler's] manufacturing facilities and Machinery | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against FW in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Lehman's statement lacks foundation because he has no personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS |

| | |
|---|---|
| Superdentadant or Inspectors of Naval Machinery carried out their responsibilities at the shipbuilding yards. Moreover, it was common in my experience for technical personnel from the Propulsion Equipment Groups of NAVSEA to inspect the manufacturing and quality assurance processes at supplier's plants and the boiler erection and inspection procedures at the shipyards. In my experience, it was machinery inspectors who exercised primary, front line control over the work performed for the Navy by suppliers such as Foster Wheeler in the production of boilers and other equipment. The Inspectors of Naval Machinery [or those with other titles who succeeded them] were responsible for assuring the contractors such as Foster Wheeler complied with the contract specification every detail. Further, the Inspectors of Naval Machinery would report to there superiors any violations of, or failures to comply with specifications, refuse to apply their stamp of approval and not authorize shipment. This was true whether the installation was to be done by government shipyards or government contract shipyards. | MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA;  USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD;  USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California.  In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before FW was served in this case on September 20, 2007.<br>**Fed.R.Evid. 802:**  Inadmissible hearsay for which there is no exception.  Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Lehman's attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 5 (sic):**<br>The U.S. Navy retained the "final say" over the design of any piece of equipment, and made the ultimate decisions, whether engineering or contractual. | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against FW in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**:  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter."  Mr. Lehman's statement lacks foundation because he has no |

| | |
|---|---|
| | personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA; USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD; USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California. In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before FW was served in this case on September 20, 2007.<br>**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Lehman's attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 6:**<br>Further, I can attest that the military specifications for boilers and other equipment intended for use on vessels of the U.S. Navy, known as "MilSpecs", were drafted, approved, and maintained by the U.S. Navy, specifically NAVSEA or its predecessors, to encompass all aspects of shipboard equipment, including the material requirements. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against FW in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**: "A witness may not testify to |

| | |
|---|---|
| | a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Lehman's statement lacks foundation because he has no personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA; USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD; USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California. In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before FW was served in this case on September 20, 2007.<br>**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Lehman's attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 7:**<br>These contract specifications reflected the state of the art and special needs of vessels destined for combat. NAVSEA maintained and controlled the MilSpecs because it had direct contact with the forces afloat and the shipyards, and therefore superior knowledge of the | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against FW in <u>this</u> action nor is it reasonably |

| | | |
|---|---|---|
| | demands and requirements of vessels ready for combat, and the availability of processes and materials. | calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Lehman's statement lacks foundation because he has no personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA; USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD; USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California. In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before FW was served in this case on September 20, 2007.<br>**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Lehman's attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove their content. |
| | **Paragraph 8:**<br>The U.S. Navy's unique specifications for boilers were communicated to boiler suppliers such as Foster Wheeler when the U.S. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, |

| | |
|---|---|
| Navy, either directly to through its contractors issued a negotiated contract or a Request for Proposal for equipment. The U.S. Navy specifications included the nature of any communication affixed to boilers or other equipment supplied to the U.S. Navy. | the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against FW in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Lehman's statement lacks foundation because he has no personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA; USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD; USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California. In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before FW was served in this case on September 20, 2007.<br>**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Lehman's attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 9**: | **Fed. R. Evid. 402:** "Evidence which is not |

| | |
|---|---|
| The U.S. Navy had complete control. It could not, and did not, permit its contractors to implement any changes. Every aspects of every item needed to be controlled because:<br><br>a. it had to be consistent with the ability of the crew to operate the ship, especially on its combat missions;<br><br>b. it had to be compatible with the ability of the crew to maintain the ship and perform emergency repairs during its service using materials and parts carried and board when shipyard assistance was not available;<br><br>c. every item had to be functionally compatible, fit in the space available, and be maintainable and operable with materials available from the U.S. Navy's supply system. | relevant is not admissible." Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against FW in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Lehman's statement lacks foundation because he has no personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA; USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD; USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California. In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before FW was served in this case on September 20, 2007.<br>**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Lehman's attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove |

| | |
|---|---|
| | their content. |
| **Paragraph 10:** The U.S. Navy had complete control over every aspect of every piece of equipment. Military specifications governed every significant characteristics of the equipment used on the U.S Navy ships, including the instructions and warnings. Drawings for nameplates, the texts of instruction manuals, and every other document relating to construction, maintenance, and operation of the vessel was approved by the U.S. Navy. This control included the decision of which warnings should or should no not be included. Thereby, the U.S. Navy controlled the decisions with regard to instructions and warnings on every piece of equipment. The U.S. Navy would not, and could not, permit any equipment manufacturer or supplier to interfere with the Navy's mission by placing warnings on any equipment [or in any instructions or manuals which accompanied the equipment] on any U.S. Navy ships or in any shipyards in which U.S. Navy ships were built or repaired that might cause Sailors or workers to deviate from their mission or require the U.S. Navy to devote scarce resources to programs it deemed not essential, in its unilateral view. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against FW in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence. **Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Lehman's statement lacks foundation because he has no personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA; USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD; USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California. In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before FW was served in this case on September 20, 2007. **Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Lehman's attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, |

