Edward R. Hugo [Bar No. 124839]
ehugo@bhplaw.com
Thomas J. Moses [Bar No. 116002]
tmoses@bhplaw.com
Jann M. Noddin [Bar No. 196445]
jnoddin@bhplaw.com
BRYDON HUGO & PARKER
135 Main Street, 20th Floor
San Francisco, CA 94105
Telephone: (415) 808-0300
Facsimile: (415) 808-0333

Attorneys for Defendant
FOSTER WHEELER USA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT WRIGHT JR. and MARVA JOE GREEN WRIGHT,<br><br>        Plaintiff(s),<br>    vs.<br><br>A.W. CHESTERTON COMPANY, INC. et al.<br>        Defendants. | U.S.D.C. No. C 07-5403-MJJ<br><br>DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND<br><br>[Filed Concurrently with Declaration of Thomas J. Moses, Declaration of Lawrence Stilwell Betts]<br><br>Date:    January 8, 2008*<br>Time:    9:00 a.m.*<br>Chief Magistrate Judge Martin J. Jenkins<br>Courtroom: 11<br>(*Original court date and time, which is expected to be continued pursuant to reassignment.) |

BRYDON
LAW GROUP
425 CALIFORNIA STREET
SUITE 1400
San Francisco, CA 94104

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................................ 4

    A.    The Ships ..................................................................................................... 4

    B.    The Navy's Procurement of Foster Wheeler Boilers and Auxialiary
        Equipment was "Military Equipment" not "Stock Equipment." ..................... 5

    C.    The Navy Exercised Strict Control Over Written Documentation For
        Military Equipment .......................................................................................... 7

    D.    The Navy had Superior Knowledge of the Hazards of Asbestos
        to Foster Wheeler. .......................................................................................... 8

III.  ARGUMENT ........................................................................................................ 9

    A.    Federal Courts Broadly Construe the Federal Officer Removal
        Statute in Favor of Removal. ......................................................................... 9

    B.    Removal Jurisdiction under 28 U.S.C. § 1442(a)(1) is Appropriate
        As The Complaint Alleges Misconduct Against Foster Wheeler
        For Acts Performed Under Authority of an Office or Agency of
        The United States. ......................................................................................... 11

        1.    Foster Wheeler Acted Under The Direction of Federal
            Officer. .............................................................................................. 12

        2.    Foster Wheeler Has Raised a Colorable Federal Defense
            Under *Boyle v. United Technologies* ............................................... 13

            a.    Foster Wheeler Satisfied the First and Second Prongs
                of Government Contractor Defense Because The
                United States Approved Reasonably Precise
                Specifications; Foster Wheeler Conformed to Navy
                Specification .......................................................................... 13

            b.    The Third Prong Is Satisfied Because the Dangers of
                Asbestos were Better Known to the U.S. Navy During
                the Period of Mr. Wright's Alleged Exposures .......................... 14

    C.    The Holding in *In Re Hawaii Federal Asbestos Cases* Does Not
        Preclude Foster Wheeler From Asserting the Government
        Contractor Defense. ....................................................................................... 16

    D.    Foster Wheeler Demonstrates a Casual Nexus Between It's Work
        for the Navy and Mr. Wright's Alleged Injuries. ............................................. 17

    E.    Foster Wheeler Respectfully Requests the Court Certify this
        Motion for Interlocutory Appeal .................................................................... 18

IV.   CONCLUSION .................................................................................................. 18

i

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO
REMAND

1

**TABLE OF AUTHORITIES**

2 **Case(s)**                                                                                                     **Page(s)**

3  *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) ...................................................................... 9

4  *Ballenger v. A.W. Chesterton*, 2006 WL 2186681 ................................................................. 2, 4

5  *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) ...................................... 1,2,11,13,14,15

6  *Burgess v. Colorado Serum., Co. Inc.*, 772 F.2d 844, 846 (11th Cir. 1985) ...................................... 13

7  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) ............................ 2,9,10,12

8  *Emory v. McDonnell Douglas Corp.*, 148 F.3d 347 (4th Cir. 1998) .......................................... 14,15

9  *Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D.Cal. 1992) ...................................................... 12

10 *In Re Hawaii Federal Cases*, 960 F.2d 806, 60 USLW 2668 (1992) ........................................... 2, 16

11 *Kerstetter v. Pacific Scientific Co.*, 210 F.3d 431, 438, n.9(5th Cir. 2000) ..................................... 15

12 *Lujan v. National Wildlife Federation*, 497 U.S. 871, 894-895 (1990) ........................................ 19

13 *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996) ................................................... 19

14 *McKay v. Rockwell Intern. Corp.*, 704 F.2d 444, 448 (9th Cir. 1983) ....................................... 13,15

15 *Mesa v. California*, 489 U.S. 121 (1989) .............................................................................. 1,3,12,17

16 *Nguyen v. Allied Signal* 1998 690854 (N.D.Cal.) .................................................................... 10

17 *Olive v. Oshkosh Truck Corp.*, 96 F.3d. 992, 1001 (7th Cir. 1996) ............................................. 15

18 *Overly v. Raybestso-Manhattan* 1966 WL 532150 (N.D.Cal.) .................................................... 10

19 *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 947 (E.D.N.Y. 1992) .......................................... 12

20 *Stout v. Borg-Warner Corp.*, 933 F.2d 331 (5th Cir. 1991) ....................................................... 14

21 *Sundstrom v. McDonnell Douglas Corporation* 816 F.Supp. 587 (1993) ................................... 15

22 *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1487 (5th Cir. 1989) .................................... 15

23 *Viala v. Owens-Corning Fiberglas Corp.* 1994 WL 139287 (N.D.Cal.) ........................................ 10

24 *Watson v. Phillip Norris Cos.*, 420 F.3d 852, 856-857 (8th Cir. 2005) ......................................... 12

25 *Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ................................................................. 11,13

26 *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir. 1988) ........................ 12

