Stephen M. Fishback (State Bar No. 191646)
sfishback@kfjlegal.com
Daniel L. Keller (State Bar No. 191738)
dkeller@kfjlegal.com
**KELLER, FISHBACK & JACKSON LLP**
28720 Roadside Drive, Suite 201
Agoura Hills, CA  91301
Telephone:  818.879.8033
Facsimile:   818.292.8891
Attorneys for Plaintiffs: Albert Wright, Jr. and
Marva Wright

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALBERT WRIGHT, JR. AND MARVA JOE GREEN WRIGHT | Case No.  C-07-5403(MJJ) |
| Plaintiffs, | **PLAINTIFFS' EVIDENTIARY OBJECTIONS TO THE DECLARATION OF LAWRENCE BETTS SUBMITTED IN SUPPORT OF DEFENDANT FOSTER WHEELER LLC'S NOTICE OF REMOVAL** |
| vs. |  |
| A. W. CHESTERTON, COMPANY, et al., |  |
| Defendants. |  |
|  | Date:  January 29, 2008 Time: 9:30 a.m. Judge: Hon. Martin J. Jenkins Courtroom: 11 |

## EVIDENTIARY OBJECTIONS TO DECLARATION OF LAWRENCE BETTS

| EVIDENCE PROFFERED | OBJECTIONS |
|---|---|
| **Paragraph 1:** 1. My name is Lawrence Stilwell Betts. I am a "retired" United States Navy Captain with an active professional practice based in Poquoson, Virginia. As reflected in my Curriculum Vitae (Exhibit I), I am the President of a medical corporation that is based upon applying the principles and methods of preventive medicine. I routinely integrate and apply occupational and environmental medicine, toxicology, and industrial hygiene to consult or work with difficult or complex medical cases where treatment, or exposure, or possible consequences of exposure, is in question. However, the emphasis of my entire career has been prevention of illness and the promotion of health through the integration of my scientific and medical knowledge and experience. After my retirement from the Navy in 2001, I was presented the VADM Richard A. Nelson Award for my career contributions to Navy and Marine Corps readiness through leadership in prevention of disease and promotion of health. My professional practice still includes work with the Navy and other armed force services, as well as non-military federal agencies, industry, professional organizations, and academically- and privately practicing professionals. In addition to recurrent consultations, I teach, mentor, perform research, develop prevention and treatment protocols, and write medical articles and text chapters. I am a Professor at the Eastern Virginia Medical School in the Department of Family and Community Medicine and a Clinical Professor of Physiological Sciences. With approval from my superiors in the Navy, I have been academically affiliated with Eastern Virginia Medical School for the past twenty-seven years. I serve on several national committees addressing broad, as well as specific, issues in occupational and environmental health. I am board certified in both Occupational Medicine by the American Board of Preventive Medicine, and in the | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in this action nor is it reasonably calculated to lead to the discovery of any admissible evidence. <br><br> **Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could |

comprehensive practice of Industrial Hygiene by the American Board of Industrial Hygiene. In the practice and application of toxicology, it is well known that ALL chemicals are toxic as a consequence of dose (Paraselsus [1493-15411: *"Sola dosis facit venenum"* - "Dose alone makes the poison") and that "hazard" is a consequence of how a chemical is used. The anticipation, recognition, evaluation, and control of hazardous conditions are the fundamentals of industrial hygiene, as well as my practice of preventive medicine and public health.

have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.

**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content.

**Paragraph 2:**
During my Navy career spanning three decades, I had experiences ranging from the provision of "field" services underway and on shore as a junior industrial hygiene officer, to the oversight of the medical and scientific aspects of a robust occupational health program as a senior Navy officer. I have spent time at sea on a number of United States Navy and United States Naval ships. I served as a physician on the USS KITTY HAWK (CV-63) during its Service Life Extension Program (SLEP) in the Philadelphia Naval Shipyard from 1987 to 1989. My experiences and training enabled me to become qualified as a Surface Warfare Medical Department Officer. Based upon my scientific and medical training, and experience as a Navy officer for three decades, I am generally familiar with the industrial products that were used by the Navy and the Navy work environments, both ashore and afloat. I am also familiar with the history and practice of the Navy occupational health program from its early days before World War I1 until the present time.

**Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.

**Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge

| | |
|---|---|
| 1 | about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation.  Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same.  Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers.  Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. <br><br> **Fed.R.Evid. 802:**  Inadmissible hearsay for which there is no exception.  Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. <br><br> **Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 3:** <br> I understand that the plaintiffs are claiming that Mr. Albert Wright, Jr., worked on a number of Navy ships as a machinist for the Navy from 1965 to 1995 and that he developed an asbestos-related condition as a result. I further understand that plaintiffs allege that Foster Wheeler is one of a number of companies responsible for asbestos-containing products to which plaintiffs allege that Mr. Wright was exposed. | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the |

boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.

