1  Edward R. Hugo [Bar No. 124839]\
   ehugo@bhplaw.com
2  James C. Parker [Bar No. 106149]
   jparker@bhplaw.com
3  Thomas J. Moses [Bar No. 116002]
   tmoses@bhplaw.com
4  BRYDON HUGO & PARKER
   135 Main Street, 20th Floor
5  San Francisco, CA 94105
   Telephone:  (415) 808-0300
6  Facsimile:  (415) 808-0333

7  Attorneys for Defendant
   FOSTER WHEELER LLC

8

9                    UNITED STATES DISTRICT COURT

10                 EASTERN DISTRICT OF PENNSYLVANIA

11

12 | IN RE: ASBESTOS PRODUCTS LIABILITY | |
13 | LITIGATION | |
14 | (NO VI) | MDL 875 |
15 | | |
16 | This Document Relates To: | |

17                   UNITED STATES DISTRICT COURT

18           NORTHERN DISTRICT OF CALIFORNIA SAN FRANCISCO

19

20 | ALBERT WRIGHT, JR. and MARVA JOE GREEN WRIGHT, | (ASBESTOS) |
21 | | U.S.D.C. C 07-5403 MJJ |
22 | Plaintiff(s), vs. | San Francisco Case No. CGC-07-274382 |
23 | A.W. CHESTERTON COMPANY, INC., et al. | FOSTER WHEELER LLC'S NOTICE OF TAG-ALONG ACTION |
24 | Defendants. | |
25 | | |

26 **TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF**

27 **CALIFORNIA, PLEASE TAKE NOTICE OF THE FOLLOWING:**

28        1.    On July 29, 1991, the Judicial Panel on Multidistrict Litigation entered an

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1

FOSTER WHEELER LLC'S NOTICE OF TAG-ALONG ACTION

1  order transferring all asbestos cases pending in federal court to the United States District

2  Court, Eastern District of Pennsylvania, for coordination pretrial proceedings pursuant to

3  28 U.S.C. § 1407 ("MDL Transfer Order").  That order also applies to "tag-along actions,"

4  or actions involving common questions of fact filed after the January 17, 1991, filing of

5  the Panel's Order to Show Cause.  MDL Rule 13(e) provides:

6            Any party of counsel in actions previously transferred under

7            section 1407 or under consideration by the Panel for transfer under

8            section 1407 shall promptly notify the Clerk of the Panel of any

9            potential "tag-along actions" in which that party is aslo named or

10            in which that counsel appears.

11      2.     The undersigned hereby notifies the court that this state court action

12  removed on October 24, 2007, (a copy of the removed state court complaint is attached

13  hereto as Exhibit "A") is a potential "tag-along action" which is subject to transfer to the

14  Eastern District of Pennsylvania.  The Clerk of the Panel may either (1) enter a

15  conditional transfer order pursuant to MDL Rule 12(a), or (2) file an order to show cause

16  why the action should not be transferred, pursuant to MSL Rule 13(b).

17      3.     Foster Wheeler Energy Corporation is providing written notice of this

18  Notice of Tag-Along Action to all adverse parties.

19      Foster Wheeler Energy Corporation reserves the right to amend or supplement this

20  Notice of Tag-Along Action.

21

22  Dated: February 19, 2008            BRYDON HUGO & PARKER

23                              Respectfully submitted,

24

25           By:    /s/ Thomas J. Moses

                           Edward R. Hugo

26                             James C. Parker

                           Thomas J. Moses

27                             Attorneys for Defendant

                           FOSTER WHEELER LLC

28                             4801-1661

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

2

# EXHIBIT A

9/28/07
#10007971

ENDORSED
FILED
San Francisco County Superior Court

SEP 13 2007

GORDON PARK-LI, Clerk
BY: DEBORAH STEPPE
Deputy Clerk

SUMMONS ISSUED

1  Stephen M. Fishback, Esq. (State Bar No. 191646)
2  J. Bruce Jackson, Esq. (State Bar No. 173215)
   KELLER, FISHBACK & JACKSON LLP
3  28720 Roadside Drive, Suite 201
   Agoura Hills, CA 91301
   Telephone: 818.879.8033   CASE MANAGEMENT CONFERENCE SET
4  Facsimile: 818.292.8891

5  Attorneys for Plaintiffs           AUG 20 2008  -1:30PM

6                                     DEPARTMENT 206

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                    CITY AND COUNTY OF SAN FRANCICO
                          (UNLIMITED JURISDICTION)

10
    ALBERT WRIGHT JR and MARVA JOE
11  GREEN WRIGHT,                          Case No. CGC-07-274382

12          Plaintiffs,                    COMPLAINT FOR PERSONAL INJURY -
                                           ASBESTOS
13      vs.
                                           (ACTION IS SUBJECT TO GENERAL
14                                           ORDERS IN FILE NO. 828684)
    A.W. CHESTERTON COMPANY, INC.;
15  AMERICAN STANDARD, INC.;
    ASBESTOS CORPORATION LTD.;
16  BUFFALO PUMPS, INC.;                   Negligence
    CBS CORPORATION, a DELAWARE            Strict Liability
17      CORPORATION, individually, successor- False Representation
        in-interest to and formerly known as  Intentional Tort
18      VIACOM, INC. and WESTINGHOUSE      Premises Owner/Contractor Liability
        ELECTRIC CORPORATION;             Loss of Consortium
19  CRANE CO.;
20  CROWN CORK & SEAL COMPANY, INC.,
        individually and as successor-in-interest to
21      MUNDET CORK COMPANY;
    DOMCO, INC. FLOOR PRODUCTS
22      (TEXAS), individually and successor-in-
        interest to AZROCK INDUSTRIES, INC.;
23  DOUGLASS INSULATION COMPANY,
24      INC.;
    FAIRBANKS MORSE COMPANY;
25  FLOWSERVE CORPORATION, individually
        and as successor-in- interest to
26      WORTHINGTON PUMPS;
27  FMC CORPORATION;
    FOSTER WHEELER LLC;
28

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES                    PAGE 1

FRASER'S BOILER SERVICE, INC.;
GARLOCK SEALING TECHNOLOGIES,
    LLC, individually and successor-in-interest
    to GARLOCK, INC.;
GENERAL ELECTRIC COMPANY;
GEORGIA-PACIFIC CORPORATION;
GOULDS PUMPS, INC.;
GRINNELL CORPORATION:
HILL BROTHERS CHEMICAL COMPANY;
HONEYWELL INTERNATIONAL, INC.
    individually and formerly known as ALLIED
    SIGNAL, INC., as successor-in-interest to
    the BENDIX CORPORATION;
IMO INDUSTRIES, INC. individually and as
    successor-in-interest to DELALVAL
    PUMPS and WARREN PUMPS;
INGERSOLL-RAND COMPANY;
ITT INDUSTRIES, INC. individually and as
    successor-in-interest to BELL & GOSSETT;
J.T. THORPE & SON, INC.;
KAISER GYPSUM COMPANY, INC.;
KENTILE FLOORS, INC.;
LESLIE CONTROLS, INC.;
METALCLAD INSULATION
    CORPORATION, individually and as
    successor-in-interest to NOR-CAL
    INSULATION;
MINNESOTA MINING CORPORATION aka
    3M COMPANY;
NIBCO, INC. dba CALNIBCO;
OWENS-ILLINOIS, INC.;
PLANT INSULATION COMPANY;
POWER ENGINEERING AND EQUIPMENT
    COMPANY, INC.;
QUINTEC INDUSTRIES, INC.;
RAPID AMERICAN CORP., individually and
    as successor-in-interest to PHILIP CAREY
    CORPORATION;
SEPCO CORPORATION:
SIEMENS CORPORATION, aka, dba, and/or
    individually and successor-in-interest to
    SIEMENS ENERGY AND
    AUTOMATION, INC., SIEMENS POWER
    GENERATION;
SOCO-WEST, INC.;
STERLING FLUID SYSTEMS (USA) LLC,
    dba and individually and successor-in-interest
    to PEERLESS PUMP COMPANY, INDIAN

1  HEAD, INC.;
   THORPE INSULATION CORPORATION;
2  WARREN PUMPS, LLC;
   DOES 1-500
3
                    Defendants
4

5
6  PLAINTIFFS, ALBERT WRIGHT JR and MARVA JOE GREEN WRIGHT, (hereinafter

7  Plaintiff(s)), COMPLAIN AND ALLEGES AS FOLLOWS as against the above-named

8  defendants:

9          1.    The true names and capacities, whether individual, corporate, associate, governmental

10 or otherwise, of defendants DOES 1 through 500, are unknown to plaintiff at this time, who

11 therefore sues said defendants by such fictitious names.  When the true names and capacities of

12 said defendants have been ascertained, plaintiff will amend this complaint accordingly.  Plaintiff is

13 informed and believes, and thereon alleges, that each defendant designated herein as a DOE is

14 responsible, negligently or in some other actionable manner, for the events and happenings

15 hereinafter referred to, and caused injuries and damages thereby to the plaintiff, as hereinafter

16 alleged.