| | | |
|---|---|---|
| 1 2 3 | | procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove their content. |
| 4 5 6 7 8 9 10 11 12 13 14 15 16 | **Paragraph 11:** In addition to specifications for design and manufacture of the equipment itself, the U.S. Navy also had detailed specifications that governed the form and content of the written materials to be delivered with equipment, including boilers, supplied to the U.S. Navy. The U.S. Navy was intimately involved with and had final approval of all technical and engineering drawings, operating manuals, safety or hazard information and any other written information that accompanied it related to any piece of equipment. The U.S. Navy determined the nature of hazards to be subject to any precautionary labeling and content of such labeling. In short, the U.S. Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation form any of its contractors. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against FW in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence. **Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Lehman's statement lacks foundation because he has no personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA; USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD; USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California. In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before FW was served in this case on September 20, 2007. **Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Lehman's attempt to prove what he may have read violates the secondary |

| | | |
|---|---|---|
| 1 | | evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove their content. |
| | **Paragraph 12:** The U.S. Navy would never permit a supplier to suggest, advise, or require any actions that would be disruptive to the normal operation of the ship in its primary function of defending our Country. Procedures for operation were taught and enforced by officers of all ranks, from Petty Officers to Captains. Any written material regarding procedures for working around boilers that differed would have interfered with the normal and necessary operations of U.S. Navy ships. Indeed, in its specifications for manuals the U.S. Navy specifically limited warning information to items and events dealing with the operation of equipment. By definition, the application or removal of insulation would not have been included. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against FW in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence. **Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Lehman's statement lacks foundation because he has no personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA;  USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD;  USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California.  In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before FW was served in this case on September 20, 2007. **Fed.R.Evid. 802:**  Inadmissible hearsay for which there is no exception.  Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception. |

**PLAINTIFFS' EVIDENTIARY OBJECTIONS TO THE DECLARATION OF BEN J. LEHMAN IN SUPPORT OF DEFENDANT FOSTER WHEELER LLC'S NOTICE OF REMOVAL**      PAGE 15

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | | **Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Lehman's attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove their content. |
| 7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | **Paragraph 13:**<br>Asbestos was rampant throughout U.S. Navy ships. Sailors and civilian personnel were exposed at all times when they were aboard ships regardless of where they were stationed or where they worked. In order to protect all theses individuals from exposure to asbestos, the U.S. Navy would have had to allocate scarce resources to provide the respiratory protection for all the sailors and workers every hour of every day that they were on board. Implementing wet down procedures and creating containment areas would also have been required to implement effective industrial hygiene programs. The U.S. Navy made a conscious decision to allocation on its resources in light of its knowledge of the hazards of asbestos and its mission to protect our Country. The U.S. Navy conducted extensive research concerning the hazard of exposure to asbestos starting in the 1930's. In the early 1940's, the Navy's Bureau of Medicine and Surgery, in coordination with the U.S. Maritime Commission, set standards based on the report of Dr. Drinker and Fleischer and Marr. Through its participation in government programs and conferences into the 1980's, the Navy stayed abreast of the latest information, including the results research. The U.S. Navy made a conscious and informed decision about how asbestos would be used on it ships and how exposures would be controlled, if at all, on its ships. | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible." Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against FW in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**:  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Lehman's statement lacks foundation because he has no personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA;  USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD;  USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California.  In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before FW was served in this case on September 20, 2007.<br>**Fed.R.Evid. 802:**  Inadmissible hearsay for |

| | | |
|---|---|---|
| | | which there is no exception. Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Lehman's attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove their content. |
| | **Paragraph 14:**<br>The U.S. Navy would not have allowed its equipment suppliers, such as Foster Wheeler, to affix any warning related to any asbestos hazards on their equipment. This would have included boilers. Further, the U.S. Navy would not have allowed Foster Wheeler to place any warnings related to asbestos hazards in any written material provided by Foster Wheeler to the U.S. Navy or to a U.S. Navy contractor in accordance with its contracts, including its technical and operations manuals. To do so would have interfered with the U.S. Navy's mission and control of its ships and personnel. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Lehman's declaration was executed in July 2007 before the complaint in this case was filed. As such, the boilerplate generic testimony offered by Mr. Lehman is not relevant to plaintiffs' claims against FW in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Lehman's statement lacks foundation because he has no personal knowledge regarding plaintiff Albert Wright's work as a machinist and flange turner aboard various Navy vessels and at bases including, but not limited to, the USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS CORAL SEA; USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD; USS JOHN F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS GRAYBACK USS BRINKLEY BASS; USS TRIGGER; and USS WAHOO, and at Hunter's Point Naval Shipyard in San Francisco, California and Mare Island Naval Shipyard in Vallejo, California. In fact, Mr. Lehman signed his boilerplate declaration in July 2007 before |

| | |
|---|---|
| | FW was served in this case on September 20, 2007.<br>**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Lehman's attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Lehman's attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, and other documents, which he references in his declaration, to prove their content. |

DATED: November 20, 2007                **KELLER, FISHBACK & JACKSON LLP**


By: _____/s/_____
         Daniel Keller
         Attorneys for Plaintiffs