27

28

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO
REMAND

## Statutes

28 United States Constitution
     Section 1292(b) ................................................................................................... 4,18
     Section 1441 ........................................................................................................ 2,10
     Section 1442 ........................................................................................................ 2,10
     Section 1442(a)(1)............................................................................ 1,3,4,9,10,11,17
     Section 1446 ......................................................................................................... 2,3
     Section 1446(a)(1).................................................................................................. 3
     Section 1446(b)...................................................................................................... 1

## Other

Statement of Tort
     28 U.S.C.A. Section 2680(a) ................................................................................. 5

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

## I.    INTRODUCTION

Defendant Foster Wheeler USA Corporation, [hereinafter "Foster Wheeler"], properly removed this action under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). This statute authorizes removal in "[a] civil action...commenced in a State court against...[t]he United States or any agency thereof or any officer (or person acting under that officer) of the United States or of any agency thereof...." (*Id.*) Foster Wheeler is prepared to present evidence that, in connection with the allegations in Plaintiffs' complaint, Foster Wheeler was a "person acting under" the direction of the United States Navy and its officers.  Specifically, Foster Wheeler will raise the federal government contractor defense enunciated in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). Under *Boyle*, state law claims against a government contractor are displaced if the contractor worked at the direction of federal officials and provided materials they specified.

On September 13, 2007, Plaintiffs filed this action in Superior Court of the State of California, San Francisco County, against Foster Wheeler and numerous other defendants.  Plaintiffs served Foster Wheeler with the Summons and Complaint on or around September 28, 2007.    (See Complaint attached as Ex. A, to the Notice of Removal.) Pursuant to 28 U.S.C. § 1446(b) Foster Wheeler timely removed this case to the United States District Court for the Northern District of California.    (See Notice of Removal, filed on October 24, 2007.)   The basis of removal is that; (a) Foster Wheeler sold boilers and auxiliary equipment to the United States Navy pursuant to contracts with the Navy, (b) such equipment was manufactured in strict compliance with detailed government specifications, including marking and labeling specifications, and (c) the Navy had superior knowledge about potential health hazards.  Accordingly, removal of this action is proper because Foster Wheeler is entitled to assert a federal defense to plaintiffs' claims. (*Mesa v. California,* 489 U.S. 121 (1989).)

Plaintiffs filed the pending motion to remand based on their assertion that removal pursuant federal officer jurisdiction is unavailable in failure to warn cases and

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1

1   cite unpublished cases to support this narrow ruling.  Moreover, plaintiffs' offer no

2   support, except for bald assertions that Foster Wheeler's boilers and auxiliary equipment

3   was not specifically designed for the Navy because the Navy did not "design" the boilers,

4   inferring that it was "stock" equipment and therefore, would not fall under the

5   protection of the military contractor's defense.  Plaintiffs reliance on the Ninth Circuit's

6   holding in *In Re Hawaii Federal Cases*, (960 F.2d 806, 60 USLW 2668 (9th Cir. 1992).) is

7   unpersuasive in this instance in light of recent decisions.[1] (See *Ballenger v. A.W. Chesterton*,

8   2006 WL 2186681.)  Foster Wheeler has evidence that shows they manufactured main

9   boilers wholly with the needs of the Navy in mind, pursuant to exact Navy specifications

10  and as result are *"military equipment"* in the truest sense, *to wit*, "[t]he federal defense

11  immunizes contractors who supply military equipment to the government from duties

12  imposed by state tort law. 28 U.S.C.A. § 2680(a)." (*Id.* at 807.)

13      Next, Plaintiffs erroneously assert that what Foster Wheeler needs to submit

14  admissible evidence to support grounds for removal; evidence that Foster Wheeler

15  incorporated asbestos and asbestos-containing parts into its design of boilers and failed

16  to warn about the dangers of asbestos at the direction of a *"specific federal officer."* (See

17  Plaintiffs' Motion to Remand at 7:28-8:2, *"emphasis added."*)  Plaintiffs' cite *Boyle v. United

18  Technology Corp*, 487 U.S. 500, (1988) to support this conclusion.  However, Plaintiffs'

19  analysis of *Boyle* is incorrect, as is their understanding of what is needed to remove this

20  action in compliance with § 1446.

21      First, the holding in *Boyle* does not require that the direction be given from a

22  specific officer.  Justice Scalia ruled in *Boyle*, " … state law which imposes liability for

23  design defects in military equipment is displaced where (a) *the United States* approved

24  reasonably precise specifications;  (b) the equipment conformed to those specifications;

25

26  [1]  In *Ballenger*, Judge Wilken recently decided to deny plaintiff's motion to remand based on the *Durham* holding, finding that the federal government protection found in section 1442 are much broader that those found under section 1441.  The Court found that declarations from Admiral Horne that the U.S. Navy had superior knowledge of the dangers of asbestos, that Todd Shipyard was under direct control of the Navy with respect to failure to warn and negligent use of asbestos,  and that it would not have allowed warnings was evidence to support Todd Shipyard's "colorable federal defense."

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

2

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1  and (c) the supplier warned the United States about dangers in the use of the equipment

2  known to the supplier but not to the United States." (*Id.* at 502, *"emphasis added."*)    An

3  agency of the United States, such as the Bureau of Ships is a "federal officer."

4      Second, Foster Wheeler properly removed this action in compliance with § 1446 by

5  filing a notice setting forth a "short and plain statement of the grounds for removal" –and

6  attaching the papers that had been served on Foster Wheeler.  In responding to Plaintiffs'

7  motion to remand, Foster Wheeler does not have the burden of proving its federal

8  defense.  To support removal under § 1446(a)(1), Foster Wheeler is only required to set

9  forth the *"allegation"* of a *"colorable" federal defense."* (*Mesa*, 489 U.S. at 129, 133-134.)