**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.

**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates,

| | |
|---|---|
| | labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 4:**<br>During the time periods that these ships were built, it is my understanding that Foster Wheeler manufactured and delivered boiler and auxiliary equipment to the Navy pursuant to Navy contracts, some of which may or may not have ended up on ships that Mr. Wright worked aboard. In any event, however, any such boiler and auxiliary equipment manufactured and supplied by Foster Wheeler in fulfillment of government contracts followed the specifications set forth by the United States Government detailing required components, materials, and performance characteristics. The U.S. Navy would have accepted delivery of such boiler, auxiliary equipment, and related manuals only if they met these specifications. The Navy would not have accepted, commissioned, or permitted a Navy vessel to steam with boiler and auxiliary equipment that did not comply with precise specifications set forth by the Navy, which includes providing any labeling of the equipment. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Wright has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

have warned about the dangers of using its asbestos-containing boilers.  Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:**  Inadmissible hearsay for which there is no exception.  Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.

**Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content.

**Paragraph 5:**

To the extent that Foster Wheeler ever delivered boiler and auxiliary equipment to the government for use on Navy vessels in the 1940s - 1950s and thereafter, the U.S. Government already recognized that the prolonged inhalation of sufficient concentration of asbestos fibers could result in pulmonary disease. Indeed, this knowledge was held by the U.S. Government prior to the period of construction, and Mr. Wright's work, on any such ships. Based upon that scientific and medical knowledge, the U.S. Government generally, and the Navy specifically, by the early to mid 1940s had already developed an active and robust program to control exposure to asbestos concentrations recognized to be harmful, and medically monitored personnel exposed to those levels. Additionally, the Navy established engineering control procedures (including isolation, exhaust ventilation, wet methods, and process changes to minimize dust release) and training, and required the use of respiratory protection for personnel considered to be at risk of excessive exposure during dusty operations.

**Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.

**Fed.R.Evid. 602:**  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter."  Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation.  Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge

---

| | about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. **Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
|---|---|
| **Paragraph 6:** The information possessed by the U.S. Government during this period (and the comprehensive occupational health program based upon this information), and thereafter and until such time as Mr. Wright's work on Navy vessels ended, with respect to the specification and use of asbestos, and the health hazards associated with its use aboard Navy vessels, far exceeded the information that possibly could have been provided by a boiler manufacturer | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at |

such as Foster Wheeler. Based upon the state-of-the-art knowledge at that period, the U.S. Government was fully aware of the health hazards of asbestos and had a program to control exposure of personnel and monitor their health. This existed before World War I1 and through the period that Mr. Wright was working on any Navy vessels - and it continues until this day.

the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in this action nor is it reasonably calculated to lead to the discovery of any admissible evidence.

**Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.

**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings,

| | procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
|---|---|
| **Paragraph 7:**<br>In preparing this declaration, I have relied upon my personal and professional knowledge and experience as an industrial hygienist and an occupational medicine physician, my operational and industrial experiences from my total Navy career, my review of historical documents regarding the Navy's knowledge and the scientific and medical communities' knowledge of the hazards of asbestos, and my numerous communications with industrial hygienists and physicians who worked for the Navy and the United States Public Health Service dating back to the 1940s. | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**:  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation.  Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation.  Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the |

| | |
|---|---|
| | same.  Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers.  Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.<br>**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception.  Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 8:**<br>The Navy's specification and use of asbestos aboard ships, including in or on boilers and other high temperature equipment, was not by chance or based on any requirements of Foster Wheeler. The extensive use of asbestos was predicated upon military necessity. As discussed in their landmark paper addressing the use of asbestos in the Navy, Fleischer and coworkers (1946) (Exhibit 5) state [Quoted Text Omitted—See declaration of Lawrence Betts] | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602:**  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter."  Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. |

| | |
|---|---|
| | Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation.  Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same.  Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers.  Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.  **Fed.R.Evid. 802:**  Inadmissible hearsay for which there is no exception.  Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.  **Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 9:**<br>The United States Navy recognized that the inhalation of asbestos fibers in sufficient amounts (dose = concentration x time) could result in pulmonary disease since at least the early 1920s and had an active program to identify hazardous exposures and control recognized health effects. In the *"Instructions to Medical Officers" (Notes on Preventive Medicine for Medical Officers, United States* | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler |

*Navy* (Dublin, 1922) (Exhibit 9)), asbestos was listed as one of the many inorganic and organic dusts that could cause pulmonary disease when inhaled in a sufficient quantity for a significant period of time. Dublin recognized several methods to prevent the inhalation of these dusts including: the use of water to control the release of dust; the use of local exhaust systems to remove the dust at the point of origin; the use of inclosing (sic) chambers; and the use of respirators and helmets. He stated: "No one of these can apply to all conditions, but the particular method to be used must be adapted to the peculiarities of the process." From the extensive list of inorganic, as well as organic, dusts and "occupations which offer such exposure," it is obvious that his perception of dust control was based upon the avoidance of recognizable disease, and not the mere presence of a given, or visible, amount of dust being generated.

manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.