17
18         2.    At all times herein mentioned, each of the defendants was the agent, servant,

19 employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each

20 defendant was acting in the full course and scope of said agency, service, employment and/or joint

21 venture.

22
23         3.    Plaintiffs are informed and believes, and thereon alleges that at all times herein

24 mentioned, defendants on Exhibits "B" and DOES 1 through 300, inclusive, were and are

25 corporations, partnerships, unincorporated associations, sole proprietorships and/or other business

26 entities organized and existing under and by virtue of the laws of the State of California, or the

27 laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were

28

---

1  and are authorized to do and are doing business in the State of California, and that said defendants,

2  or some of them, have regularly conducted business in the County of San Francisco, State of

3  California.

### FIRST CAUSE OF ACTION
(Negligence)

4

5  **PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "B," AND DOES 1-
6  300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE
   OF ACTION FOR NEGLIGENCE ALLEGES AS FOLLOWS:**

7

8      4.      At all times herein mentioned, each of the named defendants and DOES 1

9  through 300 was the successor, successor in business, successor in product line or a portion

10 thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion

11 thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or

12 member in an entity researching, studying, manufacturing, fabricating, designing, modifying,

13 labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting,

14 servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding,

15 manufacturing for others, packaging and advertising a certain product, namely asbestos, and other

16 products containing asbestos. Said entities shall hereinafter collectively be called "alternate

17 entities." Each of the herein named defendants is liable for the tortious conduct of each successor,

18 successor in business, successor in product line or a portion thereof, assign, predecessor in product

19 line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned

20 entity, or entity that it was a member of, or funded, that researched, studied, manufactured,

21 fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale,

22 supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed,

23 warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos,

24 and other products containing asbestos. The following defendants, and each of them, are liable for

25 the acts of each and every "alternate entity," and each of them, in that there has been a virtual

26 destruction of plaintiff's remedy against each such "alternate entity"; defendants, and each of

27 them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity";

28

1   such "alternate entity"; defendants, and each of them, caused the destruction of plaintiff's remedy

2   against each such "alternate entity"; each such defendant has the ability to assume the risk-

3   spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill

4   originally attached to each such "alternate entity."

5       5.     At all times herein mentioned, defendants, their "alternate entities," and each of

6   them, were and/or are engaged in the business of researching, manufacturing, fabricating,

7   designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

8   supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

9   marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain

10  product, namely asbestos and other products containing asbestos. Said asbestos and other products

11  containing asbestos (hereinafter "asbestos and other products containing asbestos" and/or

12  "asbestos-containing products") specifically include, but are not limited to: adhesives/tape/mastic;

13  thermal insulation/insulating materials; insulating cement; pipecovering/block insulation;

14  caulking/putties; cement pipe; boilers; heaters; ductwork; cloth; flooring materials; blankets; cloth;

15  gaskets; packing; pumps; compressors; pipes; valves; engines; turbines; motors; generators;

16  gloves/aprons; thermal paper; asbestos fiber; refractory materials; panels; boards; tubes.

17      6.     At all times herein mentioned, defendants, their "alternate entities" and each of

18  them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated,

19  designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of

20  the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,

21  inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-

22  branded, manufactured for others, packaged and advertised, a certain product, namely asbestos,

23  and other products containing asbestos, in that said products caused personal injuries to users,

24  consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively

25  called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby

26  rendering said products unsafe and dangerous for use by "exposed persons".

27

28

7.      Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

8.      Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

9.      Plaintiff has used, handled or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit "A," attached to plaintiff's complaint and incorporated by reference herein.

9a.     Defendants, their "alternate entities," and each of them breached their duties by:

(a) failing to warn plaintiff of the dangers, characteristics, and potentialities of their asbestos-containing products when they knew or should have known that exposure to their asbestos-containing products would cause disease and injury;

(b) failing to warn plaintiff of the dangers to which he was exposed when they knew or should have known of the dangers;

(c) failing to exercise reasonable care to warn plaintiff of what would be safe, sufficient, and proper protective clothing, equipment, and appliances when working with or near or being exposed to their asbestos and asbestos-containing products;·

(d) failing to provide safe, sufficient and proper protective clothing, equipment and appliances with their asbestos and asbestos-containing products;

(e) failing to test its asbestos and asbestos-containing products in order to ascertain the

extent of danger involved upon exposure thereto;

(f) failing to conduct such research as should have been conducted in the exercise of reasonable care, in order to ascertain the dangers involved upon exposure to their asbestos and asbestos-containing products;

(g) failing to remove the product or products from the market when the defendant corporations knew or should have known of the hazards of exposure to their asbestos and asbestos-containing products;

(h) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to adequately warn and apprise plaintiff of said dangers, hazards, and potentialities discovered;

(i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to package said asbestos and asbestos-containing products so as to eliminate said dangers, hazards, and potentialities;

(j) failing to advise plaintiff and others that the risks inherent in their asbestos-containing product greatly outweighed the benefits, if any, afforded by such products; and

(k) generally using unreasonable, careless, and negligent conduct in the manufacture, fabrication, supply, distribution, sale, installation, and/or use of their asbestos and asbestos-containing products, among other actions/inactions.

Plaintiffs disclaim any cause of action or recovery for any injuries and damages resulting from exposure to asbestos caused by the acts or omissions of defendants committed at the specific and proven direction of an officer of the United States Government acting within in his official capacity. To the extent that any of the plaintiff's asbestos exposure occurred on board vessels or aircraft owned and/or operated exclusively by the United States military or the construction and/or repair of such vessels or aircraft occurred on proven federal enclaves, plaintiff's negligence and strict liability claims against manufacturers, sellers and suppliers of specialized machinery pumps, valves, boilers, turbines, separators, steam traps, engines and other mechanical equipment installed in such vessels and aircraft are not based on the theory of defective design, but rather on the theory of failure to warn of the health risks and hazards associated with working with and/or around

1   asbestos and asbestos-containing products only and renders such defendants liable in both

2   negligence and in strict products liability for such marketing defect.

3        10.    As a direct and proximate result of the conduct of the defendants, their "alternate

4   entities," and each of them, as aforesaid, plaintiff's exposure to asbestos and asbestos-containing

5   products caused severe and permanent injury to the plaintiff, the nature of which, along with the

6   date of plaintiff's diagnosis, are set forth in Exhibit "A," attached to plaintiff's complaint and

7   incorporated by reference herein.

8        11.    Plaintiff is informed and believes, and thereon alleges, that progressive lung

9   disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without

10  perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing

11  products over a period of time.

12       12.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

13  containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-

14  containing products presented any risk of injury and/or disease.

15       13.    As a direct and proximate result of the aforesaid conduct of defendants, their

16  "alternate entities," and each of them, plaintiff has suffered, and continues to suffer, permanent

17  injuries and/or future increased risk of injuries to his person, body and health, including, but not

18  limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress

19  attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in the

20  sum in excess of the jurisdictional limits of a limited civil case in the Superior Court.