10      In support of removal, Foster Wheeler offers the declarations of J. Thomas

11  Schroppe[2], Ret. Admiral Ben J. Lehman[3] and, Ret. Capt. Lawrence Stilwell Betts[4] to

12  support the contention that; (1) the Navy had superior knowledge of the hazards of

13  asbestos at all times they contracted with Foster Wheeler, (2) Foster Wheeler did not

14  have the opportunity to provide warnings of the hazards of asbestos pursuant to strict

15  Navy specifications and protocol around labeling, and (3) that Foster Wheeler boilers

16  and auxiliary equipment was manufactured pursuant to exact Navy specification which

17  included the navy's material demands for the use of asbestos. (See below for further

18  discussion of Government Purchase Order attached as Exhibit B to the Declaration of

19  Thomas J. Moses, ("Moses decl.").)    These affidavits and exhibits support federal

20  removal jurisdiction under 28 U.S.C. § 1442(a)(1), and also establishes the federal nexus

21

22  [2] Affidavit of J. Thomas Schroppe attached to Foster Wheeler's Notice of Removal, as Exhibit B.  Mr. Schroppe is an

23  employee and past President of Foster Wheeler.  During his tenure he had personal experience with navy contracts for Foster Wheeler boilers and auxiliary equipment and the degree of control the navy exerts over the development of this equipment for use on navy ships.  (*Id.* at ¶ 2.)

24  [3] Affidavit of Admiral Lehman attached to Foster Wheeler's Notice of Removal, as Exhibit C.  Admiral Lehman joined

25  the Navy in 1942 and worked as Ship Superintendent and Planning Officer at the Brooklyn Navy Yard between 1942 and 1944, as Ship Superintendent at the San Francisco Naval Shipyard from 1950 to 1952, and as Planning Officer at

26  the Assistant Industrial Manager Office in San Francisco from 1952 to 1054. (*Id.* at ¶ 1.)  During his tenure in the Navy and as Ship Superintendent, Admiral Lehman was personally involved with the supervision and oversight of ship

27  alterations and equipment over hauls at the Brooklyn Navy Yard. (*Id.* at ¶ 3.)

28  [4] Dr. Betts is a medical doctor and retired Navy captain who holds a Ph.D. in occupational health and is board certified in occupational medicine and industrial hygiene.  His Declaration is filed in Support of Foster Wheeler's Opposition to Plaintiffs' Motion to Remand.

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

3

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1   to Foster Wheeler's actions.  These facts as stated above have been held sufficient to

2   support removal in a similar case.  (See *Ballenger v. A.W.Chesterton Co.*, 2006 WL 2186681,

3   decided on June 20, 2006.[5])

4   Finally and most important, the recent decision in *Durham v. Lockheed Martin Corp.*,

5   445 F.3d 1247, 1252 (9th Cir. 2006), makes clear that removal pursuant to 28 U.S.C.

6   §1442(a)(1), the applicable federal removal statute herein, is *to be construed broadly*, not

7   *strictly*.  Accordingly, this Court should deny Plaintiffs' motion to remand.  If the Court is

8   inclined to grant Plaintiffs' motion, it should certify its order for interlocutory appeal

9   under 28 U.S.C. § 1292(b) so that this important issue does not evade appellate review

10  under the general rule that remand orders may not be appealed.

11  **II.    FACTUAL BACKGROUND**

12  **A. The Ships.**

13  Plaintiffs claim Albert Wright, Jr. was exposed to asbestos from his work as a civil

14  servant for the United States Navy, where he worked as a crane operator from 1965 to

15  1966 at the U.S. Naval Weapons Station in Port Chicago, CA; as a machinist from 1966 to

16  1973 at Hunter's Point, San Francisco, CA and at Mare Island from 1973 to 1995.  Further,

17  plaintiffs allege that Mr. Wright performed work aboard the following U.S. Navy ships:

18  USS MIDWAY, USS ENTERPRISE, USS KITTY HAWK, USS CORAL SEA, USS

19  ORISKANY, USS CONSTELLATION, USS MOUNT HOOD, USS JOHN F. KENNEDY,

20  USS HANCOCK, USS TICONDEROGA, USS PROVIDENCE, USS MOUNT BAKER, USS

21  MAUNA KEA, USS PIGEON, USS PYRO, USS GUITTARO, USS DRUM, USS PINTADO,

22  USS HAWKBILL, USS PERMIT, USS SWORDFISH, USS HALIBUT, USS GRAYBACK,

23  USS BRINKLEY BASS, USS TRIGGER, USS WAHOO.    (See Plaintiffs' Preliminary

24  Statement, attached to the Moses decl., as Exhibit A.)

25  During the time period that the United States Navy built the above ships,

26  (including years preceding World War II to the present), Foster Wheeler manufactured

27  and delivered boilers and auxiliary equipment to the Navy pursuant to government

28

---

[5] A copy of *Ballenger v. A.W. Chesterton Co.* case is attached as Exhibit C to the Moses decl.

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

4

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1    contracts, some of which may or may not have ended up on the above named ships.

2    However, any such boiler and auxiliary equipment manufactured and supplied by Foster

3    Wheeler in fulfillment of government contracts followed exact specifications set forth by

4    the United States Government detailing the performance requirements of such

5    equipment and the materials, including the particular insulation to be used. The U.S.

6    Navy would have accepted delivery of such boilers and auxiliary equipment only if it

7    met their exact specifications. (Affidavit of Lawrence Stilwell Betts, ("Betts decl.") ¶ 4.)

8
9
         **B. The Navy's Procurement of Foster Wheeler Boilers and Auxaliary Equipment was "Military Equipment" not "Stock Equipment."**

10         Foster Wheeler entered into contracts to design and build boiler and auxiliary

11    equipment for U.S. Navy ships pursuant to the navy's strict specifications and oversight.

12    (Schroppe decl., ¶¶ 4-8; Lehman decl. ¶ 8.) The United States Navy, through several

13    layers of authority, exercised detailed technical control over ship design, construction

14    and repair. (See Lehman decl., (*Id.* at ¶¶ 4, 5.)