**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.

**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL

| | |
|---|---|
| | Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 10**:<br>The United States Navy expanded the scope of its asbestos hazard control program by including the enlisted corpsmen of the medical department in the hazard control process. In the <u>Handbook of the Hospital Corps</u>, (Bureau of Medicine and Surgery, 1939) (Exhibit 12), the Bureau of Medicine and Surgery discussed the organization used for disease and injury prevention in the United States Navy, and took a lead position in the prevention of industrial disease: [Quoted Text Omitted] The text further notes that the safety engineer is assisted by other personnel: [Quoted Text Omitted] A similar organization is described for ". . . *a battleship or in other places.* " To this end, the enlisted Hospital Corpsmen were informed of the hazards presented by asbestos and instructed to "locate these hazards and afford protection accordingly." Two of the hazards that the hospital corpsmen were specifically instructed to evaluate in a questionnaire (inspection or survey form) are: [Quoted text Omitted] Also, the hospital corpsman was instructed to help keep the workforce healthy: [Quoted Text Omitted] | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the |

| | |
|---|---|
| | same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.<br>**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 11:**<br>This type of active assessment, evaluation, and recommendation for control was embraced by senior United States Navy officers. In his memorandum to the Manager of the Navy Yard, Boston, Captain H.E. Jenkins, MC, USN (Jenkins, 1939) (Exhibit 13) discussed his findings and recommendations from his survey of the pipe covering shop and work shack at that yard. Although he stated that the health hazards to personnel were very remote, based upon his evaluation of the amount of dust released, Captain Jenkins recommended that a dust respirator and gloves be worn to supplement the "conscientiously and intelligently enforced" practice of wetting down insulating material. Captain Jenkins also addressed the impractical use of respirators during shipboard lagging operations and recommended sufficient wetting to prevent dust generation as far as practicable. Less than one week later, C.D. Headlee (1939) (Exhibit 14), issued a Production Division Notice (Number 996) implementing these Recommendations. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. |

| | |
|---|---|
| | Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. **Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 12:** Captain E.W. Brown, in the *Annual Report of the Surgeon General, U.S. Navy to the Secretary of the Navy* (Surgeon General, U.S. Navy, 1941) (Exhibit 15) and in the scientific publication of his presentation made to the Fifth Annual Meeting of the Air Hygiene Foundation of America (Brown, 1940, printed 1941) (Exhibit 16), discussed the findings of his medical survey at the New York Navy Yard. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler |

Captain Brown, recognized as the founder of the Navy's formal occupational health program, assessed asbestos exposure and medical findings of eleven workers at the New York Navy Yard. With knowledge of occupational exposure to silica and its delayed medical findings, and under the conditions that he observed, Captain Brown found no indication of pulmonary disease in these workers at that time, He noted that wet methods and local exhaust ventilation were implemented, and that the workers wore a respirator "during the dustiest aspect of the process." He stated that similar findings were reported in two other yards and recommended that the study be extended to all men in this trade. These references further demonstrate that senior Navy personnel actively monitored and controlled the Navy policy regarding disease and injury prevention, and were indeed the leaders in field assessment and control of occupational health hazards, including asbestos.

manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.

**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.

**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL

| | |
|---|---|
| | Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 13:**<br>When quantitative assessment (counting) of asbestos particles in air was available, the Navy followed the recommendations of the United States Public Health Service. Based upon the findings of Dreessen and coworkers' 1938 study (Exhibit 17) of asbestosis in the textile industry prepared by direction of the United States Surgeon General, the United States Navy accepted an exposure level of 5 million particles per cubic foot (5 MPPCF) as the time-weighted average (TWA) for occupational exposure. Dreessen et al. concluded: "It would seem that if the dust concentration in asbestos factories was kept below 5 million particles (the engineering section of this report has shown how this may be accomplished), new cases of asbestosis would probably not appear." This TWA is the average airborne concentration of asbestos particles to which an individual could be exposed in an eight hour period. Shorter periods of higher concentrations were acceptable as long as the average exposure calculated over eight hours did not exceed the TWA. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in this action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the |

| | |
|---|---|
| | same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. <br><br> **Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. <br><br> **Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 14:** <br> A 1941 memorandum from the Officer-in-Charge of the Navy's Division of Preventive Medicine to the Surgeon General (Stephenson, 1941; Exhibit 18) addressed the policy of inviting the Bureau of Labor Standards or the United States Public Health Service into the Navy yards for the purpose of surveying welding and other hazards. Commander Stephenson writes: [Quoted Text Omitted] Under *"Points of great interest, "* Commander Stephenson expressed concern about silicosis, sand blasting, welding, solvents, hydrogenated (sic) hydrocarbons, eye flashes, cadmium dust, smokes and fumes, chromium trioxide, and asbestosis. With respect to asbestos, he stated: [Quoted Text Omitted] | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence. <br><br> **Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. |

| | |
|---|---|
| | Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. **Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 15:**<br>As mentioned by Captains Jenkins and Brown, they found asbestos exposure conditions that were not fully satisfactory and required changes. Recommendations for correction of the exposure conditions were made. In both of these instances, only a qualitative assessment was made and actual exposure levels were not determined. Brown (1941; Exhibit 16) found no significant clinical findings in the limited | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler |

number of workers observed during the relatively short, post-exposure period. The Navy's occupational health program was based upon internal support for the identification and control of occupational health hazards. In order to develop a sufficient cadre of physicians and scientists, the Navy developed training programs with Columbia University's DeLamar Institute of Public Health and the Harvard School of Public Health. By the end of World War 11, over one hundred physicians, scientists, and engineers had been trained in occupational health at these two leading institutions of US public health.

manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in this action nor is it reasonably calculated to lead to the discovery of any admissible evidence.