21       14.    As a direct and proximate result of the aforesaid conduct of the defendants, their

22  "alternate entities," and each of them, plaintiff has incurred, is presently incurring, and will incur

23  in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays

24  and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this

25  time, and plaintiff prays leave to amend this complaint accordingly when the true and exact cost

26  thereof is ascertained.

27       15.    As a further direct and proximate result of the said conduct of the defendants,

28  their "alternate entities," and each of them, plaintiff has incurred, and will incur, loss of income,

1  wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses,

2  the full nature and extent of which are not yet known to plaintiff, and leave is requested to amend

3  this complaint to conform to proof at the time of trial.

4       16.    Defendants, their "alternate entities," and each of them, and their officers,

5  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

6  had full knowledge of, or should have known of, each of the acts set forth herein.

7       17.    Defendants, their "alternate entities," and each of them, are liable for the

8  fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each

9  defendant's officers, directors and managing agents participated in, authorized, expressly and

10  impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their

11  "alternate entities" as set forth herein.

12       18.    The herein-described conduct of said defendants, their "alternate entities," and

13  each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and

14  indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example and

15  by way of punishing said defendants, seeks punitive damages according to proof.

16       WHEREFORE, plaintiff prays judgment against defendants, their "alternate

17  entities," and each of them, as hereinafter set forth.

### SECOND CAUSE OF ACTION
### (Strict Liability)

**AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:**

     19.    Plaintiff incorporates herein by reference, as though fully set forth herein, the

allegations contained in Paragraphs 4-5 and 8-18 of the First Cause of Action herein.

     20.    Defendants, their "alternate entities," and each of them, knew and intended that

the above-referenced asbestos and asbestos-containing products would be used by the purchaser or

1  user without inspection for defects therein or in any of their component parts and without

2  knowledge of the hazards involved in such use.

3    21.    Said asbestos and asbestos-containing products were defective and unsafe for

4  their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death.

5  The defect existed in the said products at the time they left the possession of defendants, their

6  "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including

7  asbestosis, other lung damage, and cancer to "exposed persons," including plaintiff herein, while

8  being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and

9  dangerous for use.

10    22.    "Exposed persons" did not know of the substantial danger of using said products.

11  Said dangers were not readily recognizable by "exposed persons". Said defendants, their "alternate

12  entities," and each of them, further failed to adequately warn of the risks to which plaintiff and

13  others similarly situated were exposed.

14    23.    In researching, manufacturing, fabricating, designing, modifying, testing or

15  failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying,

16  offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation,

17  repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising

18  asbestos and asbestos-containing products, defendants, their "alternate entities," and each of them,

19  did so with conscious disregard for the safety of "exposed persons" who came in contact with said

20  asbestos and asbestos-containing products, in that said defendants, their "alternate entities," and

21  each of them, had prior knowledge that there was a substantial risk of injury or death resulting

22  from exposure to asbestos or asbestos-containing products, including, but not limited to,

23  mesothelioma, lung cancer, and asbestosis.  Said knowledge was obtained, in part, from scientific

24  studies, government data, and medical data to which defendants had access, as well as scientific

25  studies performed by, at the request of, or with the assistance of, said defendants, their "alternate

26  entities," and each of them, and which knowledge was obtained by said defendants, their "alternate

27  entities," and each of them on or before 1930, and thereafter.

28

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES                                    PAGE 10

24.     On or before 1930, and thereafter, said defendants, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their "alternate entities," and each of them, knew that members of the general public and other "exposed persons," who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

25.     With said knowledge, said defendants, their "alternate entities," and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their "alternate entities," and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities," and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

26.     The above-referenced conduct of said defendants, their "alternate entities," and each of them, was motivated by the financial interest of said defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing

1  for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance

2  of said financial motivation, said defendants, their "alternate entities," and each of them,

3  consciously disregarded the safety of "exposed persons" and in fact were consciously willing and

4  intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons"

5  and induced persons to work with and be exposed thereto, including plaintiff.

6       27.     Plaintiff alleges that the aforementioned defendants, their "alternate entities," and

7  each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for

8  their intended use but that their asbestos and asbestos-containing products, created an

9  unreasonable risk of bodily harm to exposed persons.

10      28.     Plaintiff further alleges his injuries are a result of cumulative exposure to

11  asbestos and various asbestos-containing products manufactured, fabricated, inadequately

12  researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased,

13  bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation,

14  repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by

15  the aforementioned defendants, their "alternate entities," and each of them and that plaintiff cannot

16  identify precisely which asbestos or asbestos-containing products caused the injuries complained

17  of herein.

18      29.     Plaintiff relied upon defendants', their "alternate entities'," and each of their

19  representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-

20  containing products. As a direct, foreseeable and proximate result thereof, plaintiff has been

21  injured permanently as alleged herein.

22      30.     As the above referenced conduct of said defendants was and is vile, base, willful,

23  malicious, fraudulent, oppressive, outrageous, and in conscious disregard and indifference to the

24  safety and health of "exposed persons", including plaintiff who has suffered the injuries and

25  damages previously alleged, plaintiffs, for the sake of example, and by way of punishing said

26  defendants, seek damages according to proof.

27      WHEREFORE, plaintiff prays judgment against defendants, their "alternate

28  entities," and each of them, as hereinafter set forth.

## THIRD CAUSE OF ACTION
### (False Representation Under Restatement of Torts Section 402-B)

**AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:**

31.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First and Second Causes of Action.

32.     At all times herein mentioned, each of the named defendants and DOES 1 through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity";

1    such "alternate entity"; defendants, and each of them, caused the destruction of plaintiff's remedy

2    against each such "alternate entity"; each such defendant has the ability to assume the risk-

3    spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill

4    originally attached to each such "alternate entity."

5          33.    At all times herein mentioned, defendants, their "alternate entities," and each of

6    them, were and/or are engaged in the business of researching, manufacturing, fabricating,

7    designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

8    supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

9    marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain

10    product, namely asbestos and other products containing asbestos.  Said asbestos and other products

11    containing asbestos (hereinafter "asbestos and other products containing asbestos" and/or

12    "asbestos-containing products") specifically include, but are not limited to: adhesives/tape/mastic;

13    thermal insulation/insulating materials; insulating cement; pipecovering/block insulation;

14    caulking/putties; cement pipe; boilers; heaters; ductwork; cloth; flooring materials; blankets; cloth;

15    gaskets; packing; pumps; compressors; pipes; valves; engines; turbines; motors; generators;

16    gloves/aprons; thermal paper; asbestos fiber; refractory materials; panels; boards; tubes.

17          34.    At all times herein mentioned, defendants, their "alternate entities" and each of

18    them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated,

19    designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of

20    the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,

21    inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-

22    branded, manufactured for others, packaged and advertised, a certain product, namely asbestos,

23    and other products containing asbestos, in that said products caused personal injuries to users,

24    consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively

25    called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby

26    rendering said products unsafe and dangerous for use by "exposed persons".

27

28

---

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES                              

35.    Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

36.    Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

37.    Plaintiff has used, handled or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit "A," attached to plaintiff's complaint and incorporated by reference herein.

38.    As a direct and proximate result of the conduct of the defendants, their "alternate entities," and each of them, as aforesaid, plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the plaintiff, the nature of which, along with the date of plaintiff's diagnosis, are set forth in Exhibit "A," attached to plaintiff's complaint and incorporated by reference herein.

39.    Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

40.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES                                    PAGE 15

41.     As a direct and proximate result of the aforesaid conduct of defendants, their "alternate entities," and each of them, plaintiff has suffered, and continues to suffer, permanent injuries and/or future increased risk of injuries to his person, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in the sum in excess of the jurisdictional limits of a limited civil case in the Superior Court.