15         In a purchase order dated October 18, 1942 for Foster Wheeler boilers for use in

16    Destroyers included, *"Superheaters, Furnaces, Furnace dividing walls, Economizers, Soot*

17    *Blowers, Burners and Air Registers, Fittings and Casings,"* (hereafter referred to as

18    "equipment," see Government Purchase Order attached as Exhibit B to the Moses decl.,

19    referred to hereafter as "GPO" at p. 5.). This GPO was signed on December 14, 1942 by

20    "R.D.Stout," for the "Marine Division" for "Bethlehem Steel, Co., (By and Through

21    Federal Shipbuilding & D.D. Co. for U.S. Navy Destroyers-DD-748-56." It was a request

22    for "Thirty-six (36) Design Marine Type Steam Generators, FWB."[6]  It includes

23    specifications for 36 boiler, 36 superheaters, 36 economizers, to be ready for delivery

24    between March and November 1944 for installation on seven navy destroyers. This

25    document includes a 36 page appendix also dated October 14, 1942 which outlines the

26    U.S. Navy's very detailed specifications for each piece of equipment.

27         This agreement mandated that Foster Wheeler, as a condition for selection of this

28

[6] Numbers next to FWB are illegible, however FWB stands for "Foster Wheeler Boilers."

BRYDON HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1   award, would build main boilers using Babcock & Wilcox Company's basic design that

2   had been approved for use by the U.S. Navy. (*Id.* at p. 2.) Furthermore, Foster Wheeler

3   had to agree "...*not build or sell, nor offer to build or sell Boilers, etc., from those designs to*

4   *anyone else for any other purpose.*" (*Id.* at p. 3.) Beginning on page 6 are the

5   "Specifications" to be used on naval destroyers during the war; wherein it states that

6   "*Equipment is to be in accordance with Bureau of Ships' General Specifications for Machinery*

7   *Subsection 851-2 and all applicable sections...*" (*Id.* at pp. 6 and 11.) And that the, "*The*

8   *material and design of superheaters and economizers shall be as submitted in detail by the*

9   *contractor and approved by the Bureau.*" (*Id.* at p.15.) For instance, for the "Casings" the

10  military specifications require the the double plate panel "...*will be filled with uncalcined*

11  *diatomaceous earth block (spec.SRPS) (Superex or equal). ...*" (*Id.* at p. 22.) "*The joints of the*

12  *casing panels will be packed with brass **asbestos** insert packing strips. Removable panels will*

13  *be provided with **woven asbestos** packing strips.*" (*Id.* at p. 24, "***emphasis added.***")

14  "*Uncalcined diatomaceous earth block* is also required for use in the "Superheater Furnace

15  Side Wall." (*Id.* at p. 26.) The "Furnace Lining" requires installation of "...*1-1/4" of*

16  *insulating brick, then a 4-1/9" layer of refractory fire brick...*." (*Id.* at p. 26.)

17      Military specifications for boilers and other equipment intended for use on naval

18  vessels, known as "Milspecs," were drafted, approved, and maintained by the U.S. Navy,

19  to encompass all aspects of shipboard equipment, including material requirements.

20  (Lehman decl. at ¶ 6.) These contract specifications reflected the state of art and the

21  special needs of vessels destined for combat. (*Id.* at ¶ 7.) The navy's unique specifications

22  for boilers were communicated to boiler suppliers such as Foster Wheeler either directly

23  or through its contractors, then they issued either a negotiated contract or a Request for

24  Proposal for equipment. (*Id.* at ¶ 8.)

25      The Navy was responsible for all phases of the design of a vessel, which was

26  accomplished by the Naval architect. The Naval architect prepared the ship design for

27  the entire vessel including the machinery space, and all performance requirements. This

28  Ship Specification ("Ship Spec"), as it pertained to the boilers, covered all operating

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

6

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO
REMAND

criteria, performance requirements and maximum physical dimensions of the boiler. Foster Wheeler was required to design, fabricate and furnish equipment which complied strictly with the requirements of the Ship Spec. (Schroppe decl. at ¶ 5.)

In addition to the Ship Spec, Foster Wheeler was also obligated to comply with Milspecs, which cover all specific components of the boiler, including accessories, subcomponents, and materials required to fabricate the boilers and its components. (*Id.* at ¶ 6.) Deviations from these specifications were not acceptable as it pertained to boilers. (*Id.* at ¶ 8; Lehman decl. at ¶ 9.) This equipment was to precisely conform with the ship specifications contained in MIL-B-18381 which was the military's specifications pertaining to naval propulsion boilers. (Schroppe decl. at ¶ 9.) MIL-B-18381 dictated very specific requirements such as what types of refractory and insulation material was to be used. (*Id.* at ¶13.)

### C.    The Navy Exercised Strict Control Over Written Documentation For Military Equipment.

According to Dr. Betts, since the 1920s, the Navy has had state-of-the art knowledge concerning potential health hazards of asbestos and would not have allowed a manufacturer to unilaterally deviate from Navy specifications by including warning labels on equipment or on any materials that were supplied to the Navy. (Betts decl., at ¶ 9.) The Navy exercised intense direction and control over all written documentation to be delivered with its naval boilers and required that every piece of equipment be supplied with a defined number of copies of one or more technical manuals. Navy personnel participated intimately in the preparation of this kind of information and exercised specific direction and control over its contents. These manuals included safety information related to the operation of naval boilers and economizers only to the extent directed by the Navy. Furthermore, the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy. Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures, and especially under actual

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1   practice as it evolved in the field, to affix any type of warning or caution statement to a
2   piece of equipment intended for installation onto a Navy vessel, beyond those required
3   by the Navy. (Schroppe decl. at ¶¶ 21 and 22.)