**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.

**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL

| | |
|---|---|
| | Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 16:**<br><br>The *Minimum Requirements for Safety and Health in Contract Shipyards* (United States Navy Department and United States Maritime Commission, 1943; Exhibit 19) were drafted in 1942 by representatives from labor management committees, labor unions, management of private shipyards, insurance companies, the United States Maritime Commission and the United States Navy. When approved by the US Maritime Commission and the U.S. Navy in early 1943, compliance with these standards was expected: [Quoted Text Omitted] Less than six months after the Minimum Requirements were issued, the Secretary of the Navy (Forrestal, 1943 (Exhibit 20)) reaffirmed these requirements for all private shipyards having Navy contracts. The minimum requirements did not provide a specific occupational exposure value for asbestos. They gave general requirements for safe (healthful) operations. The Navy's occupational health team was responsible for assisting in interpreting the standards for implementation at Navy and contract yards throughout the country. Any significant inspection findings, whether favorable or adverse, were to be discussed first with the shipyard management, thus allowing management the opportunity to take corrective action for imminent dangers. The actual written report was to be submitted in draft form to the regional director of the Maritime Commission for final typing. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br><br>**Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and |

| | |
|---|---|
| | related equipment and failed to warn about the same.  Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers.  Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. **Fed.R.Evid. 802:**  Inadmissible hearsay for which there is no exception.  Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 17:** In addressing exposure to asbestos, Philip Drinker, then Chief Health Consultant for the United States Maritime Commission, and Professor in the Harvard School of Public Health program that was training the Navy physicians, scientists, and engineers, recommended an occupational exposure level of 5 MPPCF. (Drinker, 1944 (Exhibit 21)). This is the same value as recommended by Dreessen and coworkers (1938) (Exhibit 17) to prevent the development of asbestosis. | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in this action nor is it reasonably calculated to lead to the discovery of any admissible evidence. **Fed.R.Evid. 602:**  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter."  Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or |

plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.

**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content.

| Paragraph 18: | Fed. R. Evid. 402: |
|---|---|
| In January, 1945, Philip Drinker (1945) (Exhibit 22) informed Captain T, J. Carter, Bureau of Medicine and Surgery, of a serious health risk from asbestos dust exposure at Bath Iron Works. He was concerned that similar risks might be found in other yards where the same | "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing |

type of pipe covering was used. In this letter, Professor Drinker stated that the manufacturers of the asbestos materials used at Bath would: [Quoted Text Omitted] Drinker recommended that a study be performed to evaluate asbestos exposure and disease among workers. "Admiral Mills agreed that such studies would be wise before Navy or Maritime accepted this asbestosis risk as being significant in our general ships construction program." Four shipyards in the New York area, two contract and two U.S. Navy yards, were selected for this study of exposure levels and health status. The study, conducted by Fleischer, Viles, Gade, and Drinker-also called the "Fleischer-Drinker study"-was promptly undertaken and reported in September, 1945 by Drinker to Admiral Mills (Chief, BuSHIPS) (Drinker, 1945b: Exhibit 23); (Fleischer et al., 1946; Exhibit 5). The results of this study reaffirmed the Navy's position on adherence to an occupational exposure level of 5 MPPCF. The conclusions were: [Quoted Text Omitted]

boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in this action nor is it reasonably calculated to lead to the discovery of any admissible evidence.

**Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.

**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what

| | |
|---|---|
| | he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 19:**<br>The results of this well-designed study, measuring actual asbestos exposure values and performing health assessments on the exposed workers, became established as Navy policy. The Navy adopted a recommended "maximum allowable concentration (M.A.C.)" value for asbestos of 5 MPPCF. This was the same value discussed by Dreessen and coworkers (1938) (Exhibit 17) when assessing the asbestos textile industry with much longer daily exposure periods and primarily the chrysotile type of asbestos. It was also the value recommended by the National Conference of Governmental Industrial Hygienists in 1942, and later adopted by the American Conference of Governmental Industrial Hygienists (ACGIH) in 1946 (ACGIH, 1946 (Exhibit 24)). Among the members of the ACGIH in 1946, a private organization which did not offer membership to individuals affiliated with industry, were three representatives of the Navy Department and forty-two representatives from the United States Public Health Service. There were no federal, state, or local occupational exposure standards. The Navy used the occupational exposure level that the best scientific and medical evidence supported, In 1955, the Navy adopted the "Threshold limit values for toxic materials" promulgated by the American Conference of Governmental Industrial Hygienists as a basic reference and to provide guidance toward the reduction of potential health hazards encountered in the industrial environment for both military and naval civilian personnel." (Chief, Bureau of Medicine and Surgery, 1955; Exhibit 25) The Navy recognized that the: [Quoted Text Omitted] Moreover, the Navy | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer |

| | |
|---|---|
| recognized that the: [Quoted Text Omitted] (Chief, BUMED, 1955 (Exhibit 25).) | testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same.  Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers.  Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. **Fed.R.Evid. 802:**  Inadmissible hearsay for which there is no exception.  Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 20:** On January 7,1958, the Department of the Navy issued its *Safety Handbook for Pipefitters* (Bureau of Ordnance, 1958) (Exhibit 26). This handbook was one of many safety handbooks issued by the Navy as an aid in safety indoctrination and accident prevention. This handbook provides, in part: [Quoted text Omitted] | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence. **Fed.R.Evid. 602:**  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter."  Mr. Betts' statement |

| | |
|---|---|
| | lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. **Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 21:** In the 1960 publication of *Safety and Health Regulations for Ship Repairing,* the Department of Labor (Exhibit 27) recommended an | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the |

occupational exposure level of 5 MPPCF for asbestos. For comparison to the degree of risk and hazard, the Department of Labor also used the occupational exposure level of 5 MPPCF as the same absolute value for high "free" crystalline silica dust (greater than 50% free silica). The silica value is also the same value established by the ACGIH in 1942 and promulgated in 1946.

dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in this action nor is it reasonably calculated to lead to the discovery of any admissible evidence.

**Fed.R.Evid. 602**:  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:**  Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is

| | |
|---|---|
| | hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 22:**<br>The use of the 5 MPPCF level as the occupational exposure value continued to be generally accepted by professionals practicing occupational health in the United States. This value was based upon controlling the development of the fibrotic disease, asbestosis. This occupational exposure value, and the widespread use of asbestos, continued in the Navy until the late 1960s when the scientific and medical communities (Selikoff, 1965 (Exhibit 28) and Selikoff, 1967, (Exhibit 29)) and the United States Navy (Commander NAVSEC, 1969 (Exhibit 30) and Officer-in-Charge NAVSEC Philadelphia, 1969 (Exhibit 31)) had evidence that it was not sufficient to adequately control the health effects of exposure. | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602:**  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter."  Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation.  Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos |

| | |
|---|---|
| | during the relevant period aboard the USS Constellation.  Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same.  Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers.  Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.<br>**Fed.R.Evid. 802:**  Inadmissible hearsay for which there is no exception.  Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 23:**<br>Selikoff, in a paper written with Lee in 1979 (Lee and Selikoff, 1979 (Exhibit 32)) wrote: [Quoted text Omitted] | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602:**  "A witness may not testify to |

| | |
|---|---|
| | a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. **Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 24:** | **Fed. R. Evid. 402:** "Evidence which is not |

| | |
|---|---|
| 1 | |
| 2 | |

Captain N.E. Rosenwinkel, representing the Navy's Bureau of Medicine and Surgery, provided information regarding the Navy's knowledge of asbestos hazards to shipyard employees for inclusion in a statement issued by Rear Admiral J.J. Stilwell of the Shipyard Management Directorate, Naval Sea Systems Command in 1968 (Rosenwinkel, 1968 (Exhibit 33)): [Quoted Text Omitted]

relevant is not admissible."  Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in this action nor is it reasonably calculated to lead to the discovery of any admissible evidence.

**Fed.R.Evid. 602**:  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter."  Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation.  Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation.  Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same.  Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers.  Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

| | |
|---|---|
| | **Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 25:**<br>During the period of the late 1960s, asbestos exposure and control were being addressed at different levels of command throughout the Navy. The Naval Ship Engineering Center was searching for substitutes that could meet the rigorous engineering requirements for shipboard applications (NAVSEC, 1969 (Exhibit 30)). A meeting between senior engineering, safety, and medical personnel was held to evaluate<br>possible methods for reducing exposure and to make recommendations to the Chief of Naval Operations (Turnbull, 1969 (Exhibit 34)). Major Navy shipyards were sharing their research on asbestos exposure and control measures (Mangold, 1970 (Exhibit 10)) | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he |

otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.

**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content.

**Paragraph 26:**
It was not until 1970, that the Occupational Safety and Health Act (PL 91-596) (Exhibit 2) established national permissible exposure levels (PEL) for the first time using the federal standard established under the Walsh-Healey Public Contracts Act. These standards applied to shipyards, as well as other industries using asbestos. At the time of enactment in 1971, the PEL for asbestos was 12 fibers per cubic centimeter (f/cc). Based upon current scientific and medical recommendations by that time, the Occupational Safety and Health Administration (OSHA) emergently lowered the PEL to 5 f/cc (ceiling value of 10 f/cc) in 1971, with a

**Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in this action nor is it

permanent standard of 2 f/cc becoming effective in 1976. In 1975, OSHA recognized sufficient medical and scientific evidence of human carcinogenicity to reduce the permissible exposure level to 0.2 f/cc. After legal challenges, OSHA reduced the PEL to 0.2 f/cc in 1986, and further reduced it to its current value of 0.1 f/cc in 1994. Requirements from the highest levels of authority in the United States Navy established the permissible exposure levels as they changed during this post-OSHA era (Naval Ship Systems Command (NAVSHIPS), 1971 (Exhibit 35); Bureau of Medicine and Surgery (BUMED), 1973 (Exhibit 36); and Chief of Naval Operations (CNO), 1974 (Exhibit 37)).

reasonably calculated to lead to the discovery of any admissible evidence.