42.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this time, and plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

43.     As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

44.     Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have knowledge of each of the acts set forth herein. The specific names, job titles, positions, or other identifying offices of said individuals are necessarily in possession of defendants and full information concerning the facts relevant to this controversy and defendants, and each of them, have more knowledge or the identities of said persons than plaintiffs, herein.

45.     At the aforementioned time when defendants, their "alternate entities," and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed,

1  warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and

2  asbestos-containing products, as herein above set forth, the defendants, their "alternate entities,"

3  and each of them, expressly and impliedly represented to members of the general public, including

4  the purchasers and users of said product, and other "exposed persons," including the plaintiff

5  herein and potentially some or all of his employers, that asbestos and asbestos-containing products,

6  were of merchantable quality, free of defects, and safe for the use for which they were intended.

7  Said misrepresentations of such material facts impacting the safety, reliability, and quality of

8  defendants' asbestos-containing products specifically included the failure to disclose known or

9  suspected hazards of working with and around said asbestos-containing products to the plaintiff

10  and others. Defendants' misrepresentations went far beyond the bounds of mere promises because

11  defendants affirmatively stated through those means more fully described herein that defendants'

12  asbestos and/or asbestos-containing products were safe and safe to use for their intended uses, but

13  they were not safe.  Defendants knew or should have known at the time of their misrepresentations

14  that such representations were false; defendants knew or should have known at the time of their

15  misrepresentations that their asbestos and/or asbestos-containing products were not safe or safe for

16  their intended uses.  Despite knowing of the dangers to plaintiff of working with and around

17  defendants' asbestos and/or asbestos-containing, defendants failed to disclose such dangers and in

18  fact concealed the same from plaintiff.  Defendants' misrepresentations and concealment of the

19  dangers attendant to working with and around defendants' asbestos and/or asbestos-containing

20  products occurred during such periods as defendants researched, manufactured, fabricated,

21  designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of

22  the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,

23  inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-

24  branded, manufactured for others, packaged and advertised asbestos and other products containing

25  asbestos, and more specifically as it relates to plaintiff, during those periods of employment when

26  plaintiff worked with defendants' asbestos and/or asbestos-containing products as detailed in

27  Exhibit A. The facts misrepresented regarding the safety, reliability, and quality of defendants'

28  asbestos-containing products are necessarily in possession of defendants who have full information

1    concerning the facts relevant to this controversy and defendants, and each of them, have more

2    knowledge or the facts of said misrepresentations than plaintiffs, herein.

3        46.    The purchasers and users of said asbestos and asbestos-containing products, and

4    other "exposed persons," including the plaintiff and potentially some or all of his employers, relied

5    upon said representations of defendants, their "alternate entities," and each of them, *as defendants,*

6    *their "alternate entities," and each of them so intended,* in the selection, purchase and use of

7    asbestos and asbestos-containing products.

8        47.    Said representations by defendants, their "alternate entities," and each of them,

9    were false and untrue, and defendants knew or should have known at the time they were untrue, in

10   that the asbestos and asbestos-containing products  were not safe for their intended use, nor were

11   they of merchantable quality as represented by defendants, their "alternate entities," and each of

12   them, in that asbestos and asbestos-containing products have very dangerous properties and defects

13   whereby said products cause asbestosis, other lung damages and cancer, and have other defects

14   that cause injury and damage to the users of said products and other "exposed persons," thereby

15   threatening the health and life of said persons including plaintiff herein.

16       48.    Defendants, their "alternate entities," and each of them, based on the state of

17   scientific and medical literature, as well as their own studies and research conducted regarding the

18   health hazards associated with working with and/or around asbestos-containing product had no

19   reasonable basis for believing the untrue representations made to plaintiff, plaintiff's employers,

20

21   and other groups and organizations with which plaintiff was affiliated, such as unions, through

22   which plaintiff would reasonably be expected to learn of such misrepresentations.

23       49.    Plaintiff and others, lacking the sophistication and knowledgeable regarding the

24   health hazards of working with and around defendants', their alternate entities, and each of them,

25   asbestos-containing products and relied upon the said misrepresentations and were, in fact,

26   deceived into believing that said asbestos-containing products were safe and free of defects and

27   would not cause severe risk of injury and death.  Had plaintiff known that defendants' asbestos

28

---

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES                                          PAGE 18

and/or asbestos-containing products were unsafe for their intended uses, plaintiff would not have used and/or worked around the same or taken other steps to properly safeguard his health or the health of others when working with or around defendants' and others' asbestos-containing products.

50.    The facts intentionally omitted or misstated regarding the safety, reliability, and quality of defendants' asbestos and/or asbestos-containing products were/are necessarily in possession of defendants who had/have full information concerning the facts relevant to this controversy and defendants, and each of them, had/have more knowledge of the facts of said concealments and nondisclosures than plaintiff, herein.

51.    As a direct and proximate result of said false representations by defendants, their "alternate entities," and each of them, the plaintiff sustained the injuries and damages herein above set forth.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

### FOURTH CAUSE OF ACTION
#### (Intentional Tort)

**AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710, PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND ALLEGES AS FOLLOWS:**

52.    Plaintiff, by this reference, hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the Third Causes of Action herein, excepting therefrom allegations pertaining to negligence.

53.    At all times pertinent hereto, the defendants, their "alternate entities," and each of them, owed plaintiff a duty, as provided for in Section 1708, 1709 and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the plaintiff. When a duty to act was imposed, as set forth herein, the defendants, their "alternate entities," and

each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Deceit) and Section 1710 (Fraud) and, more specifically, included suggestions of fact which were not true and which defendants, their "alternate entities," and each of them, did not believe to be true; assertions of fact which were not true and which defendants, their "alternate entities," and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as are more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of the rights of the plaintiff as provided for in the aforementioned Civil Code sections.

54.    Since on or before 1930, the defendants, their "alternate entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products referred to in plaintiff's First Cause of Action were and are hazardous to the health and safety of plaintiff, and others in plaintiff's position working in close proximity with such materials. The defendants, their "alternate entities," and each of them, have known of the dangerous propensities of other of the aforementioned materials and products since before that time. Defendants' misrepresentations went far beyond the bounds of mere promises because defendants affirmatively stated through those means more fully described herein that defendants' asbestos and/or asbestos-containing products were safe and safe to use for their intended uses, but they were not safe. Defendants knew at the time of their misrepresentations that such representations were false; defendants knew at the time of their misrepresentations that their asbestos and/or asbestos-containing products were not safe or safe for their intended uses. Despite knowing of the dangers to plaintiff of working with and around defendants' asbestos and/or asbestos-containing, defendants failed to disclose such dangers and in fact concealed the same from plaintiff. Defendants' misrepresentations and

concealment of the dangers attendant to working with and around defendants' asbestos and/or

asbestos-containing products occurred during such periods as defendants researched,

manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate,

warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought,

offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

marketed, warranted, re-branded, manufactured for others, packaged and advertised asbestos and

other products containing asbestos, and more specifically as it relates to plaintiff, during those

periods of employment when plaintiff worked with defendants' asbestos and/or asbestos-

containing products as detailed in exhibit A.  The mere fact that defendant made its asbestos-

containing products available for purchase, use, sale, or otherwise to plaintiff and others was an

intentional and affirmative fraudulent act.  With intent to deceive, falsely represent facts regarding

the true hazards of working with and around asbestos-containing products, conceal the health risks

associated with working in an asbestos-contaminated environment, and purposefully failing to

disclosure such material facts to plaintiff, and others in plaintiff's position, and with the intent that

plaintiff and such others should be and remain ignorant of such facts with intent to induce plaintiff

and such others to alter his and their positions to his detriment, injury and/or risk and in order to

gain economic advantages within the market, the following acts occurred:

        a.        Defendants, their "alternate entities," and each of them, did not label any

of the aforementioned asbestos-containing materials and products regarding the hazards of such

materials and products to the health and safety of plaintiffs and others in plaintiffs' position

working in close proximity with such materials until 1964 when certain of such materials were

labeled by some, but not all, of defendants, their "alternate entities," and each of them, herein

when the knowledge of such hazards was existing and known to defendants, their "alternate

entities," and each of them, since on or before 1930. By not labeling such materials as to their said

hazards, defendants, their "alternate entities," and each of them, caused to be suggested as a fact to