4        Among the requirements imposed on private contractors by the Navy was the use
5   of asbestos-containing materials in the maintenance and repair of naval vessels. This
6   requirement reflected the state of the art at the time, as well as the demands and
7   requirements of combat ready Navy vessels. The Navy also issued specifications as to
8   the nature and content of all written materials that were delivered with each piece of
9   equipment and materials, and determined the hazards to be subject to precautionary
10  labeling and the contents of such labeling. Further the Navy determined the nature of
11  any oral warnings that were to be given about the use of the products and materials
12  aboard its ships. In short, according to Admiral Lehman and Dr. Betts, the Navy dictated
13  ever aspect of the design, manufacture, installation, overhaul, written documentation and
14  warnings associated with its ships, and did not permit deviations from any of its
15  contractors, including Foster Wheeler. (Lehman decl., at ¶¶ 3-6, 14.; Betts decl. at ¶¶ 33,
16  34.)

17       The U.S. Navy would not have allowed its equipment suppliers, such as Foster
18  Wheeler, to affix any warnings related to any asbestos hazards on their equipment,
19  including its boilers or in their technical and operations manuals. To do so would have
20  interfered with the U.S. Navy's mission and control of its ships and personnel. (Lehman
21  decl. at ¶ 14; Betts decl. at ¶¶ 33, 34.)

22       **D.   The Navy had Superior Knowledge of the Hazards of Asbestos to Foster
23            Wheeler.**

24       The above ships that plaintiff claims exposure on, did not necessarily have
25  asbestos-containing boilers manufactured by Foster Wheeler, but if they did, the
26  asbestos was included pursuant to government specifications, as was shown in the
27  attached PO. (Schroppe decl. at ¶ 13.; PO at p. 24.) Furthermore, there were no hazards
28  of asbestos known to Foster Wheeler that were not already known to the U.S. Navy.

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

8

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO
REMAND

1   (Betts decl. at ¶¶ 5, 6, 32 & 36.)  Asbestos was rampant throughout U.S. Navy ships, to

2   which Sailors and civilian personnel were exposed.

3       Beginning in the 1930s, the U.S. Navy conducted extensive research concerning

4   the hazard of exposure to asbestos.  In the early 1940s, the Navy's Bureau of Medicine

5   and Surgery, in coordination with U.S. Maritime Commission, set standards based on

6   the report of Dr. Philip Drinker, then Chief Health Consultant for the United States

7   Maritime Commission, (*Id.* at ¶ 18.)  as well as studies conducted by Fleischer, Viles,

8   Gade, and Drinker, called the "Fleischer-Drinker study." (*Id.* at ¶ 18.) Based on these

9   various studies, the Navy adopted a recommended "maximum allowable concentration

10  (M.A.C.)" value for asbestos of 5 MPPCF.  (*Id.* at ¶ 19.)  The U.S. Navy made a conscious

11  and informed decision about how asbestos would be used on its ships and how

12  exposures would be controlled, if at all, on its ships. (Lehman decl. at ¶ 13.)

13      The above evidence show that Foster Wheeler's contract to design, manufacture

14  and supply boilers and auxiliary equipment for combat ships was performed under the

15  direct and detailed control of the U.S. Navy; and the presence or absence of warnings

16  regarding Foster Wheeler equipment was strictly controlled by the Navy and presents a

17  clear basis for removal exists under § 1442(a)(1).

18  **III.    ARGUMENT**

19  **A.    Federal Courts Broadly Construe the Federal Officer Removal Statute in
         Favor of Removal.**

20

21      Plaintiffs assert that "[r]emoval statutes are to be strictly construed, and any

22  doubts as to removal are to be resolved in favor of remanding the case to state court."

23  Plaintiffs have cited the incorrect standard and are, therefore, flatly wrong.   "[T]he

24  Supreme Court has mandated a generous interpretation of the federal officer removal

25  statute." (See *Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1252 (9th Cir. 2006); see also

26  *Arizona v. Manypenny,* 451 U.S. 232, 242 (1981) [removal "should not be frustrated by a

27  narrow, grudging interpretation § 1442(a)(1).   In *Durham,* the Ninth Circuit chronicled

28  the origins of federal officer removal, and took "from this history a clear command from

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

9

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO
REMAND

1    both Congress and the Supreme Court that when federal officers and their agents are

2    seeking a federal forum, we are to interpret section 1442 broadly in favor of removal."

3    (*Supra,* 445 F.3d at 1252.)

4         In support of remand Plaintiffs' rely on cases that are not reported in F.Supp.,

5    including: *Viala v. Owens-Corning Fiberglas Corp.* 1994 WL 139287 (N.D.Cal.); *Overly v.*

6    *Raybestos-Manhattan* 1996 WL 532150 (N.D.Cal.); and *Nguyen v. Allied Signal* 1998 690854

7    (N.D.Cal.), and all were decided before *Durham.* (See *Durham v Lockheed Martin Corp.*, 445

8    F.3d 1247, 1252 (9th Cir. 2006).) In *Durham,* the Court considered the proper standard for

9    adjudicating removal issues pursuant to the federal officer removal statute. Specifically,

10   it sought to determine whether, "the thirty-day clock is reset if the defendant later

11   discovers the case is also removable on federal officer grounds." (*Id.* at 1249.) The Court

12   held that "a federal officer defendant's thirty days to remove commence when the

13   plaintiff discloses sufficient facts for federal officer removal, even if the officer was

14   previously aware of a different basis for removal. (*Id.* at 1253.)

15        In so holding, the *Durham* Court first clarified the somewhat conflicting judicial

16   standard to be applied in removal issues. It reasoned that, unlike other bases of removal,

17   the U.S. Supreme Court "has mandated a generous interpretation of the federal officer

18   removal statute...." (*Id.* at 1252.) Specifically, the Court held:

19            The Supreme Court "has held that the right of removal is absolute for
20        conduct performed under color of federal office, and has insisted that the
          policy favoring removal 'should not be frustrated by a narrow, grudging
21        interpretation of §1442(a)(1).'" (Id.)

22        In light of this history, said the Court, "[w]e take...a clear command...that when

23   *federal officers and their agents are seeking a federal forum, we are to interpret section 1442*

24   *broadly in favor of removal.*" (*Id.* at 1252 (*emphasis added*).) "Because it's so important to the

25   federal government to protect federal officers, removal rights under section 1442 are

26   much broader than those under section 1441." (*Id.* at 1253.) Thus, in stark contrast to

27   plaintiffs' assertion, the federal officer removal statute is to be interpreted broadly, not

28   strictly, in favor of removal.