**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.

**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content.

| | |
|---|---|
| **Paragraph 27:**<br>The Navy has continued to follow the policy of using occupational exposure levels based upon the best available scientific and medical information (BUMED, 1955 (Exhibit 25)). The federal PELs, established by the Occupational Safety and Heath Act of 1970, are generally based upon the American Conference of Governmental Industrial Hygienists' Threshold Limit Values (TLVs) published in 1968. Due to statutory requirements, changes to the limited number of chemical PELs have generally been slow. PELs have been changed for a relatively few chemicals since the enactment of OSHA in 1970. The TLVs are periodically reviewed and an updated list is published annually. The TLVs more closely reflect the current state of knowledge and professional practice in occupational health. The Navy continues to use the most appropriate occupational exposure levels in the assessment of exposures and follows the requirements stated in the Chief of Naval Operations Instruction OPNAVINST *5100.23* F (Chief of Naval Operations, *2002)* (Exhibit *38)* to provide workplaces that reflect the state-of-the-art knowledge and technology, consistent with its defined mission: [Quoted Text Omitted] | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to |

| | |
|---|---|
| | establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. **Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 28:** The Navy's Safety Program was driven from the highest level of authority and operational command. The "United States Navy Safety Precautions," OPNAV *34P1,* was signed out by the Acting Secretary of the Navy, C.S. Thomas, on *8* June *1953* (Exhibit *39).* In his "charge" written in this instruction, Mr. Thomas states: [Quoted Text Omitted] The "Basic Rule of Responsibility" states: [Quoted Text Omitted] In order to coordinate sharing of occupational health information between organizationally distinct, and geographically distant, naval activities, the Bureau of Medicine and Surgery instituted the quarterly publishing of Occupational Health Reports: Occupational Health Hazards during World War 11. These reports were initially received by the Bureau of Medicine and Surgery from all field commands staffed with occupational health professionals, condensed, and redistributed to all the submitting commands. (BUMED 1955 (Exhibit 40), 1959 (Exhibit 41), 1961a (Exhibit 42), and 1961b (Exhibit 43)) Later, the Navy Environmental Health Center continued this function until the late 1990s when electronic information sharing made the process obsolete. These reports demonstrate that the sharing of industrial hygiene and other occupational health | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence. **Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his |

| | |
|---|---|
| information and services between commands was common early in World War 11. | starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation.  Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same.  Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers.  Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. **Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception.  Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 29:** Based on my education, training, and experience, it is my professional opinion that the Navy was well aware of the health hazards associated with the use of asbestos from the early 1920s. The Navy's decision to use asbestos materials was based upon naval operating requirements and missions in light of the known health hazards at various periods in time. The Navy had a longstanding and notable occupational safety and health program that addressed asbestos and other health hazards, | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the |

and that provided exposure control recommendations and methods that were consistent with the state-of-the-art knowledge in science and medicine. The Navy operated under the premise that control of asbestos exposure could essentially eliminate the hazard of a material considered essential for sustained Navy operations. Using established scientific and medical knowledge, the Navy developed an active program to control the release of asbestos fibers in dusty operations, as well as to monitor the health of workers at risk.  The landmark study of Fleischer-Drinker, reported in 1946 (Exhibit 5), confirmed the general thought that exposures in the Navy to asbestos containing materials could be controlled and health effects could be limited by medical surveillance. Navy industrial programs were directed at controlling what was considered significant releases of dust. During the period from about 1938 through the later 1960s, the widely accepted occupational exposure limit was 5 MPPCF. In the mid-to-late 1960s, the Navy led the way is assessing asbestos exposure of personnel and developing a program and process to eliminate the material based upon new scientific and medical information that was becoming available.

boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in this action nor is it reasonably calculated to lead to the discovery of any admissible evidence.

**Fed.R.Evid. 602**:  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation.  Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same.  Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers.  Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:**  Inadmissible hearsay for which there is no exception.  Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.

**Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates,

| | |
|---|---|
| | labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 30:**<br>The information possessed by the Navy, with respect to the specification and use of asbestos, and the health hazards associated with its use aboard Navy vessels, far exceeded any information that possibly could have been provided by a boiler and auxiliary equipment manufacturer. The boiler and auxiliary equipment manufacturer has absolutely no responsibility or control over the workplace or personnel – both essential aspects of hazard communication. Based upon the knowledge at the time, the Navy was fully aware of the health hazards of asbestos and had a program to control exposure of personnel and monitor their health, since before World War 11. The knowledge of the hazards created by the use of asbestos containing materials was weighed with respect to the benefits provided by its use. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602**: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal |

| | |
|---|---|
| | knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers.  Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.<br>**Fed.R.Evid. 802:**  Inadmissible hearsay for which there is no exception.  Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.<br>**Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 31:**<br>The Navy controlled asbestos exposure consistent with the then current state of accepted scientific and medical knowledge balanced by needs for national defense. Sailors did not have the option to avoid all exposure to asbestos-containing products or environments in which asbestos was used while on active duty. | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602:**  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter."  Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| | Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. **Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 32:**<br>The Navy's knowledge regarding the applications of asbestos and the health effects represented the state of the art. During the period from the early 1920s to the late 1960s, there was nothing about the hazards associated with the use of asbestos containing products used on or in boilers and auxiliary equipment on United States Navy ships known by a boiler | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos- |

| | |
|---|---|
| manufacturer, like Foster Wheeler, that was not known by the United States government and the United States Navy. | containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Fed.R.Evid. 602**:  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter."  Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation.  Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation.  Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same.  Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers.  Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:**  Inadmissible hearsay for which there is no exception.  Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.

**Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or

| | |
|---|---|
| | duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 33:**<br>A further question has been asked of me as to whether Navy specifications such as MIL-M-15071D (Department of the Navy, 1961) (Exhibit 3) or Navy instructions such as SECNAV Instruction 5100.8 ("Uniform Labeling Program - Navy," 24 September 1956) (Secretary of the Navy, 1956) (Exhibit 4) support the notion that manufacturers of equipment such as Navy boilers and auxiliary equipment were free to provide their own additional warning information about hazards associated with asbestos-containing products that they did not manufacture. | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in this action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602:**  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter."  Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation.  Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation.  Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when |

| | |
|---|---|
| | constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. **Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 34:** Based upon review of these documents, many other documents regarding the Navy's hazard communication program, my career experiences as an Industrial Hygiene Officer and physician in the Navy dating back to 1972, and personal knowledge of the Navy's hazard communication program and Naval practices generally, I can state as follows:<br><br>a. Uniformity and standardization of any communication, and in particular safgety information, are crucial to the operation of the Navy. The Navy simply could not operate if various personnel were trained differently, and additionally received inconsistent information from difference manufacturers. In fact, SECNAV Instruction 5100.8, Para. 1 Secretary of the navy, 1956; Exhibit 4) states: "*the purpose of this instruction is to standardize labeling requirements for hazardous chemical products during usage . . .*" | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence. **Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, |

b. SECNAV Instruction 5100.8 does not apply to a Navy boiler as it is not a chemical. It is a piece of mechanical equipment.

c. SECNAV Instruction 5100.8 is not addressed to manufacturers (please see "SCOPE on age one of this instruction), but rather it directs internal N avy "ACTION" as specifically written on page 2 of this instruction. SECNAV Instructions are commands from the Secretary of the Navy directing Navy personnel on the manner in which to car out their obligations. Requirements for manufacturers seeking to be compensated for materials supplied to the Navy are covered% military specifications, SECNAV instructions.

d. SECNAV 5100.8 did apply to hazardous materials as discussed under the "BACKGROUND" for promulgation of this instruction on page 2, and, in fact, did contemplate that labels affixed by the underline manufacturer underline of the material pursuant to state, federal, and other guidelines (such as MSDSs published by the Manufacturing Chemist's Association) would be part of the Navy's hazard communication program (see, Para. 2(a)). In fact, asbestos insulation products began containing hazard warning labels from the insulation manufacturers in the mid-1960s. Prior to that time, beginning more than two decades earlier, the Navy's own occupational health program provided training, engineering and administrative controls, personal protective equipment, and medical surveillance to prevent the hazards of asbestos.

e. Any additional warning about the hazards of asbestos by an equipment manufacturer would be only partial in scope as well as inherently redundant, eventually obsolete, and possibly inconsistent with the Navy's own training. In the heat of battle, there is simply no time to be interpreting inconsistent hazard labels.

f. At best, an equipment manufacturer such as Foster Wheeler, which delivered equipment to Navy specifications could merely have told

which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers. Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers.

**Fed.R.Evid. 802:** Inadmissible hearsay for which there is no exception. Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception.

**Fed.R.Evid. 1003:** Violation of secondary evidence rule. Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content.

personnel to follow the Navy's own mandates for handling asbestos. This redundant information is not informative, diverts attention from hazards inherent in the equipment, and would certainly become obsolete. Boilers last many years and the Navy's asbestos hazard communication program has evolved over the years to keep pace with scientific developments and changes in materials.

g. If every equipment manufacturer (and conceivable even the pipe and structural steel manufacturers) provide its own warning about asbestos insulation that might be used on or around its product, inconsistent warnings would certainly have resulted. And, keep in mind, many other hazardous substances (e.g. boiler feed water chemicals, fuels, solvents, heavy metals) are used in conjunction with the multitudes of equipment on a ship. If each was to warn about all the possible substances that might be used on or around its equipment, sailors would quickly become inundated with inconsistent information on a myriad of substances.

h. Some types of insulation used by the Navy on equipment were non-asbestos (e.g., fiberglass blankets) and any warning about asbestos on such equipment would simply be wrong.

i. MILSPEC-M-15071D, Para. 3.3.1 (Department of the Navy, 1961; Exhibit 3) makes clear that equipment manufacturers' manuals must first be approved by the Bureau of Ships and the "manual shall not be modified without approval of the Bureau of Ships." Moreover, it cautions: *"Notes, cautions, and warnings should be used to emphasize important critical instructions. The use should be as sparing as is consistent with real need."* This specification applied to risks inherent in the operation of the equipment (as distinguished from repair and/or overhaul). Gratuitous warnings about the possible use of materials made by others do not comport with this specification. Any suggestion that Foster

| | |
|---|---|
| Wheeler was free to depart from Navy-approved manuals is incorrect. | |
| **Paragraph 35:**<br>Lastly, but importantly, Foster Wheeler, as a manufacturer of boilers and auxiliary equipment, was not a subject matter expert regarding the health effects or industrial hygiene controls associated with the use of asbestos-containing materials in naval applications. It is unreasonable to assume that the Navy would have accepted "helpful comments" from a vendor or equipment manufacturer who was not a subject matter expert. The Navy had this specific knowledge and more. The Navy had a robust and encompassing occupational health program that far exceeded just the mere labeling of a material. This program included aspects appropriate for the degree of recognized hazard at various times, including training, engineering controls, medical examinations, provision of personal protective equipment, and use of alternative products when possible. | **Fed. R. Evid. 402:** "Evidence which is not relevant is not admissible." Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence.<br>**Fed.R.Evid. 602:** "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter." Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation. Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same. Mr. Betts fails to establish personal |

| | |
|---|---|
| | knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers.  Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. **Fed.R.Evid. 802:**  Inadmissible hearsay for which there is no exception.  Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |
| **Paragraph 36:** Therefore, I conclude: a. The information possessed by the Navy with respect to the specification and use of asbestos, and the health hazards associated with its uses aboard Navy vessels, represented the state-of-the-art and far exceeded any information that possibly could have been provided by a boiler manufacturer, like Foster Wheeler. Bases upon the state of knowledge at a given period in time, the Navy was fully aware of the recognized health hazards of asbestos and had a robust program to control exposure of personnel and monitor their Health. b. There was no information concerning any asbestos hazards, or dangers posed by any asbestos-containing materials used in boiler and auxiliary equipment supplied under Navy material specifications on a United States Navy ship that was known to a boiler and auxiliary equipment manufacturer, like Foster Wheeler, that was not known to the United States government and the United States Navy. | **Fed. R. Evid. 402:**  "Evidence which is not relevant is not admissible."  Mr. Betts has no personal knowledge about Mr. Wright, the USS Constellation, the Navy's knowledge about the dangers of using Foster Wheeler's asbestos-containing boilers, Foster Wheeler's knowledge of the dangers of using its asbestos-containing boilers, whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers, or whether Foster Wheeler manufactured its asbestos-containing boilers at the direction of a federal officer. As such, the boilerplate generic testimony offered by Mr. Betts is not relevant to plaintiffs' claims against Foster Wheeler in <u>this</u> action nor is it reasonably calculated to lead to the discovery of any admissible evidence. **Fed.R.Evid. 602**:  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter."  Mr. Betts' statement lacks foundation because he has no personal knowledge regarding the USS Constellation, which he never references in his declaration, or plaintiff Albert Wright's work as a machinist and flange turner aboard the USS Constellation. |

| | |
|---|---|
| c. It would be unreasonable to assume that the Navy would have accepted gratuitous, "non-expert" comments from equipment manufacturers and vendors about hazards associated with products they did not make - and especially for one about which the Navy was already fully aware and much more knowledgeable than the manufacturer or vendor. | Mr. Betts' declaration purports to describe what he believes was the Navy's knowledge about asbestos during the decades prior to his starting work at the Navy in the 1970s. Because he was not working for the Navy until the 1970s and has failed to state how he otherwise would have such personal knowledge, he is not qualified to describe the state of the Navy's knowledge about asbestos during the relevant period aboard the USS Constellation.  Mr. Betts fails to establish personal knowledge sufficient to offer testimony about whether Foster Wheeler acted under the direction of a federal officer when constructing its asbestos-containing boilers and related equipment and failed to warn about the same.  Mr. Betts fails to establish personal knowledge about whether Foster Wheeler could have warned about the dangers of using its asbestos-containing boilers.  Mr. Betts fails to establish personal knowledge of Foster Wheeler's knowledge about the dangers of using its asbestos-containing boilers. **Fed.R.Evid. 802:**  Inadmissible hearsay for which there is no exception.  Mr. Betts' attempt to simply repeat what he may have read is hearsay not within any exception. **Fed.R.Evid. 1003:** Violation of secondary evidence rule.  Mr. Betts' attempt to prove what he may have read violates the secondary evidence rule; he must produce originals or duplicates of any proposals, specifications, MIL Specs, standards, designs, drawings, procedures, contracts, warnings, nameplates, labels, research, reports, studies and other documents, which he references in his declaration, to prove their content. |

DATED: December 26, 2007

**KELLER, FISHBACK & JACKSON LLP**


By: _____/s/_____

Daniel Keller

Attorneys for Plaintiffs