1  plaintiff that it was safe for plaintiff to work in close proximity to such materials when in fact it

2  was not true and defendants, their "alternate entities," and each of them, did not believe it to be

3  true;

4      b.      Defendants, their "alternate entities," and each of them, suppressed

5  information relating to the danger of use of the aforementioned materials by requesting the

6  suppression of information to the plaintiff and the general public concerning the dangerous nature

7  of the aforementioned materials to workers, by not allowing such information to be disseminated

8  in a manner which would given general notice to the public and knowledge of the hazardous

9  nature thereof when defendant, their "alternate entities," and each of them, were bound to disclose

10  such information;

11      c.      Defendants, their "alternate entities," and each of them, sold the

12  aforementioned products and materials to plaintiff's employers and others without advising

13  plaintiff and others of the dangers of use of such materials to persons working in close proximity

14  thereto when defendants, their "alternate entities," and each of them, knew of such dangers, and

15  had a duty to disclose such dangers all as set forth herein. By said conduct, defendants, their

16  "alternate entities," and each of them, caused to be positively asserted to plaintiff that which was

17  not true and that which defendants, their "alternate entities," and each of them, had no reasonable

18  ground for believing to be true, to wit, that it was safe for plaintiff to work in close proximity to

19  such materials;

20      d.      Defendants, their "alternate entities," and each of them, suppressed from

21  plaintiff medical and scientific data and knowledge of the results of studies including, but not

22  limited to, the information and knowledge of the contents of the Lanza report. Although bound to

23  disclose it, defendants, their "alternate entities," and each of them influenced A. J. Lanza to change

24  his report, the altered version of which was published in Public Health Reports, Volume 50 at page

25  1 in 1935, thereby causing plaintiff and others to be and remain ignorant thereof. Defendants, their

26  "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated trade

27  journal, to omit mention of danger, thereby lessening the probability of notice of danger to the

28  users thereof;

---

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES

e.        Defendants, their "alternate entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of defendants, their "alternate entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to plaintiff at this time;

f.        Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants, their "alternate entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, their "alternate entities," and each of them, herein. Between 1942 and 1950, the defendants, their "alternate entities," and each of them, acquired medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the Asbestos Textile Institute and other industry organizations to defendant herein. Thereby, defendants, their "alternate entities," and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead plaintiff. Such facts did mislead plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving plaintiff the true facts concerning such knowledge of danger, which defendants, their "alternate entities," and each of them, were bound to disclose;

g.        Defendants, their "alternate entities," and each of them, failed to warn plaintiff and others of the nature of said materials which were dangerous when breathed and which

1    could cause pathological effects without noticeable trauma, despite the fact that defendants, their

2    "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that

3    said materials were dangerous and a threat to the health of persons coming into contact therewith;

4        h.        Defendants, their "alternate entities," and each of them, failed to provide

5    plaintiff with information concerning adequate protective masks and other equipment devised to

6    be used when applying and installing the products of the defendants, and each of them, despite

7    knowing that such protective measures were necessary, and that they were under a duty to disclose

8    that such materials were dangerous and would result in injury to the plaintiff and others applying

9    and installing such material;

10        i.        Defendants, their "alternate entities," and each of them, when under a

11   duty to so disclose, concealed from plaintiff the true nature of the industrial exposure of plaintiff

12   and knew that plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time,

13   develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants, their

14   "alternate entities," and each of them, also concealed from plaintiff and others that harmful

15   materials to which they were exposed would cause pathological effects without noticeable trauma;

16        j.        Defendants, their "alternate entities," and each of them, failed to provide

17   information of the true nature of the hazards of asbestos materials and that exposure to these

18   materials would cause pathological effects without noticeable trauma to the public, including

19   buyers, users, and physicians employed by plaintiff and potentially plaintiff's employers so that

20   said physicians could examine, diagnose and treat plaintiff and others who were exposed to

21   asbestos, despite the fact that defendants, their "alternate entities," and each of them, were under a

22   duty to so inform and said failure was misleading; and

23        k.        Defendants, their "alternate entities," and each of them, failed to provide

24   adequate information to physicians and surgeons retained by plaintiff's employers and their

25   predecessor companies, for purposes of making physical examinations of plaintiff and other

26   employees as to the true nature of the risk of such materials and exposure thereto when they in fact

27   possessed such information and had a duty to disclose it.

28        55.        Defendants, their "alternate entities," and each of them, based on the state of

scientific and medical literature, as well as their own studies and research conducted regarding the health hazards associated with working with and/or around asbestos-containing product,  knew that the representations made to plaintiff, plaintiff's employers, and other groups and organizations with which plaintiff was affiliated, such as unions, through which plaintiff would reasonably be expected to learn of such representations were false.

56.    Defendants, their "alternate entities," and each of them, willfully failed and omitted to complete and file First Report of Occupational Injury of Illness regarding plaintiff's injuries, as required by law, and did willfully fail and omit to file report of injury and occupational disease with the State of California.  Defendants similarly intentionally failed to state and disclose on their asbestos-containing products and/or packaging the asbestos-related health risk, including risk of asbestosis and cancer, which resulted from plaintiff and others working with and around defendants' asbestos-containing products.

57.    Plaintiff was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the fact of danger from products complained of had become known and plaintiffs was in the class of persons to whom a duty was owed as a consumer and user of defendants' asbestos-containing products to be informed truthfully about the risks of using such asbestos-containing products.  Plaintiff and others, not sophisticated nor knowledgeable regarding asbestos health hazards and the intentions to deceive by defendants, justifiably relied on defendants' claims and representations regarding their asbestos-containing products.  Had plaintiff known that defendants' asbestos and/or asbestos-containing products were unsafe for their intended uses, plaintiff would not have used and/or worked around the same.

58.    Defendants, their "alternate entities," and each of them, having such aforementioned knowledge, and the duty to inform plaintiff about the true facts, and knowing the plaintiff did not possess such knowledge and would work with and around and ultimately breathe

1  such material innocently, acted falsely and fraudulently and with full intent to cause plaintiff to

2  remain unaware of the true facts and to induce plaintiff to work in a dangerous environment by

3  failing to disclose known information regarding asbestos health hazards, all in violation of

4  Sections 1708, 1709, 1710, and 1711 of the Civil Code of the State of California in an expectation

5  of further sales and proceeds from the supply of defendants' asbestos-containing products.

### FIFTH CAUSE OF ACTION
### (Premises Owner/Contractor Liability)

**AS AND FOR A FURTHER AND FIFTH SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C," DOES 301-450, THEIR "ALTERNATE ENTITIES," (HEREINAFTER "PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS"), AND EACH OF THEM, AND ALLEGES AS FOLLOWS:**

59.     Plaintiffs, by this reference, incorporate the allegations contained in paragraphs 9-16 of the First Cause of Action.

60.     At all times herein mentioned, each of the Premises Owner/Contractor Liability Defendants listed on Exhibit "C" was a successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on the respective premises owned, leased, maintained, managed and/or controlled by them. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein-named defendants is liable for the tortious conduct of each successor, successor-in-business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, that caused the presence as aforesaid of said asbestos-containing insulation and other toxic substances. The defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiffs remedy against each such alternate entity; defendants, and each of them, have acquired the assets, or a portion thereof, of each such alternate entity; defendants, and each of them, have caused the destruction of plaintiffs remedy against each such alternate entity; each such defendant has the ability to assume the risk-spreading role of each such alternate entity, and that each such defendant enjoys the goodwill originally attached to each such alternate entity.

61.     At all times mentioned herein, the above-listed Premises Owner/Contractor Liability Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or controlled the premises listed on Exhibit "A" and others where plaintiffs were present. The information provided on Exhibit "A" is preliminary, based on recall over events covering many years and further investigation and discovery may produce more reliable information. Additionally, plaintiffs might have been present at those or other Premises Owner/Contractor Liability Defendants' premises at other locations and on other occasions.