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

10

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO
REMAND

1    Moreover, as explained below, these cases are distinguished from the present case

2    in that Plaintiffs' allegations are not so limited to only "failure to warn." Plaintiffs have

3    alleged causes of action for negligence and "strict liability/consumer expectation" against

4    Foster Wheeler, as well as the negligence claims found in contractor and premises

5    liability. As such, Foster Wheeler's ability to remove this matter is not dependant solely

6    on whether the Navy provided it "reasonably precise specifications" regarding the

7    provision of warnings.

8    However, even if "failure to warn" were plaintiffs' sole theory of liability against

9    Foster Wheeler, Foster Wheeler has produced significant evidence showing that the Navy

10    provided reasonably precise specifications with regard to the provision of warnings.

11    Specifically the declarations of Retired Admiral Lehman and Dr. Betts attest to the

12    plethora of evidence showing that the U.S. Navy had superior knowledge of asbestos to

13    Foster Wheeler.    Further, this evidence shows that the Navy's exact military

14    specifications for equipment used on ships built for combat, also had precise

15    requirements for labeling of this shipboard material and equipment, all of which

16    prohibited Foster Wheeler from providing its own warnings on its boilers and auxiliary

17    equipment.

18    Finally, if this Court finds that the application of the *Boyle* defense presents a close

19    question, this Court should deny remand because Foster Wheeler need show no more

20    that a colorable argument that the defense applies. (See *Willingham v. Morgan* 395 U.S.

21    402, 406-407 (1969).)

22    **B.    Removal Jurisdiction Under 28 U.S.C. § 1442(a)(1) Is Appropriate As The Complaint Alleges Misconduct Against Foster Wheeler For Acts Performed Under Authority of an Office or Agency of the United States.**

23

24    Foster Wheeler properly removed this action pursuant to 28 U.S.C. §1442(a)(1).

25    That statute provides:

26    A civil action or criminal prosecution commenced in a State court
27    against any of the following may be removed by them to the district court of
     the United States for the district and division embracing the place wherein it
28    is pending:

Brydon
Hugo & Parker
135 Main Street
20th Floor
San Francisco, CA 94105

11

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1        (1) The United States or any agency thereof of any officer (or any
2   person acting under that officer) of the United States or of any agency
3   thereof, sued in an official or individual capacity for any act under color of
    such office or on account of any right, title or authority claimed under any

4   Act of Congress for the apprehension of punishment of criminals or the
    collection of revenue.

5        Initially, a Defendant seeking to remove a case to Federal Court must qualify as a
6   federal officer, or a "person" acting under the same.[7]  Once satisfied, as Foster Wheeler
7   has done here, it must: (1) demonstrate that it acted under the direction of a federal
8   officer; (2) raise a federal defense to the plaintiff's claims; and (3) demonstrate a causal
9   nexus between the plaintiff's claims and acts it performed under color of federal officer.
10  (*Mesa*, 489 U.S. at 124-125, 129-131, 134-135.)   In the instant case, under the broad
11  construction mandated by the controlling authority of *Durham*, Foster Wheeler satisfies
12  each of these requirements.

13       1.  <u>Foster Wheeler Acted Under The Direction of a Federal Officer.</u>

14       "Whether a defendant is 'acting under' the direction of a federal officer depends
15  on the detail and specificity of the federal direction of the defendant's activities and
16  whether the government exercises control over defendants." (*Watson v. Phillip Morris*
17  *Cos.*, 420 F.3d 852, 856-857 (8th Cir. 2005).) "If the corporation establishes 'only that the
18  relevant acts occurred under the general auspices of a 'federal officer, such as being a
19  participant in a regulated industry, they are not entitled to section 1442 (a)(1) removal."
20  (*Fung*, 816 F.Supp. at 572, citing *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 947 (E.D.N.Y.
21  1992).) "A majority of courts have held that the federal official must have 'direct and
22  detailed control' over the defendant." (*Id.*)

23       In the present case, support for the proposition that Foster Wheeler acted under
24  the direction of federal officers in the U.S. Navy is found in the Declarations of J. Thomas

26  ───────────────
27  [7]  As a duly organized corporation, Foster Wheeler is a "person" for purposes of the Federal Officer Removal Statute.
    (*Winters v Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir. 1998). cert. denied. 526 U.S. 1034 (1999) [finding
    that corporate manufacturers are "persons" within the meaning of the federal officer removal statute]; *Fung v Abex*
28  *Corp.*, 816 F.Supp. 569, 572 (N.D.Cal. 1992) [finding that a builder of submarines under the supervision of the Secretary
    of Navy or his delegees was a "person."].)

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

12

Schroppe, a retired employee and past President of Foster Wheeler, Retired Admiral Ben Lehman and Dr. Lawrence Stilwell Betts.

      2.   <u>Foster Wheeler Has Raised a Colorable Federal Defense Under *Boyle v. United Technologies*.</u>

To properly remove this case, Foster Wheeler must also raise a federal defense to plaintiffs' claims. It is imperative to note that the United States Supreme Court has held that a defendant, such as Foster Wheeler need not prove that it can sustain the defense, but only that it presents a colorable claim. "*The officer need not win his case before he can have it removed.*" (*Willingham v. Morgan*, 395 U.S. 402, 407 (1969) (emphasis added).) Here, Foster Wheeler has asserted the "government contractor defense." Under this theory, a government contractor is protected from liability "for acts done by him while complying with government specifications during execution of performance of a contract with the United States." (*McKay v. Rockwell Intern. Corp.*, 704 F.2d 444, 448 (9th Cir. 1983).)