62.     Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials, other building materials, products and toxic substances to be constructed, installed, disturbed, maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors and/or subcontractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to plaintiffs and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

63.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to plaintiffs and other workers or persons so exposed present on each of the aforesaid respective premises.

64.     At all times relevant herein, plaintiffs entered said premises and used or occupied each of said respective premises as intended and for each of the respective Premises Owner/Contractor Liability Defendants' benefit and advantage and at each of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, plaintiffs were exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability Defendants, and each of them.

65.     Plaintiffs at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

66.     The hazardous condition or risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises was not a known condition that plaintiffs employer was hired to correct or repair.

67.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, remained in control of the premises where plaintiffs were performing his work.

68.     At all times mentioned herein, the Premises Owner/Contractor Liability Defendants owed to plaintiffs and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as plaintiff to an unreasonable risk of harm and to avoid causing injury to said person.

69.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions and that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

70.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn plaintiffs of, the existence of the aforesaid dangerous conditions and hazards on said premises.

71.     At all times herein mentioned, said Premises Owner/Contractor Liability Defendants, and each of them, negligently provided unsafe equipment, for the performance of the work that caused or contributed to plaintiffs injuries.

72.     Prior to and at the times and places aforesaid, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials, other building materials, products and toxic substances to be constructed, installed, maintained,

used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured plaintiff.

73.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm plaintiff and others unless special precautions were taken.  The said Premises Owner/Contractor Liability Defendants, and each of them, knew or should have known that the work required special procedures and instruction so as to be accomplished in a safe manner and avoid injury to plaintiffs and others. The Premises Owner/Contractor Liability Defendants were aware or should have been aware that such special procedures and instructions were not taken nor provided.

74.     In part, plaintiffs was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such premises owners and/or contractors' failure to take the necessary precautions.

75.     The work, actions and/or inactions of contractors on premises controlled by the Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

76.     The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct includes but is not limited to:

    a.     Failure to advise and warn of asbestos and other toxic dusts;

    b.     Failure to suppress the asbestos-containing or toxic dusts;

---

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES                                    PAGE 29

1          c.       Failure to remove the asbestos-containing and toxic dusts through use of

2 ventilation or other approved appropriate means;

3          d.       Failure to provide adequate breathing protection, i.e., approved

4 respirators or masks;

5          e.       Failure to inspect and/or test the air;

6          f.       Failure to provide proper medical monitoring, medical check-ups, and

7 reviews, and provide reports and findings on any such check-ups or monitoring that did occur.

8     77.       The Premises Owner/Contractor Defendants' duty to maintain and provide safe

9 premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties

10 arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health and Safety

11 Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Premises

12 Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves

13 or others.

14     78.       Prior to and at said times and places, said Premises Owner/Contractor Liability

15 Defendants were subject to certain ordinances, statutes, and other government regulations

16 promulgated by the United States Government, the State of California, local and regional

17 governments and agencies, and others, including but not limited to the General Industry Safety

18 Orders promulgated pursuant to California Labor Code §6400 and the California Administrative

19 Code under the Division of Industrial Safety, Department of Industrial Relations, including but not

20 limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4150, 4106, 4107,

21 and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances

22 under Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code

23 §40200, et seq., which empowers the Bay Area Air Quality Management District and South Coast

24 Air Quality Management District to promulgate regulations including but not limited to

25 BAAQMD, Regulation 11, Rules 2 and 14, Title 40 Code of Federal Regulations, Chapter 1, Part

26 61, et seq., and related SCAQMD regulations, The National Emission Standards for Hazardous Air

27 Pollutants, which required said Premises Owner/Contractor Liability Defendants to provide

28 specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other

toxic fumes or substances; and said Premises Owner/Contractor Liability Defendants failed to

provide the required safeguards and precautions, or contractors employed by the Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions. Defendants' violations of said codes include but are not limited to:

a.     Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

b.     Failing to segregate work involving the release of asbestos or other toxic dusts;

c.     Failing to suppress dust using prescribed ventilation techniques;

d.     Failing to suppress dust using prescribed "wet down" techniques;

e.     Failing to warn or educate plaintiff or others regarding asbestos or other toxic substances on the premises;

f.     Failing to provide approved respiratory protection devices;

g.     Failing to ensure "approved" respiratory protection devices were used properly;

h.     Failing to provide for an on-going health screening program for those exposed to asbestos on the premises which included disclosure and/or discussion of ongoing health consequences of asbestos exposure with plaintiff;

i.     Failing to provide adequate housekeeping and clean-up of the work place;

j.     Failing to properly warn of the hazards associated with asbestos as required by these statutes;

k.     Failing to properly report renovation and disturbance of asbestos-containing materials, including but not limited to B.A.A.Q.M.D. Regulation 11-2-401 and S.C.A.Q.M.D regulations;

l.     Failing to have an asbestos removal supervisor as required by regulation;

m.     Failing to get approval for renovation as required by statutes;

n.     Failing to maintain records as required by statute; and

o.   Failing to provide plaintiffs with alternative, safe, asbestos-free work areas and/or failure to remove plaintiffs from an asbestos-laden environment where ongoing exposures to asbestos increased the risk of plaintiffs contracting an asbestos-related disease.

p.   Failing to apprise plaintiffs of the results of any such medical monitoring of physical check-ups that occurred and the risks of contracting asbestos-related diseases.

79.    Plaintiffs at all times were unaware of the hazardous condition or the risk of personal injury created by defendants' violation of said regulations, ordinances or statutes.

80.    At all times mentioned herein, plaintiffs were a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

81.    In such circumstances where plaintiffs were the employee or "statutory employee" of said Premises Owner/Contractor Liability Defendants as defined by the California Labor Code and related California case law interpretations, such Premises Owner/Contractor Liability Defendants owed a duty of care to prevent injury, harm, damage, or loss to plaintiff. Instead, well outside the normal risk of plaintiffs employment, said Premises Owner/Contractor Liability Defendants caused plaintiff to be exposed to asbestos-containing products and other airborne toxic asbestos, fraudulently concealed and failed to disclose the unsafe premises and conditions due to asbestos and toxic products contamination, as well as the known and recognized injurious health consequences of repeated and reoccurring exposures by plaintiff to asbestos-containing products, materials, and other toxic asbestos substances, and plaintiffs exposure to asbestos-containing products and the concurrent injury to his person was aggravated by the employer's fraudulent concealment of the existence of hazardous asbestos-containing products exposure and concurrent injury and its connection with plaintiffs employment and job duties. Moreover, plaintiffs said Premises Owner/Contractor Liability Defendants employers illegally failed to obtain and maintain proper and sufficient workers' compensation insurance or failed to obtain workers' compensation insurance which covered plaintiffs injuries, damages, losses, or harms, such that the California Labor Code sections 3600, 3700, *et seq.*, permit recovery in Superior Court.

82.    At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

83.    Said Premises Owner/Contractor Liability Defendants knew of the harmful exposures to asbestos sustained by Plaintiffs at, by and/or through the actions and/or inactions of their own employees or others under the direct and immediate instruction, control and/or supervision of said Premises Owner/Contractor Liability and said Premises Owner/Contractor Liability Defendants concealed and/or failed to disclose to plaintiffs the harmful effects and bodily injuries suffered by plaintiffs as a result of such exposures to asbestos.

84.    As a legal consequence of the foregoing, plaintiffs developed an asbestos-related illness, which has caused great injury and disability as previously set forth, and plaintiff has suffered damages as herein alleged.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

### SIXTH CAUSE OF ACTION
#### (Loss of Consortium)

AS AND FOR A FURTHER, EIGHTTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF'S SPOUSE COMPLAINS OF DEFENDANTS, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

85.    Plaintiff, and, ALBERT WRIGHT JR's, spouse, MARVA JOE GREEN WRIGHT, incorporates by reference each and every paragraph of the First through Fifth Causes of Action herein.