The rationale underpinning the government contractor defense is that, given the immunity afforded the Federal government for claims arising out of its performance of discretionary functions, "[i]n circumstances in which the government would not be liable, private contractors who act pursuant to government directives should not be liable." (*Burgess v. Colorado Serum., Co. Inc.*, 772 F.2d 844, 846 (11th Cir. 1985). Liability under state law is barred by the government contractor defense when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." (*Boyle, supra*, at 487 U.S. at 512.) As we now explain, Foster Wheeler has produced evidence that it can meet all three requirements.

      a.   *Foster Wheeler Satisfied the First and Second Prongs of Government Contractor Defense Because The United States Approved Reasonably Precise Specifications; Foster Wheeler Conformed to Navy Specifications.*

The first and second prongs of the government contractor defense are easily

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

satisfied in the instant case. As discussed above, all work performed by Foster Wheeler in the manufacture of main boilers and auxiliary equipment was performed pursuant to precise military specifications. (Betts decl., ¶ 4.) The U.S. Navy not only provided exact specifications for the equipment they needed, they also retained "final say" over the design of any piece of equipments. (Lehman decl., at ¶ 5.) Foster Wheeler's work in relation to plaintiffs' claims satisfies the conditions under which courts have found government contractor defense to apply. (*Stout v. Borg-Warner Corp.*, 933 F.2d 331 (5th Cir. 1991)[holding defense applied even though allegedly defective lack of protective devise in condenser fan was not specifically addressed in government specification, but government had approved reasonably precise specifications when engaging in thorough review of the design.].)

Thus, the U.S. Navy mandated the use of asbestos-containing materials in the manufacture of Foster Wheeler main boilers and its auxiliary equipment to be installed on Navy ships during the time period that Mr. Wright was allegedly present at both Hunter's Point and Mare Island shipyards while said ships were being either built, maintained or repaired, and Foster Wheeler's work adhered to the Navy's specifications. Accordingly, Foster Wheeler's evidence demonstrates it will be able to more than meet its burden of presenting a colorable argument that the first and second prongs of the government contractor defense are satisfied.

> b.  *The Third Prong Is Satisfied Because the Dangers of Asbestos were Better Known to the U.S. Navy During the Period of Mr. Wright's Alleged Exposures.*

The third prong of the government contractor defense requires the Defendant to have warned of hazards that were known to it, but not to the United States. (*Boyle, supra* at 487 U.S. at 512.) This requirement is satisfied in the instant case because, during the time Mr. Wright allegedly began working on or around U.S. Navy ships in 1965, the U.S. Navy's knowledge regarding the potential hazards of asbestos was superior to that of Foster Wheeler. (Betts decl. at ¶¶ 29-31.)

The holding in *Emory v. McDonnell Douglas Corp.*, 148 F.3d 347 (4th Cir. 1998)

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

supports the proposition that Foster Wheeler had no duty to warn the Navy about hazards of which it was already aware. In *Emory*, the Fourth Circuit held that the manufacturer of a Navy fighter jet that crashed was not liable on a "failure to warn" claim for the death of a civilian bystander (who had no connection with the federal government) because there was not duty to warn the Navy, which already had knowledge of the aircraft's potential dangers. (*Id.* at 352.) Thus *Emory*, stands for the proposition that there is no duty to warn the Navy about hazards of which it already has knowledge. (See also *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1487 (5th Cir. 1989) ["After *Boyle,* a government contractor only has the duty to warn the government of dangers of which it has knowledge but the government does not."].)

In *Sundstrom v. McDonnell Douglas Corporation* 816 F.Supp. 587 (1993) decedent of an Air Force pilot brought a products liability action against the manufacturer of the aircraft, alleging design defect and failure to warn. The court held that, "[W]ith regard to government contractor immunity defense under *Boyle* decision, government contractor's duty to warn United States of dangers in use of military equipment extends only to those dangers unknown to government. Further, Judge Patel, in upholding *Boyle* and *McKay*, stated: "Entertaining a failure to warn claim in this action would present the kind of interference with discretionary government acts that *McKay* and *Boyle* intended to prevent." (*Id.* at 597.)

In fact, Foster Wheeler's evidence exceeds the proof required under the law. A defendant need not present affirmative evidence that the government knew of the precise danger for the defense to apply. A defendant satisfies the third *Boyle* prong as a matter of law where there is *"no indication"* that the contractor "possessed any greater knowledge" than the government concerning dangers. (*Olive v. Oshkosh Truck Corp.*, 96 F. 3d. 992, 1001 (7th Cir. 1996)[affirming summary judgment in favor of contractor despite lack of specific evidence of government knew of defect]; *Kerstetter v. Pacific Scientific Co.*, 210 F.3d 431, 438, n.9(5th Cir. 2000)[affirming summary judgment where there was *"no evidence that [contractor] knew information…that was not known to the government."*].)

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1   In the present case, because the Navy's knowledge in 1965 regarding hazards of

2   asbestos was superior to Foster Wheeler's, Foster Wheeler had no duty to warn the Navy.

3   (Lehman decl. ¶ 5; Betts decl. ¶ 6.) Thus the third prong of the government contractor

4   defense is satisfied. Foster Wheeler has therefore, asserted a "colorable" federal defense

5   to Plaintiffs' claims.

6   **C.    The Holding in *In Re Hawaii Federal Asbestos Cases* Does Not Preclude Foster Wheeler From Asserting the Government Contractor Defense.**

7

8   To support remand, Plaintiffs rely heavily on the Ninth Circuit's ruling in the case

9   *In Re Hawaii Federal Asbestos Cases*, (*In Re Hawaii- Supra* at 960 F.2d 806) however, the

10  claims, defenses and facts before the court distinguish the instant case from *Hawaii* on

11  both procedural and substantive grounds.  The case at bar involves naval contracts with

12  Foster Wheeler for the design and manufacturing of boilers pursuant to exact military

13  specifications for navy ships being constructed.    Defendants in *In Re Hawaii*,

14  manufactured and sold insulation material[8] that was essentially the same insulation that

15  was marketed to commercial buyers. (Id. at 812.)  What defendants sold to the navy was

16  "stock" product, as there was no difference between what the navy purchased and what

17  defendants' sold to the public.