86.    Plaintiffs were legally married at all times relevant to this action were, and are now, husband and wife.

87.    Prior to plaintiff's injuries as alleged, plaintiff was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, plaintiff has been unable to perform the necessary duties as a spouse, including physical and emotional companionship, and the work and service usually performed in the care, maintenance and management of the family home, and plaintiff will be unable to perform such work, service and duties in the future. As a proximate result thereof, plaintiff's spouse has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown to plaintiffs but which will be proved at the time of trial.

88.    Discovery of the cause of plaintiff's spouse's loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

89.    As a direct and proximate result of the acts of defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to plaintiff as set forth in this complaint, plaintiff's spouse has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

WHEREFORE, plaintiff prays judgment against defendant, and each of them, as is hereinafter set forth.

## DAMAGES

Plaintiffs pray judgment against defendants and each of them as follows:

For special damages according to proof;

For general damages according to proof;

For medical expenses according to proof;

For loss of income according to proof;

For punitive damages according to proof;

For plaintiffs' costs of suit herein; and,

For such other further relief as this Court and the law deems just and proper.

Dated: September 12, 2007

KELLER, FISHBACK & JACKSON LLP

By: _____
J. Bruce Jackson
Attorneys for Plaintiff

### EXHIBIT "A"

Plaintiff, ALBERT WRIGHT, JR. suffers from asbestos-caused diseases, including but not limited to, lung cancer and asbestosis.

Plaintiff, ALBERT WRIGHT, JR. was exposed to asbestos of varied types and sources during his employment, which may have included, but is not limited to: asbestos-containing insulating and insulation materials; asbestos-containing insulation, pumps, gaskets, valves, packing; asbestos-containing boilers, refractory materials, compressors; engines, turbines, motors and related equipment; asbestos-containing friction products; asbestos-containing flooring/decking materials; asbestos-containing joint/taping/topping/patching compounds; and other asbestos-containing products. Plaintiffs allege and believe that ALBERT WRIGHT JR's exposure to asbestos may have occurred at job sites including, but not limited to, the following:

EMPLOYER:      United Floor
DATE:               1960-1963
DURATION:      Approximately 3 years
SITE:                 Various residential and commercial sites in and around San Francisco,
                         CA and Oakland, CA and surrounding metropolitan area.
JOB TITLE:      Laborer/floor installer

EMPLOYER:      U.S. Army
DATE:               1963-1965
DURATION:      Approximately 2 years
SITE:                 Fort Ord, Monterrey, CA; Fort Seal, OK ; Hannow, Germany;
                         USS JERMEMIAH OBRIEN.
JOB TITLE:      Supply clerk

EMPLOYER:      U.S. Navy/Civil Service
DATE:               1965-1966
DURATION:      Approximately 1 year
SITE:                 U.S. Naval Weapons Station , Port Chicago, CA
JOB TITLE:      Crane operator

EMPLOYER:      U.S. Navy/Civil Service
DATE:               1966-1973
DURATION:      Approximately 7 years
SITE:                 Hunter's Point Naval Shipyard San Francisco, CA
JOB TITLE:      Machinist/flange turner

EMPLOYER:      Mare Island Naval Shipyard
DATE:               1973-1995
DURATION:      Approximately 22 years
SITE:                 Vallejo, CA
JOB TITLE:      Machinist/flange Turner

EMPLOYER:      Vernon B. Morris Realty
DATE:               1995-Present

1

DURATION:    Approximately 12 years
SITE:    Berkeley, CA
JOB TITLE:    Real estate salesman

2

3    Plaintiff worked aboard various ships and vessels while working as a machinist/flange turner

4    including, but not limited to: USS MIDWAY; USS ENTERPRISE; USS KITTY HAWK; USS
CORAL SEA; USS ORISKANY; USS CONSTELLATION; USS MOUNT HOOD; USS JOHN

5    F KENNEDY; USS HANCOCK; USS TICONDEROGA; USS PROVIDENCE; USS MOUNT
BAKER; USS MAUNA KEA; USS PIGEON; USS PYRO; USS GUITARRO; USS DRUM; USS

6    PINTADO; USS HAWKBILL; USS PERMIT; USS SWORDFISH; USS HALIBUT; USS
GRAYBACK USS BRINKLEY BASS; USS TRIGGER; USS WAHOO

7

8    Plaintiffs' investigation and discovery are continuing.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**EXHIBIT "B"**

2
A.W. CHESTERTON COMPANY, INC.;

3
AMERICAN STANDARD, INC.;

4
ASBESTOS CORPORATION LTD.;

5
BUFFALO PUMPS, INC.;

6
CBS CORPORATION, a DELAWARE CORPORATION, individually, successor-
7
    in-interest to and formerly known as VIACOM, INC. and WESTINGHOUSE
    ELECTRIC CORPORATION;
8

9
CRANE CO.;

10
CROWN CORK & SEAL COMPANY, INC., individually and as successor-in-interest to
    MUNDET CORK COMPANY;
11

DOMCO, INC. FLOOR PRODUCTS (TEXAS), individually and successor-in-
12
    interest to AZROCK INDUSTRIES, INC.;

13
DOUGASS INSULATION COMPANY, INC.;

14
FAIRBANKS MORSE COMPANY;
15

FLOWSERVE CORPORATION, individually  and as successor-in- interest to
16
    WORTHINGTON PUMPS;

17
FMC CORPORATION;

18
FOSTER WHEELER LLC;
19

FRASER'S BOILER SERVICE, INC.;
20

21
GARLOCK SEALING TECHNOLOGIES, LLC, individually and successor-in-interest  to
    GARLOCK, INC.;
22

23
GENERAL ELECTRIC COMPANY;

24
GEORGIA-PACIFIC CORPORATION;

25
GOULDS PUMPS, INC.;

26
GRINNELL CORPORATION:

27
HILL BROTHERS CHEMICAL COMPANY;

28

HONEYWELL INTERNATIONAL, INC. individually and formerly known as ALLIED
   SIGNAL, INC., as successor-in-interest to the BENDIX CORPORATION;

IMO INDUSTRIES, INC. individually and as  successor-in-interest to DELALVAL
   PUMPS and WARREN PUMPS;

INGERSOLL-RAND CO.;

ITT INDUSTRIES, INC. individually and as successor-in-interest to BELL & GOSSETT;

J.T. THORPE & SON, INC.;

KAISER GYPSUM COMPANY, INC.;

KENTILE FLOORS, INC.;

LESLIE CONTROLS, INC.;

METALCLAD INSULATION CORPORATION, individually and as successor-in-interest to
   NOR-CAL INSULATION;

MINNESOTA MINING CORPORATION aka 3M COMPANY;

NIBCO, INC. dba CALNIBCO

OWENS-ILLINOIS, INC.;

PLANT INSULATION COMPANY; QUINTEC INDUSTRIES, INC.;

POWER ENGINEERING AND EQUIPMENT COMPANY, INC.;

RAPID AMERICAN CORP., individually and as successor-in-interest to PHILIP CAREY
   CORPORATION;

SEPCO CORPORATION:

SIEMENS CORPORATION, aka, dba, and/or individually and successor-in-interest to
   SIEMENS ENERGY AND AUTOMATION, INC., SIEMENS POWER GENERATION;
SOCO-WEST, INC.;

STERLING FLUID SYSTEMS (USA) LLC,  dba and individually and successor-in-interest
   to PEERLESS PUMP COMPANY, INDIAN HEAD, INC.;

THORPE INSULATION CORPORATION;

WARREN PUMPS, LLC;  DOES 1-300;

1

**EXHIBIT "C"**

2

CBS CORPORATION, a DELAWARE CORPORATION, individually, successor-

3

in-interest to and formerly known as VIACOM, INC. and WESTINGHOUSE
ELECTRIC CORPORATION;

4

5

DOUGLASS INSULATION COMPANY, INC.;

FOSTER WHEELER LLC;

6

7

GENERAL ELECTRIC COMPANY:

8

J.T. THORPE & SON, INC.;

9

METALCLAD INSULATION CORPORATION, individually and as successor-in-interest to

10

NOR-CAL INSULATION;

11

PLANT INSULATION COMPANY;

12

POWER ENGINEERING AND EQUIPMENT COMPANY, INC.;

13

SIEMENS CORPORATION, aka, dba, and/or individually and successor-in-interest to

14

SIEMENS ENERGY AND AUTOMATION, INC., SIEMENS POWER GENERATION

15

THORPE INSULATION CORPORATION;

16

DOES 301-450;

17

18

19

20

21

22

23

24

25

26

27

28

1   Stephen M. Fishback, Esq.  (State Bar No. 191646)
2   Daniel L. Keller, Esq.  (State Bar No. 191738)
    J. Bruce Jackson, Esq.  (State Bar No. 173215)
3   **KELLER, FISHBACK & JACKSON LLP**
    28720 Roadside Dr, Suite 201
    Agoura Hills, CA 91301
4   Telephone      (818) 879.8033
    Facsimile      (818) 292.8891
5
6   Attorneys for Plaintiffs
7
8
9               SUPERIOR COURT OF THE STATE OF CALIFORNIA
                        COUNTY OF SAN FRANCISCO
10                         UNLIMITED JURISDICTION
11
                                          )   Case No.  CGC-07-274382
12  ALBERT WRIGHT, JR. AND MARVA JOE       )
    GREEN WRIGHT                           )   **PRELIMINARY FACT SHEET/NEW**
13                                         )   **FILING/ASBESTOS LITIGATION**
                                           )
             Plaintiffs,                   )   (See General Order No. 129, In Re: Complex
14                                         )   Asbestos Litigation)
    vs.                                    )
15                                         )
                                           )
16  A. W. CHESTERTON, CO., et al.,         )
                                           )
17                                         )
             Defendants.                   )
18                                         )
                                           )
19                                         )

20                                  **NOTICE**

21  **TO NEW DEFENDANTS SERVED IN COMPLEX ASBESTOS LITIGATION IN THE**
    **SUPERIOR COURT IN AND FOR THE STATE OF CALIFORNIA, CITY AND**
22  **COUNTY OF SAN FRANCISCO**

23          You have been served with process in an action, which has been designated by the Court
    as complex litigation pursuant to Standard 19 of the Standards of Judicial Administration.  The
24  litigation bears the caption "In Re: Complex Asbestos Litigation", [San Francisco Superior Court
25  No. 828684].

26          This litigation is governed by various general orders, some of which affect the judicial
    management and/or discovery obligations, including the responsibility to answer interrogatories
27

                                                                              Page 1
28  PRELIMINARY FACT SHEET/NEW FILING/ASBESTOS LITIGATION

ENDORSED
F I L E D
San Francisco County Superior Court

SEP 1 3 2007

GORDON PARK-LI, Clerk
BY: DEBORAH STEPPE
                    Deputy Clerk

1  deemed propounded in the case. You may contact the Court of Designated Defense Counsel,
2  Berry & Berry, P.O. Box 16070 (2930 Lakeshore Avenue), Oakland, CA 94610; Telephone:
   (510) 250-0200; FAX: (510) 835-9859, for further information and/or copies of these orders, at
3  your expense.

4  1.      State the complete name and address of each person whose claimed exposure to asbestos
5  is the basis of this lawsuit ("exposed person"):
6          Albert Wright Jr.
7  2.      Does plaintiff anticipate filing a motion for a preferential trial date within the next four
8  months?        ____Yes                           XX   No
9  [If yes, the action will be governed by General Order No. 140; if no, the action will be governed
10  by General Order No. 129.]
11
12  3.      Date of birth of each exposed person in item one and, if applicable, date of death:
13          **DOB:  September 24, 1939**
14          Social Security Number of each exposed person:
15          **SS #:  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**
16  4.      Specify the nature or type of asbestos-related disease alleged by each exposed person.
17          __XX__Asbestosis                          _____Mesothelioma
18          __XX__Pleural Thickening/Plaques          _____Other Cancer: Specify:
19
20          __XX__Lung Cancer Other Than Mesothelioma   _____Other: Specify:
21  5.      For purposes of identifying the nature of exposure allegations involved in this action,
22  please check one or more:
23          __XX__Shipyard         __XX__Construction       ____Friction-Automotive
24          __XX__Premises         _____Aerospace          __XX__Military
25          _____Other: Specify all that apply:
26  If applicable, indicate which exposure allegation apply to which exposed person.
27

28  PRELIMINARY FACT SHEET/NEW FILING/ASBESTOS LITIGATION                          Page 2

6.    Identify each location alleged to be a source of an asbestos exposure, and to the extent known, provide the beginning and ending year(s) of each such exposure. Also specify each exposed person's employer and job title or job description during each period of exposure. (For example: "San Francisco Naval Shipyard - Pipefitter - 1939-1948"). Examples of locations of exposure might be a specific shipyard, a specific railroad maintenance yard, or perhaps more generalized descriptions such as "merchant marine" or "construction". If an exposed person claims exposure during only a portion of a year, the answer should indicate that year as the beginning and ending year (e.g., 1947-1947).

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

7.    For each exposed person who:

a.    worked in the United States or for a U.S. agency outside the territorial United States, attached to the copy of this fact sheet provided to Designated Defense Counsel a fully executed Social Security Earnings authorization (Exhibit N-4 to General Order No. 129);

b.    may have had a Social Security disability award or is no longer employed and whose last employment was not with a United States government agency, attach to the copy of the fact sheet provided to Designated Defense Counsel a fully executed Social Security Disability authorization (Exhibit N-5 to General Order No. 129);

c.    served at any time in the United States military, attach to the copy of this fact sheet provided to Designated Defense Counsel two fully executed originals of the stipulation (Exhibit N-3 to General Order No. 129);

d.    was employed by the United States government in a civilian capacity, attach to the copy of this fact sheet provided to Designated Defense Counsel two fully executed originals of the stipulation (Exhibit N-3 to General Order No. 129).

8.    If there is a wrongful death claim, attach to the copy of this fact sheet provided to Designated Defense Counsel a copy of the death certificate, if available. If an autopsy report

1  was done, also attach a copy of it to the copy of this fact sheet provided to Designated Defense

2  Counsel.

3  9.       State the date of the filing of the initial complaint in this matter:  _____

4

5  Dated: September 13, 2007                              KELLER, FISHBACK & JACKSON LLP

6

7                                                        By: _____

8                                                            I. Bruce Jackson
                                                            Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Wright, Albert Jr. & Marva Joe*
United States District, Northern District Court Case No. C-07-5403 ED

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of 18 years, and not a party to the within action. My electronic notification address is service@bhplaw.com and my business address is 135 Main Street, 20th Floor, San Francisco, California 94105. On the date below, I served the following:

FOSTER WHEELER LLC'S NOTICE OF TAG-ALONG ACTION

on the following:

KELLER, FISHBACK & JACKSON, LLP
28720 Roadside Drive Suite 201
Agoura Hills, CA 91301

X    By transmitting electronically the document(s) listed above as set forth on the electronic service list on this date before 5:00 p.m.

o    By transmitting via facsimile the document(s) listed above to the fax number(s) set forth above on this date before 5:00 p.m.

o    By placing the document(s) listed above in a sealed envelope and placing the envelope for collection and mailing on the date below following the firm's ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal service on the same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

o    By placing the document(s) listed above in a sealed envelope designated for Federal Express overnight delivery and depositing same with fees thereupon prepaid, in a facility regularly maintained by Federal Express, addressed as set forth above.

by causing personal delivery of the documents(s) listed above to the person(s) at the address(es) set forth above.

I declare under penalty of perjury that the above is true and correct. Executed on February 19, 2008, at San Francisco, California.

*Wanda D. Claudio*
Wanda D. Claudio

1