18  However, Foster Wheeler manufactured boilers and auxiliary equipment for the

19  Navy that was specifically contracted not to be sold to anyone else, but the U.S. Navy.  In

20  essence Foster Wheeler entered into a licensing agreement wherein they agreed to

21  manufacture boilers pursuant to Babcock & Wilcox designs that had already been

22  approved by the Navy. (See PO at p. 3.) The Navy did not purchase "package boilers," or

23  "stock boilers," from Foster Wheeler, but custom manufactured boilers, that were

24  designed with specific engineering requirements in mind, so that the boilers could

25  withstand the needs of the particular Navy ship at combat. Foster Wheeler was not

26  _____

27  [8] The Ninth Circuit agreed with the district court that the asbestos insulation alleged to have caused the plaintiffs' injuries here does not represent military equipment entitling its manufacturers to the protections of the military contractor defense. The plaintiffs introduced significant evidence below that the insulation sold by Fibreboard and Owens-Illinois to the Navy was the very same insulation which those companies marketed to commercial buyers. This insulation was not manufactured with the special needs of the military in mind. (*In Re Hawaii*, at 813.)

28

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1    allowed to sell the design of this equipment to anyone. (*Id.*)  This is more than adequate

2    evidence that the Foster Wheeler boilers were "military equipment" *to wit*, the

3    protections of section 1442(a)(1) apply.

4            **D.**    **Foster Wheeler Demonstrates a Casual Nexus between Its Work for the**

5                   **Navy and Mr. Wright's Alleged Injuries.**

6         The third *Mesa* prong requires Foster Wheeler to demonstrate a causal nexus

7    between the claims against it and the acts it performed under color of federal office.  As

8    discussed above, the U.S. Navy dictated and controlled all specifications for

9    manufacturing boilers and auxiliary equipment, including specifying the materials to be

10   used in the manufacturing of this equipment and ensuring the Foster Wheeler's

11   performance conformed to these specifications.  Furthermore, Foster Wheeler's duty to

12   warn United States of dangers in use of military equipment extends only to those

13   dangers unknown to government.  As Dr. Betts attests below, Foster Wheeler's evidence

14   shows that the Navy had superior knowledge of the dangers of asbestos prior to and

15   during the time that Foster Wheeler provided "military equipment" and would not have

16   allowed any warnings to be affixed to its equipment.

17        Dr. Betts attests:

18       a.    The information possessed by the Navy with respect to the specification

19   and use of asbestos, and the health hazards associated with each of its uses aboard Navy vessels, represented the state-of-the-art and far exceeded any

20   information that possibly could have been provided by a boiler manufacturer, like Foster Wheeler.  Based upon the state of knowledge at

21   given period in time, that Navy was fully aware of the recognized health hazards of asbestos and had a robust program to control exposure of

22   personnel and monitor their health.

23       b.    There was no information concerning any asbestos containing hazards, or

24   danger posed by any asbestos-containing material used in boiler and auxiliary equipment supplied under Navy material specifications on a

25   United States Navy ship which was known to a boiler and auxiliary equipment manufacturer, like Foster Wheeler that was not known to the

26   United States government and the United States Navy.

27       c.    It would be unreasonable to assume that the Navy would have accepted

28   gratuitous, "non-expert" comments from manufacturers and vendors about hazards associated with a product – especially for one about which the

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

17

Navy was already fully aware and much more knowledgeable than the manufacturer or vendor. (Betts decl. ¶ 36.)

As reviewed in detail above, the government specified and enforced the marking and labeling of Navy equipment.   Under the Navy's control, they would not have permitted manufacturers such as Foster Wheeler to add gratuitous safety or hazard warnings concerning asbestos. (Betts decl., ¶ 36; Lehman decl., ¶14.) Thus, with respect to Plaintiffs' design defect and failure to warn claims, there is a causal nexus between these claims and Foster Wheeler's actions taken pursuant to directions of federal officers.

### E.     Foster Wheeler Respectfully Requests the Court Certify this Motion for Interlocutory Appeal.

Finally, this court should certify an interlocutory appeal under 28 U.S.C. § 1292(b) which provides that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action, may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order....(*Id.*)

In this case, the removal issue presents an important legal question whose resolution on appeal will advance the course of this litigation.  If this court's order cannot be reviewed until this litigation has concluded in a final judgment, then the parties will be forced to pursue that litigation under a cloud of uncertainty.   Therefore, Foster Wheeler respectfully requests the Court to certify this motion for interlocutory appeal.

### IV.     CONCLUSION

Foster Wheeler has demonstrated that it has colorable defense to Plaintiffs' claims based on the federal contractor defense: (a) the United States Navy included in their equipment specifications asbestos insulation; (b) the United States Navy contracted with Foster Wheeler to manufacture main boilers and auxiliary equipment pursuant to the Navy's specifications; (c) the United States Navy had superior knowledge about the

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1   dangers of asbestos use in their ships, than private contractors such as Foster Wheeler.

2   Foster Wheeler was plainly acting under the authority of federal officers, and is no less

3   deserving of a federal forum.

4       Plaintiffs have produced no declarations of either percipient or expert witnesses,

5   have served no discovery and offered no deposition transcripts to rebut this analysis and

6   cannot produce any new facts in their reply brief. (See e.g., *Lujan v. National Wildlife*

7   *Federation*, 497 U.S. 871, 894-895 (1990); *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir.

8   1996.).)

9       Viewed in the clarifying light of *Durham*, which requires this issue to be broadly

10   interpreted in favor of removal, the Court should deny Plaintiffs' motion.

11   Dated: December 13, 2007                     BRYDON HUGO & PARKER

14                              By: _____

15                                 Edward R. Hugo

16                                 Thomas J. Moses

                                  Jann M. Noddin

17                                 Attorneys for Defendant

18                                 FOSTER WHEELER USA

                                CORPORATION

BRYDON
HUGO & PARKER
135 MAIN STREET
20th FLOOR
San Francisco, CA 94105

DEFENDANT FOSTER WHEELER USA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND